UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Idah Ms. Zirintusa, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Rosa Ms. Whitaker )<br>)<br>and )<br>)<br>Pauline Harris, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:05CV01738 (EGS) |

**PLAINTIFF IDAH ZIRINTUSA'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION TO HOLD DEFENDANT ROSA WHITAKER IN CONTEMPT FOR EXTRAORDINARY EVASION OF PROCESS**

Plaintiff Idah Zirintusa respectfully moves this Court for an order holding Defendant Rosa Whitaker in contempt for her extraordinary efforts to evade service of process, including her attack on a process server. Specifically, this motion is based on: (1) the strategic "withdrawal" of Ms. Whitaker's counsel for only a limited period of time during which Ms. Zirintusa was trying to serve Ms. Whitaker; (2) Ms. Whitaker's refusal to accept service at her home and office on multiple occasions; and (3) Ms. Whitaker's hit-and-run assault on the process server who ultimately succeeded in affecting personal service upon her.

## FACTS

**I.      Nature of the Case**

The allegations in the Compliant are straightforward. Ms. Zirintusa is a Ugandan citizen who now lawfully resides in the United States. Ms. Whitaker is a former assistant United States

Trade Representative to Africa in the Clinton and Bush administrations. The two women met in Uganda. Ms. Zirintusa was a caterer on the Ugandan President's staff, and Ms. Whitaker was a guest of the Ugandan President. After Ms. Zirintusa volunteered to serve as Ms. Whitaker's personal valet, Ms. Whitaker tried to lure Ms. Zirintusa to Washington, D.C. to work for Ms. Whitaker in a domestic position. When Ms. Zirintusa refused, Ms. Whitaker intervened with Ms. Zirintusa's superiors in Uganda, causing Ms. Zirintusa's termination. Left with little choice, Ms. Zirintusa accepted Ms. Whitaker's offer of employment for a term of three years.

When Ms. Zirintusa arrived in Washington, D.C., little was as Ms. Whitaker had promised. Ms. Zirintusa worked long hours for Ms. Whitaker, and Ms. Whitaker's friend, Defendant Pauline Harris. Ms. Zirintusa received no overtime compensation for an estimated 348 hours of overtime, and received pay insufficient to meet federal and D.C. minimum wage standards. Ms. Whitaker also breached her promise to provide payments to support Ms. Zirintusa's family, who remained in Uganda. Moreover, when Ms. Zirintusa complained about her poor pay and working conditions, Ms. Whitaker retaliated by kicking Ms. Zirintusa out of the house and terminating Ms. Zirintusa's contractual benefits. Ms. Whitaker did this after a mere 19 weeks, despite having sponsored Ms. Zirintusa's U.S. visa by signing an Affidavit of Support promising to provide Ms. Zirintusa with support in the amount of $23,000 per year for a period of three years.

Ms. Whitaker continued her misconduct against Ms. Zirintusa by going to extraordinary lengths to avoid service of process in this suit, as described below.

## II.    Ms. Whitaker Learns that Ms. Zirintusa Plans To Serve Her with This Suit.

On July 1, 2005, Ms. Zirintusa's counsel, Alex C. Lakatos, in an effort to resolve Ms. Zirintusa's claims against Ms. Whitaker without litigation, provided Ms. Whitaker with a draft of

2

400074671v2

Ms. Zirintusa's Complaint in this action. *See* Declaration of Mr. Alex C. Lakatos ("Lakatos Decl.") ¶ 2. Thereafter, Ms. Whitaker's counsel, Johnny Barnes, contacted Mr. Lakatos. *Id.* ¶ 3. Mr. Barnes proceeded to engage Mr. Lakatos in face-to-face and telephone settlement negotiations. *Id.* Consequently, Mr. Barnes and Mr. Lakatos exchanged figures at which their clients would be willing to settle Ms. Zirintusa's claims against Ms. Whitaker. *Id.* The negotiations came to an abrupt halt on August 12, 2005, when Mr. Barnes explained to Mr. Lakatos that Ms. Whitaker would be unilaterally discontinuing the settlement talks. *Id.* ¶ 4. Mr. Lakatos advised Mr. Barnes that Ms. Zirintusa would file suit shortly. *Id.*

### III.   Ms. Whitaker's Counsel Withdraws During the Service Period.

During the same August 12, 2005 conversation, Mr. Lakatos asked Mr. Barnes if he was authorized to accept service of process when Ms. Zirintusa filed suit. *Id.* ¶ 5. Mr. Barnes replied that he was not; in fact, he said, he was withdrawing from his representation of Ms. Whitaker now that settlement talks were concluded. *Id.* Subsequent correspondence between Mr. Lakatos and Mr. Barnes memorializes the key facts. As set forth below, ultimately Ms. Whitaker was served. Only then did Mr. Barnes resume his representation of Ms. Whitaker and enter his appearance as her counsel in this case. *Id.* ¶ 7, Exhibit A (Letter from Mr. Lakatos to Mr. Barnes, 10/21/2005); *id.* ¶ 8, Exhibit B (Letter from Mr. Barnes to Mr. Lakatos, 10/24/2005); *id.* ¶ 9, Exhibit C (Letter from Mr. Lakatos to Mr. Barnes, 10/25/2005); *id.* ¶ 10, Exhibit D (Letter from Mr. Barnes to Mr. Lakatos, 10/25/2005).

### IV.   Ms. Whitaker Avoids Efforts to Serve Her.

On August 31, 2005, shortly after Ms. Whitaker ended settlement talks, Ms. Zirintusa filed suit. Ms. Zirintusa affected personal service on Defendant Pauline Harris the next day. Between August 31, 2005 and September 28, 2005, Ms. Zirintusa made eleven unsuccessful

attempts to serve Ms. Whitaker at her home and office. *See* Affidavit of Scott Kucik ("Kucik Aff.") ¶¶ 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15.

Ms. Whitaker clearly was evading service of process. For example, Ms. Whitaker did not come to the reception area of her office to accept service on September 7, 2005, despite the fact that the receptionist initially said that Ms. Whitaker was in the office. Kucik Aff. ¶ 6. Ms. Whitaker did not return a message from Capitol Process Servers left with her assistant, Lakeesha Herbert, on September 9, 2005. *Id.* ¶ 7. When Capitol Process Servers contacted Ms. Herbert again on September 12, 2005, she flatly refused to provide any further assistance. *Id.* ¶ 9. Ms. Whitaker did not return a message from Capitol Process Servers left with her assistant (and sister) Sheila Williams on September 21, 2005. Affidavit of Daniel Portnoy ("Portnoy Aff.") ¶ 7. Ms. Whitaker did not come to her door to accept service on September 28, 2005, at 6:45 p.m., despite the fact that the Mercedes she drives was parked in back of her house and despite the fact that she exited her home the next morning. Kucik Aff. ¶ 15. Ms. Whitaker's counsel maintains that she was "traveling" during much of this time. Lakatos Decl. ¶ 10, Exhibit D. But that explanation falls short of explaining Ms. Whitaker's conduct.

V.  **Ms. Whitaker Hits a Process Server with Her Mercedes and Flees.**

On September 29, 2005, at 9:15 a.m., Ms. Whitaker emerged from her home and approached her car. Portnoy Aff. ¶ 9. Mr. Portnoy approached Ms. Whitaker and informed her that he was trying to serve her in connection with this matter. *Id.* Ms. Whitaker refused to accept the service in her hand. *Id.* In fact, she refused to acknowledge Mr. Portnoy at all, walking past him as if he were invisible. *Id.* Ms. Whitaker then got into her Mercedes and shut the door behind her. *Id.* Mr. Portnoy went to the passenger side of the car and, speaking through the window, asked her to accept service of process. *Id.* Ms. Whitaker responded by shaking her

head, possibly to indicate her refusal to accept process. *Id.* After it became clear that Ms. Whitaker would not roll down her window and accept service, Mr. Portnoy properly affected service on Ms. Whitaker by placing the Complaint, summons and related documents under her windshield wipers. *Id.*

As Mr. Portnoy was serving Ms. Whitaker, Ms. Whitaker began to backup her car. *Id.* Mr. Portnoy was worried that he might get hurt and immediately asked her stop, exclaiming "Don't do it!" *Id.* Ms. Whitaker responded by either smiling, laughing or both. *Id.* Ms. Whitaker kept driving her car in reverse, hitting Mr. Portnoy. *Id.* ¶ 10. Mr. Portnoy rolled off the side of Ms. Whitaker's Mercedes and was knocked to the ground. *Id.* Mr. Portnoy then moved to a safer spot. *Id.* Meanwhile, Ms. Whitaker, in her continued attempts to leave her parking area, hit the wooden stairs behind her house with her car. *Id.* Ms. Whitaker then drove away without stopping to see if Mr. Portnoy was injured and without offering any assistance or her insurance information. *Id.* ¶¶ 12-13.

Mr. Luis Gonzalez, a witness to the hit-and-run incident who was visiting one of Ms. Whitaker's neighbors, confirms Mr. Portnoy's account. Affidavit of Luis Gonzalez ("Gonzalez Aff.") ¶¶ 3-9. Mr. Gonzalez notes his impression that the Mercedes hit Mr. Portnoy fairly hard, that Mr. Portnoy appeared to be injured after having been hit, and that throughout the entire incident, Mr. Portnoy's demeanor was calm, polite and professional. *Id.* ¶¶ 5, 6, 8, 9.

### VI. Mr. Barnes Resumes His Representation of Ms. Whitaker.

On October 21, 2005, Mr. Barnes filed a belated Answer on Ms. Whitaker's behalf. Mr. Barnes did not contact Mr. Lakatos to arrange for an enlargement of time in which to file Ms. Whitaker's Answer. *Id.* ¶ 6. As a result, Ms. Whitaker's Answer was filed after Mr. Lakatos already had filed an Affidavit notifying the clerk of Ms. Whitaker's default, and Mr. Lakatos

learned for the first time that Mr. Barnes had resumed his representation of Ms. Whitaker when Mr. Barnes' name appeared on Ms. Whitaker's late-filed Answer. Lakatos Decl. ¶ 6. Furthermore, despite the fact that Mr. Barnes rendered himself unavailable to accept service for Ms. Whitaker, he was, at the same time, (1) representing the other defendant in this action, Ms. Harris, for whom he filed an answer on September 21, 2005, and (2) maintaining an e-mail address (johnny@thewhitakergroup.us) at Ms. Whitaker's company, The Whitaker Group.[1]

## ARGUMENT

This Court has both statutory and inherent authority to punish litigants for misconduct through the remedy of civil contempt. *See SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000). In particular, this Court has express statutory authority and inherent authority to hold in contempt those who evade service of process or mistreat a process server. First, 18 U.S.C. § 401, provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule decree or command." *Id.*

Second, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In *Shepard v. ABC,* 62 F.3d 1469 (D.C. Cir. 1995), the court explained that "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Id.* at 1474

---

[1] Mr. Barnes asserts that he told Mr. Lakatos that he was representing Ms. Whitaker during a September 26, 2005 teleconference. Lakatos Decl. ¶ 10, Exhibit D. But even if Mr. Barnes' recollection were correct, the key facts regarding his role – Mr. Barnes was never available to accept service on Ms. Whitaker's behalf, did not assist in the service of process, purported not to represent Ms. Whitaker for a significant portion (if not all) of the service period and failed to contact Mr. Lakatos to arrange extra time in which to file Ms. Whitaker's Answer – remain unchanged.

6

(citing *Chambers*, 501 U.S. at 46). The court's inherent power to impose civil contempt remedies extends to those who improperly try to evade or hinder service of process. *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1196 (7th Cir. 1996) (Easterbrook, J.) ("A party need not prevail on the merits to be entitled to compensation for excess expenses created by obfuscation and dissimulation. Evasion of service [among other things] . . . cannot be tolerated.").

Whether the court acts pursuant to its statutory or inherent authority, there is no doubt that evasion of process is contemptuous: "The intentional hindrance of service of process constitutes contempt, regardless of the means by which such hindrance is accomplished . . . ." 17 Am. Jur. *Contempt* § 58 (2005); 17 C.J.S. *Contempt* § 31 (2005) ("Unlawfully hindering, delaying, or interfering, or attempting to interfere, with the proper execution of legal process is ordinarily such an obstruction of the due administration of justice as to constitute contempt."). Likewise, it is well established that "[m]altreatment of the server of a writ … constitutes contempt." 17 C.J.S. *Contempt* § 31.

In this case, Ms. Whitaker's efforts to thwart and evade lawful service of process exceed those that any plaintiff, or the court, should be asked to tolerate. Had Ms. Whitaker behaved responsibly, *e.g.*, had she allowed her counsel to accept service on her behalf, or returned messages from process servers to arrange a mutually convenient time and place for service, this motion would be unnecessary. But Ms. Whitaker chose instead to engage in gamesmanship that began when her counsel "withdrew" at the start of the service period, continued while the plaintiff was trying to find and serve Ms. Whitaker, and culminated when Ms. Whitaker hit a process server with her car and fled. Indeed, given that Ms. Whitaker hit a person with her car and then left without stopping, "gamesmanship" may be too modest a term.

Accordingly, Ms. Zirintusa seeks civil contempt sanctions against Ms. Whitaker. Under

18 U.S.C. § 401, this Court may impose a fine or imprisonment. Further, as *Shepard* explains, this court has great flexibility to craft an appropriate sanction pursuant to its inherent authority:

> The inherent power encompasses the power to sanction attorney or party misconduct, and includes the power to enter a default judgment. ... Other inherent power sanctions available to courts include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence.

*Id.* at 1475 (citations omitted). The inherent power should provide the court with "an effective tool to discourage and punish misconduct." *Id.* The court should exercise its inherent power with "restraint and discretion ... to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Id.* at 1478 (quotations omitted, emphasis in original).

In this case, Ms. Zirintusa respectfully requests that this Court impose civil contempt sanctions on Ms. Whitaker, payable to Ms. Zirintusa, in the amount commensurate with the sum that Ms. Zirintusa has paid her process server in connection with service of Ms. Whitaker, and all costs, including reasonable attorneys' fees, for the preparation of this motion. These costs are fully justified by the circumstances, relate directly to Ms. Whitaker's misconduct, and would help to deter her from similar acts in the future.

Dated: October 31, 2005

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

_____
Alex C. Mr. Lakatos, Esq. (DC Bar No. 453763)
Christine N. Kearns, Esq. (DC Bar No. 416399)
2300 N Street N.W.
Washington, DC 20037-1128
United States of America
Telephone: (202) 663-8693
Facsimile: (202) 663-8007
E-mail: Alex.Mr. Lakatos@pillsburylaw.com

Kerri Sherlock, Esq.
Break The Chain Campaign
733 15th Street NW
Washington, DC 20005
Telephone: (202) 787-5245
Facsimile: (202) 387-7915
E-mail: kerri@ips-dc.org

*Counsel for Plaintiff Idah Ms. Zirintusa*

400074671v2