UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Idah Zirintusa, <br><br> Plaintiff, <br><br> v. <br><br> Rosa Whitaker <br><br> and <br><br> Pauline Harris, <br><br> Defendants. | Civil Action No. 1:05CV01738 (EGS) |

### PLAINTIFF IDAH ZIRINTUSA'S REPLY IN SUPPORT OF HER MOTION TO HOLD DEFENDANT ROSA WHITAKER IN CONTEMPT FOR EXTRAORDINARY EVASION OF PROCESS AND OPPOSITION TO DEFENDANT ROSA WHITAKER'S CROSS-MOTION TO HOLD PLAINTIFF IN CONTEMPT

Plaintiff Idah Zirintusa brought this action against Defendants Rosa Whitaker and Pauline Harris because of the significant and unwarranted injustices she suffered at their hands. Ms. Zirintusa deeply regrets that this serious case began with an exchange of motions for sanctions rather than an adjudication of the merits. However, given the extraordinary circumstances surrounding Ms. Whitaker's conduct in this suit, and given the significant expense Ms. Zirintusa incurred in serving process on Ms. Whitaker, Ms. Zirintusa reasonably concluded that her Motion for Contempt was necessary. At the same time, Ms. Whitaker's Cross-Motion appears to be a strategic ploy to distract this Court from Ms. Whitaker's own misconduct.

I.  **Reply in Support of Motion for Contempt**

The key facts demonstrating that Ms. Whitaker is in contempt are not in dispute. Ms. Zirintusa, along with her Motion for Contempt, provided this Court with three affidavits describing Ms. Whitaker's hit-and-run assault on Mr. Daniel Portnoy, the process server who served Ms. Whitaker with this suit. *See* Affidavit of Daniel Portnoy (Oct. 20, 2005); Affidavit of Scott Kucik (Oct. 20, 2005); Affidavit of Luis Gonzales (Oct. 27, 2005). Ms. Whitaker's Opposition does not respond to the facts set forth in those affidavits. Ms. Whitaker does not deny that she ignored Mr. Portnoy when she stepped out of her home on the morning of September 29, 2005, refused to take service of process in her hand, and then barricaded herself in her Mercedes to avoid being served. She does not deny backing up her car while Mr. Portnoy was placing service of process under her windshield wipers. She does not deny having heard Mr. Portnoy imploring her to stop, and having smiled, laughed, or both, in response. Indeed, she does not take the position that when she hit Mr. Portnoy, she did so accidentally. She is silent on the issue. Nor does she say why she fled the scene. Based on this conduct alone, the Court appropriately may sanction Ms. Whitaker for contempt. *See* 17 C.J.S. *Contempt* § 31 (2005) (explaining that maltreatment of a process server constitutes contempt). The Court need look no farther to resolve Ms. Zirintusa's Motion for Contempt.

Moreover, Ms. Whitaker does not attempt to dispute other facts set forth in the Motion for Contempt and affidavits in support thereof, demonstrating that she was uncooperative with efforts to serve her even before the hit-and-run incident. First, Ms. Whitaker does not maintain that she was unaware, as of August 12, 2005, that Ms. Zirintusa would be trying to serve her. Second, Ms. Whitaker does not maintain that she failed to receive messages that Capitol Process Servers left with her assistant, Lakeesha Herbert, on September 9, 2005, or with her sister, Sheila

Williams, on September 21, 2005. Third, Ms. Whitaker does not maintain that she ever tried to return those messages. Fourth, Ms. Whitaker does not offer any explanation for why, on September 12, 2005, her assistant Ms. Herbert told Capital Process Servers she was unable to provide them with any assistance and why Ms. Herbert cut their conversation short. Fifth, Ms. Whitaker does not explain why she failed to accept service at her door on the evening of September 28, 2005. If Ms. Whitaker were not interested in evading service, she had ample opportunity to accept, or arrange to accept, process.

Finally, any dispute concerning whether Ms. Whitaker's counsel, Mr. Johnny Barnes, was available to accept service of process or assist with service of process is easily resolved. Ms. Whitaker's Opposition to the Motion for Contempt ("Opposition") explains that Mr. Barnes was not representing Ms. Whitaker after Ms. Whitaker terminated settlement discussions: "Once settlement discussions failed to bear fruit, counsel herein informed Plaintiff's current counsel that he could not state that he would be representing Defendant Whitaker should litigation ensue because he had been engaged simply to respond to Plaintiff's desire to seek an amicable resolution of this matter." Opposition at 3-4. Ms. Whitaker's Opposition further states that at some point, Mr. Barnes resumed his representation of Ms. Whitaker, but does not say when he did so: "Eventually, [Ms. Whitaker] settled on the counsel herein [to represent her in the litigation]." *Id.* at 4. Thus, Ms. Whitaker's Opposition makes clear that for an unspecified time during some (if not all) of the service period, Mr. Barnes was not representing Ms. Whitaker. *See also* Declaration of Alex C. Lakatos (Oct. 31, 2005) (R. 8) ("Lakatos Decl. I"), ¶¶ 5-6, Exhibits A-D (documenting Mr. Barnes' withdrawal during the service period). Ms. Whitaker's decision not to employ counsel during the service period is consistent with her other efforts to evade service. *See generally Haarhuis v. Kunnan Enters.*, 223 B.R. 252, 258 (D.D.C. 1998)

(affirming decision awarding petitioner costs of service where such costs could have been avoided if defendants had "promptly authorized their local counsel to accept service or enter an appearance for them in the District of Columbia.").

## II. Opposition to Cross-Motion for Contempt

Ms. Whitaker's Cross-Motion for Contempt should be denied because (1) Mr. Barnes did not consult with Mr. Lakatos about the Cross-Motion before filing it as required by Local Rule 7(m) and did not include a Local Rule 7(m) statement in the Cross-Motion, and (2) the Cross-Motion fails to identify any improper conduct by Ms. Zirintusa or her counsel.

### A. Ms. Whitaker's Cross-Motion Does Not Comply with Local Rule 7(m).

Mr. Barnes did not consult with Mr. Lakatos about Ms. Whitaker's Cross-Motion for Contempt before filing it. *See* Declaration of Alex C. Lakatos (Nov. 15, 2005) ("Lakatos Decl. III") ¶ 2, attached to the present filing. Further, Ms. Whitaker's Cross-Motion for Contempt does not contain a Rule 7(m) statement. These violations of Local Rule 7(m) constitute grounds to strike the Cross Motion for Contempt. *See In re Verizon Internet Servs., Inc.*, 217 F.R.D. 239 (D.D.C. 2003) (striking motion that lacked Rule 7(m) statement); *see also Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003) (awarding sanctions against party who failed to confer with opposing counsel as required by Local Rule 7(m), before filing an unwarranted motion for sanctions).

### B. Ms. Whitaker's Motion Does Not Identify Any Improper Conduct By Ms. Zirintusa or Her Counsel.

Ms. Whitaker argues, without citing any authority, that this Court should hold Ms. Zirintusa or her counsel in contempt for (1) serving Ms. Whitaker, instead of Ms. Whitaker's

4

attorney, with this lawsuit, (2) serving Ms. Whitaker, instead of her attorney, with an Affidavit of Default, and (3) engaging in certain conduct – namely, sending Ms. Whitaker two demand letters and speaking with her once on the phone during a nine month period – that Ms. Whitaker characterizes as harassment.

First, Ms. Whitaker's suggestion that Ms. Zirintusa should be held in contempt because she served Ms. Whitaker, instead of Mr. Barnes, is misplaced. There is no obligation to serve a defendant's counsel instead of the defendant. Federal Rule of Civil Procedure 4(e) specifically authorizes personal service on an individual defendant and is not limited to situations in which the defendant lacks counsel. *See* Fed. R. Civ. P. 4(e). In any event, in this case, Ms. Zirintusa had no choice but to serve Ms. Whitaker personally. As set forth above, Mr. Barnes was not representing Ms. Whitaker during some (if not all) of the service period. Further, Ms. Whitaker does not maintain that she ever authorized Mr. Barnes to accept service of process for her. Rather, Ms. Whitaker only maintains that, at some point, she engaged Mr. Barnes to represent her. *See* Cross-Motion for Contempt at 1 (Plaintiff made "a major mistake of serving Defendant Whitaker when … counsel represented Defendant Whitaker"); *id.* at 6-7 (same). Unless counsel is authorized to accept service on behalf of his or her client, service on counsel is not effective. *See Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004) (holding that even where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service) (citation and quotation marks omitted). In this case, there is no dispute that Mr. Barnes was not authorized to accept service for Ms. Whitaker.[1] Accordingly, Ms. Zirintusa's only option was to serve Ms. Whitaker personally.

---

[1] In to the Cross-Motion for Contempt, which makes clear that Mr. Barnes was only representing Ms. Whitaker, rather than having been authorized to accept service of process on

5

Second, Ms. Whitaker's objection to being served with the Affidavit of Default is equally misplaced. At the time Ms. Zirintusa served Ms. Whitaker with the Affidavit of Default, Ms. Zirintusa correctly believed that Ms. Whitaker was not represented by counsel. *See* Lakatos Decl. I ¶¶ 5-6. In any event, the purpose of service is to ensure that opposing parties have notice of filings that may affect their rights. While Ms. Whitaker might reasonably object if she did not receive sufficient notice of the default filing, her objection that she received too much notice makes little sense.

Third, Ms. Zirintusa did not harass Ms. Whitaker. Ms. Whitaker terminated Ms. Zirintusa on Christmas eve, December 24, 2004. Ms. Zirintusa then retained Ms. Kerri Sherlock, Esq., of Break the Chain Campaign (an organization that provides legal representation for exploited and enslaved migrants) to represent her. On February 11, 2005, Ms. Sherlock sent Ms. Whitaker a demand letter. Lakatos Decl. III ¶ 3, Exhibit A. The demand letter was not inappropriate. It explained: "The purpose of this letter is to explain Ms. Zirintusa's complaints and to provide an opportunity to settle this dispute informally prior to litigation. If I do not hear from you by February 22, 2005, I will consider filing a legal action on behalf of Ms. Zirintusa in March of 2005. I am willing to discuss this matter with you or your attorney." *Id.* Shortly thereafter, Ms. Sherlock and Ms. Whitaker spoke on the phone and arranged for Ms. Whitaker to obtain a copy of the demand letter, which Ms. Whitaker said she had not yet seen. *Id.* ¶ 4.

---

her behalf, the correspondence between the parties supports the same conclusion. *See* Lakatos Decl. I, Exhibit A (Letter from A. Lakatos to J. Barnes dated Oct. 21, 2005, stating "When you and I last spoke on September 26, 2005, you said that you could not assist me in my efforts to serve Ms. Whitaker and were not authorized to accept service on her behalf"); *id.*, Exhibit B (Letter from J. Barnes to A. Lakatos, dated Oct. 24, 2005, taking the position that "in the September 26 conversation – to which you reference in your letter – I informed you that I would be representing Ms. Whitaker in the litigation," but not disputing that Mr. Barnes was unauthorized to accept process for Ms. Whitaker).

400083172v3

Following the conversation with Ms. Sherlock, Ms. Whitaker ignored the February 11, 2005 demand letter.

For about five to six months after sending the February 11, 2005 demand letter, Ms. Zirintusa and her counsel did not contact Ms. Whitaker. *See* Cross-Motion for Contempt at 5 ("Plaintiff did not seek to discuss and negotiate the matter until 6 months later in July 2005."). On July 1, 2005, Ms. Zirintusa, through her litigation counsel, Alex C. Lakatos, Esq., sent Ms. Whitaker another demand letter that attached a draft complaint similar to the one filed in this action. *See* Lakatos Decl. III, ¶ 5, Exhibit B. The letter was not inappropriate. It explained:

> We understand that you failed to respond substantively to a February 11, 2005 letter from Kerri Sherlock, Ms. Zirintusa's counsel at Break the Chain Foundation, to resolve this matter amicably. Accordingly, Ms. Zirintusa has engaged us to represent her. The opportunity for a resolution [through] settlement still remains open. To facilitate that process we have enclosed a draft of Ms. Zirintusa's complaint against you for your review. If we have not received a satisfactory response from you by July 11, 2005, our client has authorized us to file suit against you.

*Id.* On July 11, 2005, Mr. Barnes wrote to Mr. Lakatos to begin settlement negotiations. *See* Lakatos Decl. III, ¶ 6, Exhibit C. Thereafter, settlement discussions between Mr. Barnes and Mr. Lakatos continued until Ms. Whitaker terminated them on August 12, 2005.

In sum, Ms. Sherlock wrote to Ms. Whitaker once and spoke with her on the phone once, and Mr. Lakatos wrote to Ms. Whitaker once and has never spoken with her. *Id.* ¶¶ 3-7. Both letters and the phone call occurred before Mr. Barnes began to represent Ms. Whitaker. Both letters are now before the Court for its review. Ms. Zirintusa respectfully submits that neither the frequency nor the substance of these communications with Ms. Whitaker constitute harassment or threatening behavior. To the contrary, Ms. Zirintusa's conduct reflects a good faith effort to settle this matter amicably without litigation.

7

In any event, Ms. Zirintusa respectfully submits that this Court need not reach this issue, because the parties' pre-litigation settlement discussions are beyond the scope of the Court's contempt powers. *See* 18 U.S.C. § 401 (listing conduct punishable by the Court's contempt powers); *Chambers v. NASCO*, 501 U.S. 32, 44 (1991) (explaining that contempt power is intended to reach conduct that interferes with conduct of trial or disobedience to the court's orders).

### III. Conclusion

For the foregoing reasons, Ms. Zirintusa's Motion for Contempt should be granted, and Ms. Whitaker's Cross-Motion for Contempt should be denied.

Dated:  November 15, 2005

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/*

Alex C. Lakatos, Esq. (DC Bar No. 453763)
Christine N. Kearns, Esq. (DC Bar No. 416399)
2300 N Street N.W.
Washington, DC 20037-1128
Telephone:  (202) 663-8693
Facsimile:   (202) 663-8007
E-mail: Alex.Lakatos@pillsburylaw.com

Kerri Sherlock, Esq.
Break The Chain Campaign
733 15th Street NW
Washington, DC 20005
Telephone: (202) 787-5245
Facsimile: (202) 387-7915
E-mail: kerri@ips-dc.org

*Counsel for Plaintiff Idah Zirintusa*

400083172v3