UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| **Idah Zirintusa,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05CV01738 (EGS) |
| | ) | |
| **Rosa Whitaker** | ) | |
| **and** | ) | |
| **Pauline Harris,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF IDAH ZIRINTUSA'S OPPOSITION TO THE
MOTION TO DISMISS FILED BY DEFENDANT ROSA WHITAKER**

**INTRODUCTION**

Defendant Rosa Whitaker's Motion to Dismiss should be denied because it fails to address the allegations in Plaintiff Idah Zirintusa's Complaint, all of which must be accepted as true at this stage of the proceedings. As set forth in the Complaint, Ms. Zirintusa came to the United States in reliance on false promises made by Ms. Whitaker. She thereafter kept house for Ms. Whitaker, who reciprocated by breaching their three-year employment contract, failing to pay Ms. Zirintusa the minimum wage and overtime in accordance with the Fair Labor Standards Act ("FLSA"), and firing Ms. Zirintusa in 2004, on Christmas eve, in retaliation for complaining about her poor working conditions.

400089331v2

Based on these facts, Ms. Zirintusa filed an eleven count Complaint for: Breach of Contract – Employment Agreement (Count I); Breach of Contract – Sponsorship Affidavit (Count II); Minimum Wage Violations Under the FLSA, 29 U.S.C. § 206 (Count III); Overtime Compensation Violations Under the FLSA, 29 U.S.C. § 207 (Count IV); Retaliation under the FLSA, 29 U.S.C. § 215(a) (Count V); Violation of the D.C. Payment and Collection of Wages Law, D.C. Code Ann. § 32-1303 (Count VI); Violations of the D.C. Minimum Wage Act Revision Act of 1992 (Count VII); Tortious Interference with Contract (Count VIII); Tortious Interference with Prospective Advantage (Count IX); Fraud (Count X); and Unjust Enrichment (Count XI).

In light of the facts in the Complaint, Ms. Whitaker's Motion to Dismiss cannot stand. First, Ms. Whitaker's argument that this Court lacks subject matter jurisdiction ignores Ms. Zirintusa's three FLSA claims (Counts III, IV, and V), none of which Ms. Whitaker discusses or moves to dismiss. Those claims confer federal question jurisdiction on this Court. Second, Ms. Whitaker's argument that Ms. Zirintusa lacks capacity to sue because, according to Ms. Whitaker's unsubstantiated assertion, Ms. Zirintusa is an unlawful immigrant, ignores Ms. Zirintusa's factual allegations (which must be taken as true) explaining that she remains in the United States lawfully. In any event, courts consistently have rejected suggestions such as Ms. Whitaker's ignoble one that out-of-status immigrants should be denied access to our judicial system and thereby barred from contesting mistreatment at the hands of their domestic employers.

Ms. Whitaker's effort to dismiss her breach of the parties' three-year employment contract (Count I) is similarly flawed. Ms. Whitaker's entire argument rests on her assertion that the parties' employment contract was at-will, a view that ignores the

allegations in the Complaint that make clear that Ms. Zirintusa was not an at-will employee, because Ms. Whitaker offered, and Ms. Zirintusa accepted, a contract for a three-year term of employment.  Further, Ms. Whitaker's argument fails to respond to Ms. Zirintusa's allegations that while she was working for Ms. Whitaker, Ms. Whitaker failed to honor her contractual obligation to provide support for Ms. Zirintusa's family and to provide food and medical care for Ms. Zirintusa.

Ms. Whitaker's effort to dismiss her breach of her sworn affidavit to provide "room, board and tuition for the above named individual [Idah Zirintusa] for the duration of [her] stay in status in the United States" (Count II) is also without merit.[1]  As the beneficiary of Ms. Whitaker's promise to provide support, Ms. Zirintusa has standing to enforce that promise.  Further, by the plain terms of Ms. Whitaker's affidavit, it is "binding on [Ms. Whitaker] for a period of three (3) years after entry of [Ms. Zirintusa]," and is not, as Ms. Whitaker asserts, an obligation that she was free to disregard at any time.

### FACTUAL ALLEGATIONS

For about fifteen years, Ms. Zirintusa enjoyed a well-paid job as a member of the President of Uganda's staff, most recently as a Catering Officer.  *See* Complaint ¶¶ 1, 16-18.  The job not only afforded Ms. Zirintusa the means to support her two biological children, five adopted children, and her ailing elderly mother, but moreover provided, among other things, free government housing where Ms. Zirintusa and her family could live together, complete medical coverage for the entire family, and a scholarship for one

---

[1]  A copy of the Affidavit of Support is attached as Exhibit A hereto.

of Ms. Zirintusa's most gifted children. *Id.* Ms. Whitaker, a former Assistant U.S. Trade Representative to Africa in the Clinton and Bush administrations, destroyed all that. *Id.* ¶¶ 1, 23-25.

In 2002, when Ms. Whitaker visited the President of Uganda, Ms. Zirintusa volunteered to serve as Ms. Whitaker's personal valet. *Id.* ¶¶ 2, 19. Thereafter, Ms. Whitaker tried to lure Ms. Zirintusa to Washington, D.C., to work for Ms. Whitaker in a domestic position. *Id.* ¶¶ 2-3, 20-22. During the next two years, Ms. Whitaker repeatedly made Ms. Zirintusa generous employment offers that, on information and belief, Ms. Whitaker never intended to honor fully. *Id.* Unwilling to leave her high-quality job and her family, Ms. Zirintusa continued to refuse Ms. Whitaker's offers. *Id.* ¶¶ 2, 20-22.

In response to Ms. Zirintusa's concerns, Ms. Whitaker made an improved offer of employment, for a period of three years, on terms that included: (1) four times the wages that Zirintusa earned in her current position; (2) full tuition at a U.S. college; (3) food, shelter, and health care in the United States; (4) separate payments to support Zirintusa's family that would be sufficient to provide them with food, shelter, and medical care, comparable to what Zirintusa received from the Ugandan State House, plus school tuition for the minor children in Zirintusa's care. *Id.* ¶¶ 2-3, 21. Upon information and belief, Ms. Whitaker never intended to make any payments to support Zirintusa's family. *Id.* ¶¶ 22, 35. Ms. Whitaker's promise to make such payments was a false statement of material fact. *Id.*

400089331v2

When Ms. Zirintusa refused that offer, Ms. Whitaker raised the issue directly with Ms. Zirintusa's superiors in the Ugandan State House. *Id.* ¶¶ 2, 23-24. As a result, Uganda State House officials informed Ms. Zirintusa that she would be "allowed" to work in the United States and that she would not be able to return to her job once she left. *Id.* Ms. Zirintusa understood, based on her years on the President's staff and Ugandan culture, that her position was being terminated as a direct result of Ms. Whitaker's intervention with Ms. Zirintusa's employer. *Id.*

With little choice, Ms. Zirintusa accepted a three-year contract with Ms. Whitaker on the terms described above. *Id.* ¶¶ 3, 21, 25. During the term of the contact, Ms. Zirintusa was to work for Ms. Whitaker in a domestic position in Washington, D.C., in exchange for, among other things, full tuition at a U.S. college, a salary equal to four times what Ms. Zirintusa had earned in Uganda, food and shelter, health care, and separate payments sufficient to support Ms. Zirintusa's family and privately educate her children, who would remain in Uganda. *Id.*

Although Ms. Whitaker had engaged Ms. Zirintusa as a domestic worker, Ms. Whitaker arranged to bring Ms. Zirintusa to the United States on a student visa. *Id.* ¶¶ 4, 26-27. To sponsor Ms. Zirintusa's student visa, Ms. Whitaker signed, and submitted to the U.S. Department of Justice, Immigration and Naturalization Service, an Affidavit of Support, notarized on December 22, 2003. *Id.* ¶ 27. In the Affidavit of Support, Ms. Whitaker contractually agreed to provide Ms. Zirintusa with $23,000 per year for a period of three years, to cover Ms. Zirintusa's tuition, food, shelter, and related expenses. *Id.*

Relying on Ms. Whitaker's promises, Ms. Zirintusa separated from her family and sent them to live with various friends and relatives in Uganda, sold or gave away most of her possessions at a significant loss, and moved to the United States. *Id.* ¶¶ 5, 29. When Ms. Zirintusa arrived in Washington, D.C., little was as Ms. Whitaker had promised. *Id.* ¶¶ 5-6, 33-35.

Ms. Zirintusa began to work for Ms. Whitaker at Ms. Whitaker's Washington, D.C. home on August 18, 2004. *Id.* ¶¶ 6, 30-31. Ms. Zirintusa's responsibilities included, among other things, providing Whitaker's breakfast in bed, preparing snacks, scrubbing the bathroom, cleaning the bedroom, taking out the garbage, and purchasing and transporting Whitaker's groceries by bus. *Id.* ¶ 31. During the 19 weeks that Ms. Zirintusa worked for Ms. Whitaker, Ms. Zirintusa fully performed her contractual obligations, but Ms. Whitaker breached her obligation to provide support for Ms. Zirintusa's family, failed to provide for Ms. Zirintusa's food and health care, and subtracted money from Ms. Zirintusa's base pay. *Id.* ¶¶ 6, 30-35.

During the time that Ms. Zirintusa was employed by Ms. Whitaker, Ms. Zirintusa worked 17 weeks in which she worked an estimated 60 hours per week or more – typically six 8-hour days for Ms. Whitaker plus one 12-hour day for Defendant Pauline Harris. *Id.* ¶¶ 6, 34. Ms. Zirintusa worked an estimated 348 hours of overtime, including an estimated 118 hours for Ms. Whitaker and an estimated 230 hours for Ms. Whitaker's friend, Ms. Harris, for which Ms. Zirintusa received no compensation. *Id.* Nor was the pay that Ms. Zirintusa received sufficient to meet federal and Washington, D.C. minimum wage requirements. *Id.* ¶ 6.

When Ms. Zirintusa complained to Ms. Whitaker about her poor pay and working conditions, Ms. Whitaker retaliated by terminating Ms. Zirintusa without lawful cause on December 24, 2004.  *Id.* ¶¶ 7, 36-41.  Thereafter, Ms. Whitaker ceased providing Ms. Zirintusa with any benefits pursuant to their contract and in derogation of the Affidavit of Support that Ms. Whitaker had signed.  *Id.*

Once Ms. Whitaker stopped providing room and board to Ms. Zirintusa, Ms. Zirintusa began to stay with various friends in the Washington, D.C. area.  *Id.* ¶ 9.  Ms. Zirintusa is a citizen of Uganda who lawfully resides in the United States pursuant to a student visa.  *See id.*  Ms. Zirintusa currently is enrolled in Montgomery Community College in Takoma Park, Maryland ("Montgomery College").  *Id.*

## ARGUMENT

Ms. Whitaker's Motion to Dismiss is untimely.  *See* Fed. R. Civ. P. 12.  Accordingly, if this Court chooses to adjudicate Ms. Whitaker's Motion, it should be treated as a Motion for Judgment on the Pleadings pursuant to Rule 12(c).  *Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 29 (D.D.C. 2000) (the defendant's motion to dismiss was untimely because it was filed after the answer, however the court exercised its discretion to treat the motion as a motion for judgment on the pleadings under Rule 12(c)).  When resolving a motion for judgment on the pleadings, courts must "accept as true the allegations in the opponent's pleadings" and "accord the benefit of all reasonable inferences to the non-moving party."  *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (citing *Haynesworth v. Miller,* 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)).  Further, the motion may be granted only if the moving party demonstrates that "no

material fact is in dispute and that it is 'entitled to judgment as a matter of law.'" *Id.* (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).

**I.      This Court Has Subject Matter Jurisdiction to Hear Ms. Zirintusa's Claims.**

Ms. Whitaker's assertion that this Court lacks subject matter jurisdiction to adjudicate Ms. Zirintusa's claims is wrong as a matter of law because it ignores Ms. Zirintusa's three FLSA claims. *See* Complaint ¶¶ 52-59 (Count III, Minimum Wage Violations under the FLSA, 29 U.S.C. § 206); *id.* ¶¶ 60-66 (Count IV, Overtime Compensation Violations under the FLSA, 29 U.S.C. § 207); ¶¶ 67-69 (Count V, Retaliation under the FLSA, 29 U.S.C. § 215(a)). Ms. Zirintusa's three FLSA claims – which Ms. Whitaker's Motion to Dismiss does not address or contest – afford this Court federal question jurisdiction to hear this dispute. *See* 28 U.S.C. § 1331 (providing U.S. courts with jurisdiction to hear cases "arising under the Constitution, laws, or treaties of the United States."); *Prakesh v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) (Holding that because certain "claims 'aris[e] under the . . . laws . . . of the United States' – the provisions of the Fair Labor Standards Act – the District Court *clearly* has jurisdiction to consider them." (emphasis supplied)).

Ms. Whitaker's arguments why this Court should not exercise its federal question jurisdiction are inapposite. First, Ms. Whitaker's opinion as to the financial value of Ms. Zirintusa's claims (*See* Whitaker 12(b)(1) Motion at 4) is not germane to the analysis because, contrary to Ms. Whitaker's assertion, federal question jurisdiction does not depend on the amount in controversy. *See* 28 U.S.C. § 1331. Second, Ms. Whitaker's observations about this Court's ability to exercise jurisdiction over certain ERISA preemption matters (*See* Whitaker 12(b)(1) Motion at 5) are not relevant because Ms.

Zirintusa asserts no ERISA claims. Third, Ms. Zirintusa respectfully disagrees with the Ms. Whitaker's position that "[t]his is not a matter worthy of the Court's time, attention and consideration." *Id.* at 4. Where, as here, Congress has vested the federal courts with jurisdiction to hear a matter, the federal courts are generally obliged to do so. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (discussing duty of courts to address bona fide cases and controversies).

As for Ms. Zirintusa's other claims, this Court properly may exercise supplemental jurisdiction over them because they "form part of the same case or controversy" as Ms. Zirintusa's FLSA claims. 28 U.S.C. § 1367(a); *see generally United Mine Workers v. Gibbs*, 383 U.S. 715, 728 (1966) (supplemental jurisdiction appropriate if claims arise out of the "same nucleus of operative fact" and exercise of such jurisdiction would be in the interests of justice). Where, as here, an employment relationship gives rise to state law claims in addition to FLSA claims, federal courts have not hesitated to exercise supplemental jurisdiction over the state law claims. *See Ball v. District of Columbia*, 795 F. Supp. 461, 466 (D.D.C. 1992) (in FLSA case, exercising supplemental jurisdiction over eight state law claims that "involve[d] an alleged failure by the [defendant] to pay plaintiffs what they are legally due").

First, along with Ms. Zirintusa's three FLSA claims (Counts III, IV and V), she has alleged two parallel D.C. wage and hour claims. Courts routinely exercise supplemental jurisdiction over such claims. *See e.g., Mathis v. About Your Smile, P.C.*, No. Civ.A.02 CV 597, 2004 WL 2039857 (E.D. Pa. Sept. 13, 2004) (in FLSA case, exercising supplemental jurisdiction over state wage and hour claim); *Chen v. Street Beat*

*Sportswear, Inc.,* 364 F. Supp. 2d 269 (E.D.N.Y. 2005) (same); *Barelson v. Winnebago Indus. Inc.*, No. C02-3008-MWB, 2003 WL 22427817 (N.D. Iowa Oct. 24, 2003) (same).

Second, Ms. Zirintusa alleges claims for Ms. Whitaker's breach of her employment contract (Count I), Ms. Whitaker's breach of the related the Affidavit of Support that promises to provide support for Ms. Zirintusa while in this country (Count II), and unjust enrichment based on the value of the services that Ms. Zirintusa has provided to Ms. Whitaker (Count XI). All of these claims arise from the same employment relationship on which Ms. Zirintusa's FLSA claims are based. Accordingly, this Court should exercise supplemental jurisdiction over them. *See Mathis*, 2004 WL 2039857 (exercising supplemental jurisdiction over common law breach of contract claim in FLSA case); *Chen v. Beat Sportswear, Inc.,* 364 F. Supp. 2d 269 (E.D.N.Y. 2005) (same); *Brauer v. Pannozzo*, 232 F. Supp. 2d 814 (N.D. Ohio 2002) (same); *Anderson v. City of Wood Dale*, No. 93 C 425, 2001 WL 477158 (N.D. Ill. May 3, 2001) (same).

Third, Ms. Zirintusa alleges claims for torts that relate to the parties' employment relationship, *i.e.*, Ms. Whitaker's fraud in inducing Ms. Whitaker to accept an offer of employment (Count X), and Ms. Whitaker's interference with Ms. Zirintusa's previous employment contract as part of the same effort to procure Ms. Zirintusa's employment (Counts VIII and IX). Because these torts arise from the same employment relationship between the parties, they too are properly subject to this Court's supplemental jurisdiction. *Smith v. Bonds*, No. 91-818-CIV-5-D, 1993 WL 556781 (E.D.N.C. Sept. 28, 1993) (in FLSA case, exercising supplemental jurisdiction over assault claim where defendant had menaced plaintiff with a shotgun while plaintiff was at work); *Brauer*, 232 F. Supp. 2d 814 (in FLSA case, exercising supplemental jurisdiction over claims that

- 10 -
400089331v2

employer invaded employee's privacy and used her persona without her consent); *Targia v. U.S. Alliance Mgmt. Corp.*, No. 02-23055-CIV, 2003 WL 23312749 (S.D. Fla. Nov. 14, 2003) (in FLSA case, exercising supplemental jurisdiction over counterclaim for breach of fiduciary duty, conversion and money received based on employee's alleged on-the-job wrongdoing).

In short, Ms. Whitaker makes no argument why this Court should not exercise its supplemental jurisdiction over the state law claims arising out of the same employment relationship that gave rise to Ms. Zirintusa's FLSA claims, and indeed, there is none.

## II.     Ms. Zirintusa Has Capacity to Bring This Action.

Ms. Whitaker's argument that Ms. Zirintusa lacks capacity to bring this suit pursuant to Rule 17(b) rests on her erroneous assertion that Ms. Zirintusa is in this country unlawfully. In fact, as set forth in the Complaint, Ms. Zirintusa is here lawfully, on a student visa, and is currently attending classes at Montgomery College. *See* Complaint ¶ 9. Ms. Zirintusa is perplexed by Ms. Whitaker's allegations to the contrary and can see no good faith basis for them. In any event, this Court need not reach that issue, because the allegations in the Complaint must be taken as true at this stage of the proceedings. *Stewart*, 275 F.3d at 1132, 1135.

Moreover, courts that have considered the issue have squarely rejected Ms. Whitaker's position that out-of-status immigrants should be denied the protections of our courts and the right to obtain justice through our legal system. "[A] well established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs. . ." *Rosa v. Partners in*

*Progress, Inc.*, 868 A.2d 994, 996 (N.H. 2005) (citing *Mendoza v. Monmouth Recycling Corp.*, 672 A.2d 221 (N.J. Super. App. Div. 1996)); *Arteaga v. Literski*, 265 N.W.2d 148, 149 (Wis. 1978) ("[S]tate courts and lower federal courts who have considered the question have held that the illegal alien has the capacity to sue."). Indeed, the only case that Ms. Whitaker cites in support of her view, *Coules v. Pharriss*, 250 N.W. 404 (Wis. 1933), was reversed on exactly this point. *See Arteaga*, 265 N.W.2d at 150 ("To the extent that *Coules* may be interpreted as holding that illegal aliens have no access to the courts, it is overruled.").

### III.     Ms. Zirintusa Alleges the Existence of an Employment Contract.

Ms. Whitaker argues that Ms. Zirintusa cannot maintain a claim for breach of contract because Ms. Whitaker contends that Ms. Zirintusa was an "at will" employee. *See* Motion to Dismiss at 8. Once again, Ms. Whitaker has ignored the allegations in the Complaint. The Complaint makes clear that Ms. Whitaker offered, and Ms. Zirintusa accepted, employment for a term of three years. *See* Complaint ¶¶ 3, 25. Employment for a defined term is not at-will employment. *See Nickens v. Labor Agency of Metro. Washington*, 600 A.2d 813, 816-17 (D.C. 1991) (holding that if parties evidence intent to enter a contract for a specific term, the contract is not terminable at will).

The cases that Ms. Whitaker cites, by contrast, all involved facts that made clear that the employee could be terminated at will. *See e.g., Van Heernden v. Total Petroleum, Inc.*, 942 F. Supp. 468, 471 (D. Colo. 1996) (plaintiff signed disclosure affording his employer the right to terminate him at any time); *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223-24 (7th Cir. 1991) (plaintiff never alleged that time period of his employment was discussed); *Francis v. Gaylord Container Corp.*, 837 F. Supp. 858, 861

(S.D. Ohio 1992) (defendant made only vague statements promising to help plaintiff obtain a "green card"). Accordingly, Ms. Whitaker's argument that an at-will employee cannot claim a breach of contract upon termination are irrelevant to Ms. Zirintusa's claim for breach of the parties' three-year employment contract. Taking the allegations in the Complaint as true, there is simply no basis to dismiss Ms. Zirintusa's breach of contract claim.[2]

### IV. Ms. Whitaker's Affidavit of Support is a Binding Contract that Ms. Zirintusa has the Right to Enforce.

Count II of the Complaint seeks to hold Ms. Whitaker accountable for her breach of her sworn Affidavit of Support, in which she committed to provide support to Ms. Zirintusa for three years after Ms. Zirintusa's entry into this country. *See* Complaint ¶ 4. The Affidavit at issue, which Ms. Whitaker signed and had notarized on December 22, 2003, states on its face that "I understand that this affidavit will be binding on me for a period of three (3) years after entry of the person(s) named in item 3 [*i.e.*, Idah Zirintusa]." Moreover, the affidavit sets forth Ms. Whitaker's affirmation that "I intend … to provide room, board and tuition for the above-named individual [*i.e.*, Idah Zirintusa] for the duration of their stay in status in the USA."

---

[2] Moreover, even an at-will employee must be compensated in accordance with the terms of the parties' employment agreement so long as the employment relationship is ongoing. *See Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 70-71 (D.D.C. 2005) (holding that parties to an at-will employment relationship can still negotiate binding terms of the relationship, and the employer is obligated to compensate the employee for any work performed during the relationship in accordance with such terms). In this case, Ms. Zirintusa has alleged that Ms. Whitaker breached their employment contract while she was working for Ms. Whitaker. In derogation of her contractual duties, Ms. Whitaker failed to provide for Ms. Zirintusa's food and medical care and failed to make payments to support Ms. Zirintusa's family in Africa. *See* Complaint ¶¶ 6, 21, 29, 35.

Despite the plain language of these promises, Ms. Whitaker asserts that she ought not be held liable for their breach because only the U.S. government, and not Ms. Zirintusa, has standing to enforce the Affidavit of Support. This view is incorrect. According to Ms. Whitaker, the Affidavit of Support, "by its plain, unequivocal and unambiguous language created a relationship between the plaintiff and the defendant with the United States government as third-party beneficiary." *See* Motion to Dismiss at 5. If so, there can be no doubt that Ms. Zirintusa has standing to enforce the agreement. *See Beckett v. Airline Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) ("In a third party beneficiary contract, benefits flow to both the promisee and the third party, and either may sue to enforce the contract.") (quoting Restatement (Second) Contracts § 304 (1981)); *Piedmont Resolution, LLC v. Johnston, Rivlin & Foley*, 999 F. Supp. 34, 49 (D.D.C. 1998) (holding that plaintiff had standing to sue on a contract if the plaintiff was either a principal to the contract or a third party beneficiary of whom the defendant had notice).

Ms. Whitaker's next argument, that her Affidavit of Support is not a binding obligation, is equally misplaced. It is axiomatic that terms of a contract are determined by reviewing the plain language on the face of the contract. *See Welch v. Sherwin*, 300 F.2d 716, 717-18 (D.C. Cir. 1962). Here, the plain language of Affidavit demonstrates Ms. Whitaker's intent to be bound. Despite this fact, Ms. Whitaker asserts that it is not binding on her because "there is no federal legislation creating a legally binding contract from a sponsorship form." Motion to Dismiss at 6. This argument misses the mark because, insofar as the Affidavit creates a direct relationship between Ms. Whitaker and Ms. Zirintusa (as Ms. Whitaker asserts in her Motion to Dismiss), it is irrelevant whether

the U.S. government was authorized to enter the contract.  In essence, the Affidavit is akin to a promissory note – a promise by one private party to make payments to another, that does not need governmental approval to be efficacious.

The cases that Ms. Whitaker cites are not to the contrary.  *State of Michigan ex rel. Attorney General v. Binder*, 96 N.W.2d 140 (Mich. 1959), a Michigan case from 1959 on which Ms. Whitaker primarily relies, addresses the right of the State of Michigan to collect under an Affidavit of Support that the defendant submitted to the U.S. government, to which Michigan was not a party and in which Michigan was not named a third-party beneficiary.  Accordingly, *Binder* does not purport to address the question at issue here, *i.e.*, whether the recipient of the support named in the Affidavit may enforce that Affidavit.  The other cases Ms. Whitaker cites – *Geva,* 931 F.2d 1220:, *Van Heernden,* 942 F. Supp. 468; *Francis*, 837 F. Supp. 858l and *Mortensen v. Magneti Marelli U.S.A., Inc.,*  470 S.E.2d 354 (N.C. Ct. App. 1996) – are even farther afield.  None of these cases involved a suit to enforce an Affidavit of Support.  Instead, these cases all address the question whether the defendant breached an employment contract with the plaintiff.  Whether Ms. Whitaker breached her employment contract with Ms. Zirintusa is a different question (and a different Count in the Complaint) from whether Ms. Whitaker honored her obligations pursuant to the Affidavit of Support.

## V.     Ms. Zirintusa's Other Claims Should Not Be Dismissed

Ms. Zirintusa's Complaint raises eleven counts.  Ms. Whitaker only addresses two of them – her breach of the parties' employment contract (Count I) and her breach of her Affidavit of Support (Count II).  Nevetheless, Ms. Whitaker briefly remarks that if Ms.

Zirintusa's contract claims are dismissed, all of Ms. Zirintusa's other claims also must be dismissed. *See* Motion to Dismiss at 8. There is no legal support for this novel view.[3]

## CONCLUSION

For the foregoing reasons, Ms. Whitaker's Motion to Dismiss should be denied.

Plaintiff respectfully requests oral argument on the Motion to Dismiss.

Dated: November 28, 2005

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

  /s/ Alex C. Lakatos
Alex C. Lakatos, Esq. (DC Bar No. 453763)
Christine N. Kearns, Esq. (DC Bar No. 416399)
2300 N Street N.W.
Washington, DC 20037-1128
Telephone:  (202) 663-8693
Facsimile:   (202) 663-8007
E-mail: Alex.Lakatos@pillsburylaw.com

Kerri Sherlock, Esq.
Break The Chain Campaign
733 15th Street NW
Washington, DC 20005
Telephone: (202) 787-5245
Facsimile: (202) 387-7915
E-mail: kerri@ips-dc.org

Counsel for Plaintiff Idah Zirintusa

---

[3] Ms. Whitaker also takes the position that even if her offers to provide support to Ms. Zirintusa's family were disingenuous, and even if she did not intend to honor her promises when she made them, such misconduct is not actionable as fraud. *See* Motion to Dismiss at 8. The law, however, is to the contrary. *See Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1234-35 (D.C. 2005) ("A promise or contractual commitment may be actionable as fraud (misrepresentation) if at the time of its making, the promisor had no present intention of carrying it out.").