UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Idah Zirintusa, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER:   1:05CV01738 |
| ) | |
| Rosa Whitaker ) | JUDGE:   Emmet G. Sullivan |
| ) | |
| and ) | DECK TYPE:   Labor/ERISA |
| ) | (Non-employment) |
| Pauline Harris ) | |
| ) | DATE STAMP:   12/22/2005 |
| Defendants. ) | |

## MOTION FOR JUDGMENT ON THE PLEADINGS
## OF DEFENDANT ROSA WHITAKER

Defendant, Rosa Whitaker, by and through counsel, moves this Honorable Court for Judgment on the Pleadings, and as reasons therefore states as follows:

1. The only writing upon which Plaintiff relies to establish the alleged agreements between her and Defendant Rosa Whitaker is the "Affidavit of Support." A plain reading of that form does not give rise to the several agreements into which the parties are alleged to have entered.

2. The "Affidavit of Support" upon which Plaintiff relies to sustain her case, on its face and by law, does not create any obligations for Defendant Whitaker with respect to Plaintiff.

3. The Plaintiff cannot show any other alleged agreements between the parties because the Parole Evidence Rule bars such claims.

4. If Plaintiff was an employee of Defendant Whitaker --- and Defendant Whitaker does not here concede that she was --- at best she was an "Employee At Will," subject to termination at anytime, for any reason or for no reason.

5. Plaintiff has not followed the prescribed process for seeking relief for the claims she has made. Federal Court is not a proper venue for this matter.

These arguments are more fully set out in the accompanying Memorandum of Points and Authorities in Support of the Motion for Judgment on the Pleadings of Defendant Rosa Whitaker. Pursuant to LCvR 7(f), Defendant Whitaker hereby requests an oral hearing on this Motion.

21 December, 2005                    Respectfully Submitted by,

*[signature: Johnny Barnes]*

Johnny Barnes #212985
725 – 16th Street, N.W.
Washington, D.C. 20012
Telephone: (202) 882-2828
Facsimile:  (202) 882-2828
E-Mail:     Johnny@thewhitakergroup.us

*Counsel for Defendant Rosa Whitaker*

**CERTIFICATE OF SERVICE**

I hereby certify that on 22 December, 2005, a true and signed copy of the foregoing MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT ROSA WHITAKER and the MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS, was filed electronically and mailed first class, postage prepaid to:

Christine N. Kearns, Esquire
Alex C. Lakatos, Esquire
Anne E. Langford, Esquire
2300 "N" Street, N.W.
Washington, D.C. 20037-1128

Kerri Sherlock, Esquire
Break the Chain Campaign
733 – 15th Street, N.W.
Washington, D.C. 20005

_____
Johnny Barnes #212985

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Idah Zirintusa, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER:   1:05CV01738 |
| ) | |
| Rosa Whitaker ) | JUDGE:   Emmet G. Sullivan |
| ) | |
| and ) | DECK TYPE:   Labor/ERISA |
| ) | (Non-employment) |
| Pauline Harris ) | |
| ) | DATE STAMP:   12/22/2005 |
| Defendants. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT ROSA WHITAKER

### Introduction

Plaintiff would have this Honorable Court believe that in a typical week during her fleeting four month experience with Defendant Rosa Whitaker she spent what appears to be as much as 22 hours each day going to and from school, attending school full-time, serving Defendant breakfast in bed, working for Defendant Rosa Whitaker, grocery shopping, cooking, taking out garbage, engaging in other activities, working some more for Defendant Rosa Whitaker, then working a 12-hour day for Defendant Pauline Harris each week. Wonder Woman would marvel at Plaintiff's alleged ability to multitask while apparently getting little or no sleep. Plaintiff's credibility in this instance is stretched

beyond belief. Fortunately, under Federal Rule of Civil Procedure 12(c), pursuant to which this Motion is brought, the Court need not accept Plaintiff's claims as factual. Unwarranted factual inferences will not be drawn to aid the Plaintiff in a 12(c) Motion. The court is not required to ignore facts in a complaint that undermine the claims of a plaintiff. *Northern Indiana Gun and Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). And, see *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). And, the Plaintiff's legal characterizations do not bind the court. *Republic Steel Corp. v. Pennsylvania Engineering Corp.* 785 F.2d 174, 178 (7th Cir. 1986); *Northern Indiana Gun and Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Judgment on the pleadings is warranted --- as in the instant case --- where it appears beyond doubt that plaintiff will be unable to prove any facts to support the alleged claims for relief. *Nelson v. State Farm Mutual Auto Insurance Co.*, 419 F.3d 1117 (10th Cir. 2005); Pasdon v. City of Peabody, 417 F.3d 360, 363 (2d Cir. 2005); *Guise v. BWM Mortgage*, 377 F.3d 795, 798 (7th Cir. 2004); *Mele v. Federal Reserve Bank*, 359 F.3d 251, 253 (3d Cir. 2004); and *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). A Rule 12 (c) judgment will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214 (3d Cir. 2005); *United States v. Any and All Radio Station Transmission Equipment*, 207 F.3d 458, 462 (8th Cir. 2000); and *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). The motion may be granted if, as here, the moving party demonstrates that no material fact is in dispute and the moving party is entitled to judgment as a matter of law. *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992); and *Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987). The

purpose of a 12 (c) Motion for Judgment on the Pleadings is to seek a substantive disposition of the case on the basis of its underlying merits. *Alexander v. City of Chicago*, 994 F. 2d 333 (7th Cir. 1993). The underlying merits of this case clearly point to a substantive disposition in Defendant Rosa Whitaker's favor.

Plaintiff's entire case rests on a single document to support an eleven-count complaint. Each count of the Complaint is either based upon that single document or on extrinsic matter surrounding that document. As will be shown conclusively and unequivocally below, as a matter of law, the single document upon which Plaintiff relies does not create any obligation to Plaintiff, contractually or otherwise in Defendant Rosa Whitaker. As will also be shown below, any attempt to buttress Plaintiff's claims through the use of extrinsic matter is barred by the fact that there is a document that incorporates all to which the parties agreed to obligate themselves.

**Pleaded Facts That Undermine Plaintiff's Claims**

The Court need look no further than to Plaintiff's own Complaint (hereafter "*Complaint*") and to other pleadings filed with the Court by Plaintiff to determine that Plaintiff is not entitled to relief on any of her counts as a matter of law. Plaintiff claims to have entered into an employment contract with Defendant Rosa Whitaker for a period of three years. See *Complaint*, paragraphs 2,3 and 21. Plaintiff does not offer any written document to support that claim. Instead, Plaintiff refers to Defendant Rosa Whitaker's "Affidavit of Support" as evidence of a "three-year contract" between the parties. See *Complaint*, paragraph 3. This conclusion, it seems, is based upon Paragraph 6 of the Affidavit of Support (hereafter "*Affidavit*"), a document that has been made a part of the record by Plaintiff as Exhibit A of her Opposition to Defendant Whitaker's

Motion to Dismiss (hereafter "*Opposition*").  Paragraph 6 does state that, "…this affidavit will be binding upon me for a period of three (3) years…" Again, however, as is shown conclusively below, no court has ruled that these affidavits of support give rise to any binding obligations of the sponsor of the affidavit (Defendant Rosa Whitaker in this instance). Plaintiff offers no other document whatsoever to support her many claims in the Complaint.  As is shown below, in the absence of a written agreement, any claim of employment, at best, must be a claim for employment at will.  And, either party can terminate a situation involving an employment at will at any time.  It would appear that Plaintiff's motives, in part at least, for making so many baseless claims is a thinly veiled attempt to make this case seem to involve in excess of $75,000, the required monetary level of this Court, rather than the less than $7,500 case (if a case at all) that comes within the jurisdiction of Small Claims Court.  No matter what degree of elasticity Plaintiff feebly seeks to apply here, the hard reality is that this is no federal case, if a case at all.

In Count One, *Complaint*, page 12, Plaintiff alleges "Breach of Contract --- Employment Agreement."  See also *Opposition*, Page 1.  Yet, Plaintiff attaches no written agreement to any of her several pleadings filed with the Court.  On this point, the law is so crystal clear that it almost need not be argued.  There can be no employment contract without a written contract.  Plaintiff has not and cannot produce a written employment contract.  The "Affidavit of Support" is not an employment contract!  In Count Two, *Complaint*, page 13, Plaintiff alleges "Breach of Contract --- Sponsorship Affidavit."  This allegation goes against a giant wave of legal opinion that is in solid disagreement with Plaintiff.  Plaintiff's name or signature does not appear at any place within the *Affidavit*.  It is a document required by the United States Government, for the

sole benefit of the Government and was not the result of a bargain and exchange, an offer and acceptance between Plaintiff and Defendant Rosa Whitaker. Moreover, Plaintiff makes no claim that this document reflects consideration of any kind, an essential element for a binding contract. In Count Three, *Complaint*, page 14, Plaintiff alleges "Minimum Wage Violations under the FLSA, 29 U.S.C. Section 206;" in Count Four, *Complaint*, Plaintiff alleges "Overtime Compensation Violations under FLSA, 29 U.S.C. Section 207;" and in Count Five, *Complaint*, Plaintiff alleges "Retaliation under the FLSA, 29 U.S.C. Section 215(a). Again, each of these counts assumes that there was an employment relationship between Plaintiff and Defendant Rosa Whitaker. Yet the sole document upon which Plaintiff relies in this case makes clear that Plaintiff's status is that of a student and not a worker or employee. In fact, Plaintiff remains a student, according to her pleadings. See *Opposition,* page 11. For reasons stated above, these claims cannot be maintained. There is no documentary evidence of an employment agreement. Moreover, under the Fair Labor Standards Act, the federal courts give way to local courts. And, under the Fair Labor Standards Act, there is a process by which Plaintiff should seek administrative relief before seeking relief in the courts. Similarly, in Count Six, *Complaint*, wherein Plaintiff alleges "Violations of D.C. Payment and Collections of Wages Law, D.C. Code Ann., Section 32-1303;" and Count Seven, *Complaint*, wherein Plaintiff alleges "Violations of the D.C. Minimum Wage Act Revision Act of 1992, formerly D.C. Code Ann., Sections 36.220-1 and 36.220-2 (1993), there is no documentary evidence of an employment agreement, clearly local laws should be administered by the local courts and Plaintiff has not sought administrative relief available to her. With respect to Count Eight, Complaint, Plaintiff alleges "tortuous

Interference with Contract;" Count Nine, *Complaint*, Plaintiff alleges "Tortious Interference with Prospective Advantage; Count Ten, *Complaint*, Plaintiff alleges "Fraud;" and Count Eleven, *Complaint*, Plaintiff alleges "Unjust Enrichment." None of these alone or together with any one or all of the others would permit access to a federal court. They are here, Plaintiff maintains, because they are part of the Court's "supplemental jurisdiction." See *Opposition*, page 10. This argument is a classic tale of the "tail wagging the dog." While judicial economy is a genuine consideration when deciding whether to adjudicate matters that, on their own, would not properly be before a court, that principle applies only if the core case has some legitimate basis. Here it does not. Moreover, as in other counts above, there is no documentary evidence of an employment agreement, and the local courts should administer clearly local laws.

There are other factual claims that undermine the *Complaint*. The "well-paid" job that Plaintiff claims to have left, giving rise to Counts Eight, Nine, Ten and Eleven of the *Complaint*, paragraphs 1, 16, 17 and 18 and *Opposition*, page 3, it turns out was only 25% of what she earned in Uganda. See *Complaint*, paragraph 21(1). Plaintiff cannot have it both ways, urging the Court to believe that she was lured away from her comfortable environment in Uganda, while at the same time admitting that she twice rejected Defendant Rosa Whitaker's offers, see *Complaint*, paragraphs 19 and 20, then accepted "an improved offer …" See *Complaint*, paragraph 21(1).

Plaintiff admits that she received at least $750 from Defendant Rosa Whitaker during the months of September, October, November and December 2004. See *Complaint*, paragraph 33. Plaintiff further states that the federal Minimum Wage at the time was $5.15 per hour, see *Complaint*, paragraph 55, and that the D.C. Minimum Wage

was $6.15 per hour, see *Complaint*, paragraph 108. Plaintiff then seeks to stretch her claim by asserting that she worked "an estimated 60 hours per week or more," (48 hours of which, Plaintiff concedes, was for Defendant Rosa Whitaker. The other 12 was allegedly for Defendant Pauline Harris, see *Complaint*, paragraph 34), while during the same week, going to and from school, attending school full-time, serving Defendant breakfast in bed, grocery shopping, cooking, taking out garbage, engaging in other activities, working some more for Defendant Rosa Whitaker, then working a 12-hour day for Defendant Pauline Harris each week. If the Court finds this routine unbelievable, the Court is not required to believed it for purposes of this Motion. More importantly, Plaintiff's own figures undermine her minimum wage claims in Counts Three, Four, Six and Seven. Count Five can only be sustained if the Court finds some employer-employee relationship between Plaintiff and Defendant Rosa Whitaker, and Defendant Rosa Whitaker asserts that it cannot. If the Court does not believe Plaintiff's unbelievable claims in her other counts, the Court is not required to believe Plaintiff in Count Five.

Plaintiff cannot escape her own factual pleadings that demonstrate that the only writing upon which Plaintiff relies to establish the alleged agreements between her and Defendant Rosa Whitaker is the *Affidavit*. A fair and plain reading of the *Affidavit* does not give rise to the several agreements into which the parties are alleged to have entered. Without anything more, Plaintiff's *Complaint*, Counts One through Eleven, must fall like dominoes.

**Argument 1 - The only writing upon which Plaintiff relies to establish the alleged agreements between her and Defendant Rosa Whitaker is the "Affidavit of**

**Support." A plain reading of that form does not give rise to the several agreements into which the parties are alleged to have entered.**

The *Affidavit* did not create a duty upon Defendant Rosa Whitaker. Either party may terminate the sponsorship relationship at any time, *Geva v. Leo Burnett Company, Inc.*, (931 F.2d 1220, 7th Cir. 1991). In *Geva*, the defendant submitted a petition to INS in support of Plaintiff's employment visa. Plaintiff was fired four months later and then sued for lost wages under an implied employment agreement. The court held that the immigration petition, which stated that the duration of Plaintiff's employment would be three years, did not amount to a promise to employ him for that time period. Similarly, in *Van Heerden v. Total Petroleum, Inc.*, (942 F. Supp. 468, D. Colo. 1996), plaintiff, a South African native, transferred from the South African branch of defendant's company to a United States branch. When his job was eliminated two years later, he filed several claims, including one for breach of an express or implied contract based upon immigration affidavits filed by the defendant for plaintiff's visa purposes. The court held that, "the parties' negotiations, including obtaining the necessary immigration papers, did not create an express or implied contract of employment because no consideration was exchanged."

**Argument 2 - The "Affidavit of Support" upon which Plaintiff relies to sustain her case, on its face and by law, does not create any obligations for Defendant Whitaker with respect to Plaintiff.**

The *Affidavit* that is at the center of this litigation is Form I-134, "Affidavit of Support," as revised on June 17, 2004. It is a form published by the U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, OMB No. 1615-

0014, expiring on April 30, 2007. It is available on-line and has been made a part of the record of this case by Plaintiff. See *Opposition*, Exhibit A. Form I-134, by its plain, unequivocal and unambiguous language created a relationship between the plaintiff and the defendant with the federal government as third-party beneficiary. If there is something to recover, only the federal government has standing to recover, because the form was intended to prevent the plaintiff from becoming a burden to the state. The form clearly states, in pertinent part at page 1, paragraph 4, that the purpose of the form is to "assur[e] the United States Government that the person(s) named in item 3 [the Plaintiff] will not become a public charge in the United States," *8 USC §1601(5) (2005)*. See also *the Federal Register, Volume 62, Number 202, 8 CFR Parts 214.2(h)(4)(iii)(E) and the Immigration and Nationality Act at Section 213A*. The form further states, at page 3, Part III, "Joint and Several Liability Issues, that "Sections 1621(e) and 4159d) of the Social Security Act and subsection 5(i) of the Food Stamp Act also provide that an alien and his or her sponsor shall be jointly and severally liable to repay any SSI, TANF or Food Stamp benefits that are incorrectly paid because of misinformation provided a sponsor or because of a sponsor's failure to provide information." "It is a compelling governmental interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy," *State, ex re Attorney General v. Binder,* (356 Mich. 73). In *Binder*, defendants sought to overturn a lower court decision that allowed plaintiff to recover the cost of care for an individual confined in a state mental hospital. Defendants sponsored a woman and guaranteed that she would not become a public charge. As the federal government had not enacted any legislation that required defendants to guarantee that an immigrant sponsored by them

would not become a federal charge, the affidavits signed by defendants did not amount to a contract. There is no federal legislation creating a legally binding contract from a sponsorship form. There is federal legislation making the federal government the third party beneficiary of the subject form. Furthermore, the form in the *Binder* case even had a much higher standard than the I-134 form. In *Binder*, the form stated: "That each of us do promise to support said person during her lifetime and promise that she will never become a public charge...we intend to support said applicant from our income in the event that she is ever unable to work..." For cases supporting the *Binder* decision, see also *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220 (7th Cir. 1991); *Van Heerden v. Total Petroleum, Inc.*, 942 F. Supp. 468 (D. Colo. 1996); *Francis v. Gaylord Container Corporation*, 837 F. Supp. 858 (S.D. Ohio 1992); and *Mortensen v. Magneti Marelli U.S.A., Inc.*, 470 S.E.2d 354 (N.C. App., 1996).

**Argument 3 - The Plaintiff cannot show any other alleged agreements between the parties because the Parole Evidence Rule bars such claims.**

The Parol Evidence Rule limits the extent to which a party may establish that discussions or writings prior to or outside of the signed written contract should be taken as part of the agreement. The rule is designed to provide stability in business transactions and protects the agreement from the risk of perjured testimony and the risk of uncertain testimony of a party with a "slippery" and/or "self-serving" memory. At trial, the rule excludes earlier oral agreements or any contemporaneous oral agreements. The basis of the rule is such that these earlier agreements are not intended to survive, but to be merged into the final agreement.

The Parol Evidence Rule asks whether a particular subject of negotiation is embodied by the contract. The answer generally depends upon the intent of the parties. The parties are not obliged to embody their transaction in a single document; yet they may, if they choose. In the instant case, as has been stated, there is only one, a single document, upon which Plaintiff relies to establish her several claims. All other matter is extrinsic to that document. In order to determine the intent of the parties, the court looks to their conduct and language as well as the surrounding circumstances. The actual contract itself is not enough to determine intent. What it was intended to cover cannot be known until the court knows what there was to cover. The question being whether certain subjects of negotiation were intended to be covered. The court must compare the writing and the negotiations before it can determine whether they were in fact covered. *Mitchell v. David*, 51 A.2d 375 (1947). Plaintiff's reliance on the *Affidavit* as the basis for the existence of, the term of and the value of an agreement leaves no room to argue that the Parole Evidence Rule is without application here. It is the only evidence of an agreement. Without it, Plaintiff has nothing. With it, Plaintiff only has what it embodies.

There are two key issues. First, one must determine whether the parties intended the writing to be the final written agreement. Second, one must determine whether there is partial or total integration of the prior oral or written agreements. If a court determines that only partial integration exists, the agreement may be supplemented by additional terms. There are five different tests to determine the applicability of the rule.

*Four Corners Rule*

In applying this first test, the trial judge actually examines only the written agreement and determines whether the agreement represents the final intent of the parties.

The drafter of the agreement is subject to the interpretation of the judge hearing the case. This test usually favors the drafter of the agreement unless the agreement is too specific or too vague. If the agreement is poorly drafted, the drafter of the agreement suffers, especially if this interpretation is beneficial to the other party. *Mitchell v. David*, 51 A.2d 375 (1947)

*Any Relevant Evidence Test*

The second test directs the court to seek out the actual intention of the parties to determine if the document was partially or totally integrated. Under this test, a judge would admit evidence of all relevant prior negotiations and treat the document as partially integrated. Judges increasingly apply this rule because it permits the court wide latitude in making its determination to admit evidence, since anything may be relevant. *Mitchell v. David*, 51 A.2d 375 (1947)

*Collateral Contract Rule*

This test is subject to two interpretations. Under one version, (A), all written agreements are deemed to be partially integrated. Additional terms in prior or contemporaneous agreements that do not contradict the writing are admissible. The key point is that the additional terms may not contradict the terms in the main agreement. Additional writings explaining the original writing are admissible. Under the relevant evidence test, (B) if the additional terms are covered in the original written agreement, the evidence is excluded. If the additional terms are not covered by the original agreement, however, the document is treated as partially integrated and the court considers the additional terms. This test is applied only by a few courts and is open to subjective interpretation.

*The Modern Test*

This test holds that if the written agreement includes a merger clause, expressly and conspicuously stating that this writing is intended to be the final and complete version of the agreement, then the agreement is to be completely integrated. Only if it is obvious that the agreement is incomplete, or that the merger clause was included as a result of fraud or mistake, will a court consider additional evidence. In the absence of the merger clause, the court will examine the writing. Additional terms may be provided if the writing is obviously incomplete, or if the additional terms are of the type that would naturally appear in a separate writing.

*U.C.C. Test*

The fifth test is set forth in Section 2-202 of the Uniform Commercial Code, which applies to contracts for the sale of goods. Section 2-202 states:

> "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in the writing intended by the parties as a final expression of the agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement, but may be explained or supplemented (a) by course of dealing or usage of trade... or by course of performance...; and (b) by evidence of consistent terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of agreement."

The U.C.C. test is a liberal test because evidence of a separate agreement is admissible unless the matters covered in the alleged agreement "certainly would have

been included" in the writing. This test essentially follows the common law parole evidence rule established by the previous four tests.

Taking any of these five well-established tests, Plaintiff will not be able to introduce extrinsic material at trial or in any evidentiary proceeding before the Court. Consequently, the single document upon which Plaintiff relies to sustain her claims is all that is available to her. That document, for reasons stated above, does not support the eleven counts of the Complaint, and defendant Rosa Whitaker is entitled to Judgment as a matter of law.

**Argument 4 - If Plaintiff was an employee of Defendant Rosa Whitaker --- and Defendant Rosa Whitaker does not here concede that she was --- at best she was an "Employee At Will," subject to termination at anytime, for any reason or for no reason.**

If Plaintiff was employed by Defendant the employment was at-will and could be terminated at any point. There was no express or implied contract between the parties, *Dunaway v. Int'l Brotherhood of Teamsters*, 354 U.S. App. D.C. 36. Plaintiff sued based upon theories of gender, national origin, age and breach of contact. While she was able to prove from the derogatory statements that would convince a reasonable jury that there were underlying reasons for her termination, she was unable to prove that she was a permanent employee and that there was a breach of a contract. In the District of Columbia, employment contracts for no definite period of time are terminable at the will of either party absent clear evidence of the parties' intent to contract otherwise. Because of that well-established law, Plaintiff's various claims for fraud and misrepresentation must also fall. Even if Defendant Whitaker did not intend to offer Plaintiff a three-year

term of sponsorship or employment, that Defendant Whitaker did not intend to do so is not actionable, *Van Heerden*, 942 F.Supp. 468, at 475 (D.Colo., 1996).

**Argument 5 - Plaintiff has not followed the prescribed process for seeking relief for the claims she has made. Federal Court is not a proper venue for this matter.**

Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case. Federal courts are courts of limited jurisdiction and may adjudicate only those cases where there is both constitutional and statutory authority that gives rise to federal jurisdiction. It is well settled that a plaintiff seeking to invoke federal jurisdiction has the burden of demonstrating, at the outset, that the federal court has the authority to hear and decide a case, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936). This Plaintiff, on the record herein, has failed to meet that burden. The Fair Labor Standards Act, upon which Plaintiff wholly relies to confer jurisdiction in this Court in this matter was not intended to have the federal courts used in such a manner. See 29 U.S.C. Sections 101 and 102. Moreover, actions in Washington, D.C. involving wages, including claims of minimum wage violations, overtime claims and claims of non-payment should first be brought before the Executive Branch in the District of Columbia. Plaintiff has not exhausted these administrative remedies, is not properly before this Federal Court, has a claim that if properly before any court should be before the Small Claims Branch of the D.C. Superior Court. See generally D.C. Code 32-1007 (2001 Edition, as amended).

**Conclusion**

Plaintiff, after threatening and seeking to intimidate Defendant Rosa Whitaker into an unjust and undue settlement of this matter over a protracted period of time, now brings this case in haste, slinging unfounded and unsubstantiated allegations, allegations that can not be sustained as a matter of fact or law and brings it in this Federal Court. This is an unwarranted, fragile, improperly situated and ill advised matter to bring before a federal court and should be disposed of before the Executive Branch of the District of Columbia Government, as the law provides.

*WHEREFORE*, the premises considered, Defendant respectfully requests:

1. That the Motion of Defendant Rosa Whitaker be granted in all respects and that Judgment be entered for Defendant Rosa Whitaker on the Complaint of Plaintiff.

2. For such other and further relief as to the Court seems just and proper.


22 December 2005          Respectfully Submitted by,

                          *(signature: Johnny Barnes)*
                          Johnny Barnes #412985
                          7725 – 16th Street, N.W.
                          Washington, D.C. 20012
                          Telephone: (202) 882-2828
                          Facsimile:  (202) 882-2828
                          E-Mail:     Johnny@thewhitakergroup.us

                          *Counsel for Defendant Rosa Whitaker*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Idah Zirintusa, ) | |
| Plaintiff, ) | |
| v. ) | CASE NUMBER: 1:05CV01738 |
| Rosa Whitaker ) | JUDGE: Emmet G. Sullivan |
| and ) | DECK TYPE: Labor/ERISA (Non-employment) |
| Pauline Harris ) | DATE STAMP: 12/22/2005 |
| Defendants. ) | |

**PROPOSED ORDER**

This matter came on to be heard in open court on the ____ day of _____, 2006, on Defendant Rosa Whitaker's Motion for Judgment On The Pleadings, and the Court after considering the Motion, Plaintiff's Opposing Points and Authorities, Defendant Rosa Whitaker's Reply Memorandum, the arguments of counsel and the record herein, it is hereby ORDERED:

That the Motion of Defendant Rosa Whitaker be granted in all respects and that Judgment be entered for Defendant Rosa Whitaker on the Complaint of Plaintiff.

_____
Judge Emmet G. Sullivan
United States District Court for the District of Columbia