IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| IDAH ZIRINTUSA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROSA WHITAKER<br><br>and<br><br>PAULINE HARRIS,<br><br>  Defendants. | Case No. 1:05CV01738 (EGS/JMF) |

**PLAINTIFF IDAH ZIRINTUSA'S SUPPLEMENTAL BRIEFING
IN OPPOSITION TO DEFENDANT ROSA WHITAKER'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

At the January 17, 2006 scheduling conference in this matter, the Court afforded the parties leave to submit supplement briefs on (1) the question whether the parties' oral contract for a three-year term of employment is enforceable and (2) any other issues that Ms. Whitaker had raised for the first time in her Reply of Defendant Rosa Whitaker to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings (the "Reply") (Jan. 9, 2006). As set forth below, numerous applicable cases demonstrate that the parties' employment contract is fully enforceable. Further, none of the issues that Ms. Whitaker has raised for the first time in her Reply are meritorious.

- 1 -

- 2 -

# ARGUMENT

I.  **Ms. Zirintusa States a Claim (Count I) for Breach of the Parties' Employment Contract.**

    A.  **Multi-Year Oral Employment Contracts Are Enforceable.**

In Count I, Ms. Zirintusa states a claim for Ms. Whitaker's breach of the parties' three-year employment contract. *See* Complaint (Aug. 31, 2005) ¶¶ 42-47. Ms. Whitaker has argued that Count I should be dismissed on the ground that oral employment contracts are not binding. *See* Motion for Judgment on the Pleadings of Defendant Rosa Whitaker (Dec. 22, 2005) ("Motion for Judgment") at 7. There is no basis for this position. *See Freas v. Gitomer*, 256 A.2d 573 (D.C. App. 1969) (affirming an award of back pay, following a bench trial, that was based on an oral employment contract).

Courts consistently hold that oral employment contracts, even those that provide for multi-year periods of employment, are enforceable. For example, in *Hodge v. Evans Financial Services*, 823 F.2d 559 (D.C. Cir. 1987), the plaintiff had worked for the defendant for seven months, pursuant to an oral employment contract, before he was terminated. The plaintiff then alleged that he and his employer had entered into an oral employment contract for *permanent* employment and that his termination after only seven months violated that agreement. The jury awarded the plaintiff $175,000 in damages, based on the defendant's violation of the parties' oral contract. In upholding the jury's award, the *Hodge* court cited to decisions in at least sixteen different jurisdictions that enforced oral employment contracts providing employment for extended periods of time, *e.g.*, employment for life; permanent employment. *See id.* at 563 n.2.

Thus, it is clear that the parties' oral employment contract, pursuant to which Ms. Whitaker committed to provide Ms. Zirintusa employment for three years, is an enforceable obligation that Ms. Whitaker is obligated to honor. *See, e.g.*, *Vinton v. Adam Aircraft Indus. Inc.*,

232 F.R.D. 650 (D. Colo. 2005) (denying the defendant's motion for summary judgment on plaintiff's claim that he was terminated *12 years* before his oral employment contract expired); *Gerner v. Applied Indus. Materials, Inc.*, No. X08CV020192069S, 2005 WL 1805670 (Conn. Super. June 30, 2005) (affirming jury award for breach of oral employment contract for *5 year* term); *Clark v. Walker*, No 4 C 941, 2004 WL 2967105 (N.D. Ill. Nov. 30, 2004) (denying motion to dismiss claim for breach of oral employment contract for *2 year* term); *Pippett v. Waterford Dev. LLC*, No. 3:01CV1716(MRK), 2004 WL 491044 (D. Conn. Feb. 27, 2004) (denying defendant's summary judgment motion as to plaintiff's claim for violation of an employment contract for an estimated term of *3.5 to 4 years*); *Bolander v. Bolander*, 703 N.W.2d 529 (Minn. App. 2005) (affirming jury award for breach of oral contract for *2 years* of employment); *Schnider v. Carlisle Corp.*, 65 S.W.3d 619 (Tenn. App. 2003) (reversing trial court's decision that had failed to give effect to *3 year* oral employment contract).

### B.   The Statute of Frauds Is Inapplicable

At oral argument on January 17, 2006, this Court, *sua sponte*, raised the question whether the statute of frauds (D.C. Code § 28-3502 (2005)) bars Count I of Ms. Zirintusa's Complaint. Ms. Whitaker, however, has not pleaded the affirmative defense that the District of Columbia's statute of frauds bars Ms. Zirintusa's claim. *See* Answer to Complaint by Rosa Whitaker (Oct. 21, 2005); First Amended Answer of Defendant Rosa Whitaker (Nov. 4, 2005). Nor has Ms. Whitaker raised the statute of frauds in any of her papers. *See* Motion for Judgment; Reply. Accordingly, that defense should be deemed waived. *See* Fed. R. Civ. P. 8(c).

In *Virtual Defense and Development International, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9 (D.D.C. 2001), the court explained that it would not reach the statute of frauds because the defendants had not raised that defense, but rather, would treat the defense as waived:

> *Because the defendant has not raised the statute of frauds, the court will not consider whether it is a defense* to the alleged oral contract here. The statute of frauds was devised "not as a mandatory directive to reduce to writing any oral contract which comes under the statute on pain of forever foregoing the right to enforce it, but, rather, as an optional defense that the party being charged may invoke to prevent the enforcement of unfounded claims against him." *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1066 (D.C. 1980). For this reason, *the defense may be lost if not affirmatively pleaded. See id.; see also* Fed. R. Civ. P. 8(c) ("In pleading the to a preceding pleading, a party shall set forth affirmatively … statute of frauds … and any other matter constituting an avoidance or affirmative defense.").

*Id.* at 17 n.8 (emphasis added); *see also Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 90 n. 7 (D.D.C. 1998) (holding that the statute of frauds is an affirmative defense that the defendant bears the burden of proving and accordingly "the silence of [plaintiffs'] Complaint as to … [facts relevant to that defense] does not affect the viability of their claims in any way."). As in *Virtual Defense*, this Court should not reach the statute of frauds defense that Ms. Whitaker has not pleaded.

Not only would it be inappropriate for this Court to dismiss on statute of frauds grounds because Ms. Whitaker has failed to plead that defense, moreover, the defense is inapplicable because the contract between Ms. Zirintusa and Ms. Whitaker falls outside of the statute of frauds. The statute of frauds should be construed "literally and narrowly." *Hodge*, 823 F.2d at 561. Further, "the statute applies only to those contracts whose performance could not possibly or conceivably be completed within one year. The statute of frauds is thus inapplicable if, at the time the contract is formed, any contingent event could complete the terms of the contract within one year." *Id.* at 561-62.

In this case, several contingent events could have caused the contract between the parties to be completed within one year. First, Ms. Whitaker could have terminated Ms. Zirintusa for cause within the first year if Ms. Zirintusa's performance were inadequate. Second, because Ms. Zirintusa was present in the United States on a student visa, U.S. Citizenship and Immigration

- 4 -

Services could have prevented Ms. Whitaker from continuing to employ Ms. Zirintusa.  *See generally* 8 U.S.C. § 1324a.  Given that either of these events could have occurred within a year, the contract falls outside of the statute of frauds.

In *Vinton*, the district court (interpreting Colorado's statute of frauds, which is materially similar to the District of Columbia's, *compare* Colo. Rev. Stat. § 38-10-112 (1992) *with* D.C. Code § 28-3502 (2005)), explained that the parties' employment contract fell outside of the statute of frauds for reasons similar to those applicable here:  "[Because the oral employment contract] could be terminated for performance issues … the contract negotiated by the parties could have been fully performed within one year, if for example, the Defendants concluded that the Plaintiff's performance was unsatisfactory.  …  This … defeats any defense based on the statute of frauds."  232 F.R.D. at 659 (quotations omitted); *Bolander*, 703 N.W.2d at 547 (holding that statute of frauds was inapplicable "because the contract at issue here was allegedly extended for a two-year maximum, and [the plaintiff] could have died … or been fired during that time.").  The possibility that the contract between Ms. Whitaker and Ms. Zirintusa could have been completed in the first year therefore removes the contract from the scope of the statute of frauds.

Even if the contract at hand were governed by the statute of frauds (and, as set forth above, it is not), Ms. Zirintusa has pleaded several exceptions to the statute of frauds that would prevent its application in this case.  As set forth in her Complaint, Ms. Zirintusa performed fully pursuant to the parties' contractual obligations from August 19, 2004 through December 24, 2004.  Compl. ¶¶ 30-35.  During that time, Ms. Whitaker provided some benefits pursuant to the contract, *e.g.*, some pay, school tuition, shelter.  Compl. ¶¶ 31, 33.  Because of this partial performance of the contract, the statute of frauds is inapplicable.

In *Fitzgerald v. Hunter Concessions*, 710 A.2d 863 (D.C. App. 1998), the plaintiff brought suit in 1996, alleging that the defendant had ceased honoring their oral employment contract as of 1993. The trial court dismissed this claim on statute of frauds grounds, and the Court of Appeals reversed, explaining that because the defendant had performed on the contract prior to the breach, the partial performance exception applied to prevent application of the statute of frauds. *Id.* at 865. Similarly, in *Schnider*, plaintiff, a chef, brought suit alleging that the defendant, a restaurant owner, had violated the parties' *three-year* oral employment contract by terminating the chef within *several months* of when the restaurant opened. 65 S.W.3d at 620. Following a bench trial, the lower court held that that the Tennessee statute of frauds (which is materially similar to the District of Columbia's, *compare* T.C.A. § 29-2-101 *with* D.C. Code § 28-3502) barred a claim for breach of the contract. The court of appeals reversed and remanded, holding that because the parties had performed partially on the contract, the part performance exception prevented application of the statute of frauds. *Id.* at 622-23; *see also Patrick v. Hardesy*, 483 A.2d 692 (D.C. App. 1982) (holding that an oral contract for the sale of land was not subject to the statute of frauds because plaintiff had engaged in part performance by enhancing the land). Similarly, in the instant case, Ms. Zirintusa's partial performance, as well as Ms. Whitaker's, prevent the application of the statute of frauds.

Second, Ms. Zirintusa alleges that she detrimentally relied on the parties' employment contract, selling her possessions at a significant loss and moving from Africa to the United States to begin working on the contract. *See* Compl. ¶ 29. In instances in which the plaintiff detrimentally relies on the parties' employment contract, the defendant will be estopped from asserting the statute of frauds defense. *See Gerner,* 2005 WL 1805670, at * 2-3 (holding that five-year oral employment contract was exempt from statute of frauds because plaintiff

- 6 -

detrimentally relied on promise of employment in delivering database to employer); *see also Ammerman v. City Stores Co.*, 395 F.2d 950, 953 (D.C. Cir. 1968) (holding that "appellee's change of position induced by the appellant's parol promise would estop the latter from setting up the statute of frauds"); *Amberger & Wohlfarth, Inc. v. District of Columbia*, 300 A.2d 460, 463 (D.C. App. 1973) (same).

Finally, Ms. Whitaker admits that she entered into a contract with Ms. Zirintusa: "Defendant admits that she offered to assist Plaintiff in locating to Washington, D.C. and pursuing an education and admits that she offered and provided financial support to Plaintiff in connection with that offer" (First Amended Answer of Defendant Rosa Whitaker (Nov. 4, 2005) ¶¶ 21, 22) and "Defendant admits that she *reached an agreement* with Plaintiff to come to the United States on a student visa [and] … asserts that Plaintiff was enthusiastic about the opportunity to attend school in the United States." *Id.* ¶ 26 (emphasis added). Although Ms. Whitaker disputes the terms of the parties' agreement (Ms. Whitaker contends that the agreement was not for employment), the fact that Ms. Whitaker agrees that there was an agreement can be deemed to waive the statute of frauds. *See generally District of Columbia Hous. and Fin. Agency v. Harper*, 707 A.2d 53, 55 (D.C. App. 1998) (holding that the statute of frauds does not apply "where the party has admitted the contract (waiver).").

## II.    Ms. Zirintusa States a Claim (Count II) for Breach of the Sponsorship Affidavit.

In Count II, Ms. Zirintusa states a claim for Ms. Whitaker's breach of the Affidavit of Support that Ms. Whitaker signed and had notarized on December 22, 2003.  The Affidavit of Support states on its face that "I understand that this affidavit will be binding on me for a period of three (3) years after entry of the person(s) named in item 3 [*i.e.* Idah Zirintusa]." *See* Memorandum in Opposition to Motion To Dismiss (Nov. 28, 2005), Exhibit A.  Moreover, the

- 7 -

- 8 -

Affidavit sets forth Ms. Whitaker's affirmation that "I intend … to provide room, board and tuition for the above-named individual [*i.e.*, Idah Zirintusa] for the duration of their stay in the USA."  *Id.*  Thus, the Affidavit of Support creates a contractual obligation – separate and apart from the parties' employment contract discussed above – on which Count II of the Complaint is based.

Ms. Zirintusa does not rely on the Affidavit of Support to demonstrate an employment agreement, and Ms. Whitaker's arguments to the contrary (*see* Reply at 2) misconstrue the Complaint.  Ms. Whitaker, for example, misses the mark when she asserts that "[a]ny fair and plain reading of the Affidavit of Support can only lead to the conclusion that there is absolutely no indication or evidence that the parties intended to rely upon that document to support [an] … agreement of employment." Reply at 5.  Ms. Zirintusa does not assert that the Affidavit of Support is an employment contract.  Rather, it is a separate contractual obligation to which Ms. Whitaker bound herself in order to sponsor Ms. Zirintusa's entry into the United States.

Ms. Whitaker urges this court to interpret the Affidavit of Support according to its "[p]lain [m]eaning." Reply at 5.  Plaintiff agrees.  The language above could not be clearer.  It obligates Ms. Whitaker to provide Ms. Zirintusa with room, board and tuition for a three-year period.  Ms. Whitaker cites no authority why her written, notarized contractual obligation should not be binding upon her.  To the contrary, Ms. Whitaker earlier conceded, in her Motion to Dismiss, that the Affidavit of Support "by its plain, unequivocal and unambiguous language created a relationship between the plaintiff and the defendant with the United States as a third-party beneficiary." *See* Motion to Dismiss at 5.  If so, there can be no doubt that Ms. Zirintusa can enforce that agreement. *See Beckett v. Airline Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) ("In a third party beneficiary contract, benefits flow to both the promisee and the third

party, and either may sue to enforce the contract.") (quoting Restatement (Second) Contracts § 304 (1981)); *Piedmont Resolution, LLC v. Johnston, Rivlin & Foley*, 999 F. Supp. 34, 49 (D.D.C. 1998) (holding that plaintiff had standing to sue on a contract if the plaintiff was either a principal or a third party beneficiary of whom the defendant had notice).[1]

### III.   Ms. Zirintusa States Claims for Violations of the FLSA and its District of Columbia Corollaries (Counts III – VII).

Ms. Whitaker makes several new arguments in her Reply in Support of her Motion for Judgment on the Pleadings. In particular, Ms. Whitaker uses her Reply to seek, for the first time, to dismiss Ms. Zirintusa's claims under the Fair Labor Standard Act (the "FLSA"), the D.C. Payment and Collection of Wages Law and the D.C. Minimum Wage Act Revision Act of 1992. As set forth below, these arguments are fatally flawed.

#### A.   Ms. Whitaker's Violations of U.S. Immigration Law Do Not Excuse Ms. Whitaker's Failure To Comply with the FLSA or Its D.C. Corollaries.

Ms. Whitaker argues that because her employment of Ms. Zirintusa violated the Immigration and Nationality Act, 8 U.S.C. § 1101 (the "INA"), Ms. Whitaker should be excused from complying with federal and state minimum wage and overtime requirements. *See* Motion for Judgment at 5, 6 (incorrectly asserting that "Plaintiff's claim of any pay due … can only be sustained if Plaintiff was legally entitled to work in the United States."). There is no basis for this position. Ms. Whitaker cannot rely on her own violation of U.S. immigration law to shield her from the FLSA or its District of Columbia corollaries.

In *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988), the court faced exactly this question and squarely rejected the contention that U.S. immigration law (specifically, the Immigration Reform and Control Act of 1986 (the "IRCA"), in which Congress modified the

---

[1] Ms. Zirintusa maintains that the contract is more accurately characterized as one between the United States and Ms. Whitaker with Ms. Zirintusa as an intended third-party beneficiary. In either event, Ms. Zirintusa would be permitted to enforce the contract. *Id.*

- 9 -

INA by enacting a comprehensive scheme that made combating the employment of illegal aliens in the United States central to the policy of immigration law[2]) prohibited undocumented workers from asserting FLSA claims:

> [N]othing in the IRCA or its legislative history suggests that Congress intended to limit the rights of undocumented aliens under the FLSA. To the contrary, the FLSA's coverage of undocumented aliens is fully consistent with the IRCA and the policies behind it. The IRCA's legislative history strongly suggests that Congress believed that undocumented aliens would continue to be protected by the FLSA. …
>
> Indeed, the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA. Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens. To achieve this objective the IRCA imposes an escalating series of sanctions on employers who hire such workers. 8 U.S.C. § 1324a. The FLSA's coverage has a similar effect in that it offsets what is perhaps the most attractive feature of such workers – their willingness to work for less than the minimum wage. If the FLSA did not cover such workers, employers would have an *incentive* to hire them.

*Id.* at 704 (emphasis in original); *see Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056 (N.D. Cal. 2002) (holding that "allowing an undocumented worker to bring an anti-retaliation claim under the FLSA is consistent with the immigration policies underlying the IRCA" and "[p]rohibiting plaintiff from bringing [such a] claim under the FLSA would provide a perverse economic incentive to employers to seek out and knowingly hire illegal workers, as defendant did here, in direct contravention of the immigration laws."); *Flores v. Amigon*, 233 F. Supp. 2d 462 (E.D.N.Y. 2002) (denying discovery into plaintiff's immigration status and explaining that "numerous lower courts have held that employees, regardless of immigration status, are protected by the provisions of the FLSA").

### B. The FLSA Overtime Exemption for Certain Domestic Service Employees Is Inapplicable In This Case.

Ms. Whitaker's motion to dismiss Count IV of the Complaint, for her violations of the

---

[2] The IRCA amended §§ 274A-B of the INA (8 U.S.C. §§ 1324a-b).

overtime pay provisions of the FLSA, is wholly misplaced. The FLSA's overtime pay provisions, 29 U.S.C. § 207, are subject only to very limited exemptions that are not applicable here. Those exemptions are to be construed narrowly against the employer. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (U.S. 1960) (holding that FLSA retail or service establishment "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit"); *Gay v. Extended Family Concepts*, 102 F. Supp. 2d 449 (N.D. Ohio 2000) (same, in context of FLSA domestic service employee exemption).

Ms. Whitaker errs by trying to invoke the "domestic service employees" exemption to the FLSA's overtime pay provisions, despite the fact that it does not apply to workers such as Ms. Zirintusa, who work unpaid overtime hours in the homes of their employer's neighbors. The provision on which Ms. Whitaker relies (titled "*Live-in* domestic service employees") states:

> Domestic service employees who reside in the household where they are employed are entitled to the same minimum wage as domestic service employees who work by the day. However, section 13(b)(21) [FLSA, 29 U.S.C. § 213(b)(21)] provides an exemption from the Act's overtime requirements for domestic service employees *who reside in the household where employed*. But this exemption does not excuse the employer from paying the live-in worker at the applicable minimum wage rate for all hours worked.

29 C.F.R. § 552.102 (emphasis added); *see also* 29 U.S.C. § 213(b)(21) (same).[3]

Thus, by its plain terms, this exemption does not apply to work that a domestic service employee performs outside of the home in which she resides. *See Lott v. Riggs*, 746 F. Supp. 1084, 1086 n.2 (N.D. Ga. 1990) (rejecting argument that "'domestic service employment' may sometimes be provided outside the private home of the employer."). In this case, Ms. Whitaker required Ms. Zirintusa to perform unpaid work for Ms. Harris at Ms. Harris's home (for which,

---

[3] Ms. Whitaker suggests the D.C. Code contains a similar exemption provision, but the section that she cites (D.C. Code § 32-1007) provides for certain investigatory powers of the Mayor. Ms. Zirintusa respectfully reserves the right to reply if Ms. Whitaker raises a new argument in her rebuttal to this Supplemental Opposition.

- 11 -

on information and belief, Ms. Harris paid Ms. Whitaker). Compl. ¶ 32. Ms. Zirintusa did not reside in Ms. Harris's home. Compl. ¶ 31. Thus, the domestic service employees exemption set forth above, by its express terms, does not apply to Ms. Zirintusa's overtime labor in Ms. Harris's home. Further, Ms. Zirintusa's work for Ms. Harris accounts for the majority of Ms. Zirintusa's overtime work, none of which was compensated. Compl. ¶ 34.

Moreover, it would violate the letter and the spirit of the domestic service employees exemption to allow an employer, such as Ms. Whitaker, to claim the benefit of an exemption aimed at *live-in* domestic workers, on the one hand, and at the same time profit by requiring that worker to perform domestic services *outside* of the home. Once, as occurred here, the employer begins to require her domestic worker to do tasks outside of the house (e.g., cleaning a neighbor's home), the employer should no longer be entitled to rely on the exemption. *See generally Reich v. New York*, 3 F.3d 581, 586 (2d Cir. 1993) (holding that, "consistent with the remedial purpose of the FLSA, [the Court] do[es] not give FLSA exemptions generous application.").

### IV. Ms. Zirintusa States Claims for Tortious Interference, Fraud and Unjust Enrichment (Counts VIII-XI).

Ms. Whitaker's only argument for the dismissal of Ms. Zirintusa's claims for tortious interference with contract, tortious interference with economic advantage, fraud and unjust enrichment is that this Court should not treat as true the allegations in Ms. Zirintusa's Complaint. *See* Reply at 6-8 (arguing that the allegations on the Complaint are "so lacking in credibility as not to be believable."). Ms. Whitaker's position is belied by the fact that, in her effort to create a straw man, Ms. Whitaker attributes to Ms. Zirintusa various statements that Ms. Zirintusa never made. For example, contrary to Ms. Whitaker's argument, Ms. Zirintusa never said she that entered into "a *ten-year* employment contract" or that "she *received* more money from

Defendant Whitaker than she made on her previous job." *Compare* Motion for Judgment at 6 (emphasis added) *with* Compl. ¶ 3.  Ms. Zirintusa is confident that the allegations she actually made do not strain credulity and will bear close scrutiny during and after discovery.  Ms. Whitaker's Motion for Judgment on the Pleadings, however, is not the appropriate stage to demonstrate the truth of Ms. Zirintusa's allegations.  *See Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) ("In considering a motion for judgment on the pleadings, the Court should accept as true the allegations in the opponent's pleadings and accord the benefit of all reasonable inferences to the non-moving party." (citations and quotations omitted)).

Dated: February 27, 2006                      Respectfully submitted,

                                               Mayer, Brown, Rowe & Maw LLP

                                               ___/s/ Alex Lakatos_____
                                               Alex C. Lakatos (DC Bar No. 453763)
                                               1909 K Street N.W.
                                               Washington, D.C. 20006-1101
                                               Telephone: (202) 263-3312
                                               Facsimile: (202) 263-5312
                                               E-mail: alakatos@mayerbrownrowe.com