## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Idah Zirintusa,        )
            )
      Plaintiff,      )
            )
            )
v.              )     Case No. 1:05CV01738
            )
            )     Judge: Emmet G. Sullivan
Rosa Whitaker       )
            )     Deck Type: Labor/ERISA
      and         )
            )
Pauline Harris       )
            )
      Defendants.    )
_____ )

### DEFENDANT ROSA WHITAKER'S SUPPLEMENTAL BRIEFING
### IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE PLEADINGS

#### INTRODUCTION

At the January 17, 2006 scheduling conference in this matter, the Court afforded
Plaintiff leave to file a supplemental brief in support of her opposition to Defendant Rosa
Whitaker's Motion for Judgment on the Pleadings. As a consequence, the Court also
afforded this Defendant leave to submit a supplemental brief in support of her Motion. In
its submission here, Defendant has sought to introduce different perspectives from her
arguments in support of the Motion for Judgment on the Pleadings, trusting that the Court
will continue to consider her earlier arguments, in the original Motion and in her Reply to
Plaintiff's Opposition to that Motion. As will again be shown below, it is clear, in fact
and in law, that this case does not deserve the time and attention of this Court. While the
issues raised are serious, when the kicked up dust settles, Plaintiff's claims, if any, are

more appropriately raised in Small Claims Court --- not Federal Court --- or before an empowered administrative agency.  Even taking all of Plaintiff's factual allegations as true, which Defendant Rosa Whitaker does not, Plaintiff's claims amount to less than $7,500, the jurisdiction of Small Claims Court, not nearly the jurisdiction of this Court.

Accordingly, Defendant Rosa Whitaker, with this Supplemental Brief, addresses and provides further illumination on the following issues:  (1) Whether the statute of frauds bars Plaintiff's claim that Defendant Whitaker breached an alleged oral employment agreement; (2) Whether a United States Department of Homeland Security I-134 Affidavit of Support on its face and by law creates any obligations for Defendant Whitaker with respect to Plaintiff; (3) Whether Plaintiff has sufficiently pled facts giving rise to the claims of tortious interference with contract, tortious interference with perspective advantage, fraud and unjust enrichment and whether such claims can be maintained in the absence of a written agreement for a specified period; and (4) Whether Plaintiff can bring a claim for wages under the Fair Labor Standards Act and the D.C. Minimum Wage Act in the absence of a written agreement memorializing the alleged terms of employment.  For the reasons stated below, judgment on the pleadings is clearly warranted.  However, before presenting argument on these matters, a close and careful examination of the facts, as alleged by Plaintiff, is useful.

## THE FACTS – AS ALLEGED BY PLAINTIFF

In Count One of the Complaint, Plaintiff alleges that in 2004, she and Defendant Whitaker entered into a three-year [employment] contract.  See Complaint ¶ 43.  Yet, in her "Statement of Facts," Plaintiff admits that an Affidavit of Support, to permit Plaintiff to obtain a Student Visa to come to the United States to pursue an education was signed

and notarized on December 22, 2003, almost one full year in advance of the time that Plaintiff alleges to have entered into an oral contract of employment with Defendant Whitaker. See Complaint ¶ 27. See also Complaint ¶ 49. This disparity in time becomes even more glaring when we consider Plaintiff's admission that Defendant Whitaker in July 2004 provided Plaintiff with funds to reimburse her for the Student Visa application costs. See Complaint ¶ 28. Yet, while Plaintiff claims that a key term of the alleged oral employment contract required Defendant Whitaker to pay school tuition for the minor children of Plaintiff (See Complaint ¶ 21), nonetheless, Plaintiff paid her children's tuition fees in the fall of 2004, after she allegedly began to work for Defendant Whitaker. See Complaint ¶ 29. Glaring inconsistencies of this sort are not unusual with this Plaintiff. For example, in her Complaint she alleges that she lawfully resides in the United States pursuant to a student visa and is currently enrolled in Montgomery Community College. See Complaint ¶ 9. We now know that claim not to be true, inasmuch as Plaintiff's Counsel has admitted that she is not now a student and is not enrolled in Montgomery Community College. This fabric of facts as woven by Plaintiff seems to slip other more relevant facts under the carpet of convenience simply because it benefits her overall claims. The strain of this attempt can be seen by further exploration of facts admitted by Plaintiff. Plaintiff states at ¶ 29 of her Complaint, "Upon reaching an agreement with [Plaintiff], *Whitaker arranged for [Plaintiff] to come to the United States on a student visa.*" (Emphasis supplied). And, Plaintiff "*...completed an application to attend school at Montgomery College and, in June 2004, applied for a U.S. student visa with Whitaker as her sponsor.*" (Emphasis supplied). See Complaint ¶ 26.

3

The United States Student visa application process is rigorous. Various forms must be signed, some notarized. Plaintiff was required to stipulate before entry to this country that she had no intention of accepting gainful employment. Plaintiff not only had to stipulate in writing that her intent was for the purpose of pursuing academic studies at a bona fide university, but she also had to convince consular officers who interviewed her that her sole intent was to be and remain a student throughout the term of her visa. Plaintiff also had to prove that she would have sufficient funds or that funds would be available from an identified and reliable financial source to cover the costs of her living and school expenses during the entire period of anticipated study in the United States.

Moreover, while conceding that Defendant Whitaker agreed to provide payments to her as part of her pursuit of an education, See Complaint ¶ 27, and admitting that payments were made to her during her stay with Defendant Whitaker, See Complaint ¶ 33, Plaintiff would have this Court believe that those payments were actually for work she performed pursuant to the alleged oral employment agreement and not for the payments promised pursuant to the Affidavit of Support. That's a fancy dance. However, that tune lacks harmony when one considers that, under the Plaintiff's own Statement of Facts, all actions taken by both her and Defendant Whitaker revolved around Plaintiff's pursuit of an education under the Affidavit of Support and not one action revolved around this alleged oral employment contract. When was this oral employment contract to begin? How much was Plaintiff to be paid? It seems apparent that Plaintiff persists in seeking to weave gold from straw in this strained effort to create an oral agreement that belies every written document that was, admittedly, part of the interaction of the parties, the Affidavit of Support; Plaintiff's application to Montgomery Community College; Plaintiff's

application for a Student Visa; Plaintiff's own payment of her children's tuition and fees; and, perhaps most notable, Plaintiff's admission that in jobs she had held in the past, she, "*On a regular basis, [sic] signed renewed employment agreements ... for a term of years...*" (Emphasis supplied). If that is how Plaintiff conducted her affairs in the past, why didn't she insist upon conducting her affairs with Defendant Whitaker in that manner? Why is there written employment contract between Plaintiff and Defendant Whitaker? The answer seems obvious. There was no contract at all between the parties.

## ARGUMENT

### I.     The Statute of Frauds bars Plaintiff's claim that Defendant Whitaker breached an alleged oral employment contract.

The Statute of Frauds bars enforcement of certain oral agreements unless there is a written agreement signed by the party to be charged. *Wemhoff v. Investors Management Corp. of America*, 528 A.2d 1205 (D.C. 1987). Specifically, the statute of frauds states in pertinent part, that no action shall be brought whereby to charge . . . any person upon any agreement . . . that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized. See *Coan v. Orsinger*, 265 F.2d 575, 576, 105 U.S. App. D.C. 201, 202 (1959). In the District of Columbia, the statute of frauds proscribes enforcement of oral contracts relating to promises to answer for the debts of third parties; agreements made in consideration of marriage; sales or transfers of interests in real property; <u>agreements that cannot be performed within one year from their</u>

formation; the creation of trusts in real property; grants or assignments of trusts in real property; and so forth. See D.C. CODE §§ 28-3502–28-3505 (2001). (Emphasis supplied). The purpose of the D.C. "statute of frauds" is, as the name suggests, to prevent injury from fraudulent conduct. For the reasons more fully developed below, Plaintiff's alleged oral employment contract falls within the statute of frauds and cannot be enforced against Defendant Whitaker.

**A. An alleged oral employment contract for a fixed term of years is unenforceable.**

In Count 1 of Plaintiff's Complaint, the Plaintiff alleges that she entered into a three-year employment contract with defendant Whitaker. See Complaint ¶ 42. Plaintiff has not produced a written employment contract between her and Defendant Whitaker and contends that the alleged contract was done orally. As such, the issue that presents itself is whether Plaintiff's alleged oral contract for a fixed three-year term of employment is enforceable under the statute of frauds. It is Defendant Whitaker's position that it is not.

The Plaintiff, in her Supplemental Briefing in Opposition to Defendant Rosa Whitaker's Motion for Judgment on the Pleadings, argues that contracts that have multi-year periods of employment are enforceable and cites the *Hodge v. Evans Financial Services* case as support. *See* Plaintiff's Supplemental Briefing at page 2; *See also Hodge v. Evans Financial Services*, 823 F.2d 559 (D.C. Cir 1987). However, the Plaintiff's use of the term "multi-year" is misleading and the "multi-year" contract at issue in *Hodge* is clearly distinguishable from the alleged "multi-year" contract in the case at bar. *See generally Hodge,* 823 F.2d 559 (D.C. Cir. 1987).

6

For example, in the *Hodge* case, the Plaintiff alleged that he and the defendant had entered into an oral employment contract for "permanent" employment. Id. at 561. Unlike the *Hodge* case, the alleged contract in the present case had an alleged definite term of employment for 3 years. Complaint ¶ 42. The court in *Hodge* clearly states that "under the conventional view of the statute [of frauds], an oral employment for a stated, definite term of years exceeding one year . . . is unenforceable on the rationale that the employee's possible death within one year would "defeat" rather than " complete" the express terms of the contract." Id. at 563.

In *Hodge*, the court could not interpret that the alleged permanent contract was for a specified period of time and as a result found that such indefinite and permanent employment contracts fall outside of the statute of frauds because such contracts are capable of full performance within one year, e.g. death, retirement. *Id.* at 563-64. In the case at bar, the alleged employment contract could not be completed for three years. Thus, the alleged three-year contract is within the statute of frauds and is unenforceable because it is for a specific period of time, it cannot be completed within one year and it is not in writing. Therefore, Count 1 of the plaintiff's claim for breach of contract should be dismissed.

**B. Defendant Whitaker recently learned that the alleged employment contract was done orally and Plaintiff will not be prejudiced by the assertion of the statute of frauds defense.**

Plaintiff alleges that the defendant waived the statute of frauds defense when she failed to affirmatively plead the defense in her Answer to plaintiff's Complaint. However, at the time the Answer was filed it was believed by the Defendant that the I-134 Affidavit

of Support was the only basis for the alleged employment contract. Nowhere in

Plaintiff's Complaint is there reference to the existence of an "oral contract." *See*

Complaint. In fact the term "oral" was never mentioned in the Complaint. Only after

defendant filed her Answer, and received Plaintiff's supplemental briefing did she first

learn that Plaintiff was not rely[ing] on the I-134 Affidavit of Support to demonstrate an

employment relationship. *See* Plaintiff Idah Zirintusa's Supplemental Briefing in

Opposition to Defendant Rosa Whitaker's Motion for Judgment on the Pleadings at pg. 8

¶ 2. Because the langue in the Complaint did not warrant such a defense at the time,

defendant did not include it in her Answer.

Now that Plaintiff has alleged the existence of an "oral contract," the Defendant

does not wish to waive the statute of frauds defense and, if the case proceeds, will allege

such a defense in an Amended Answer. Moreover, the Plaintiff will not suffer any

prejudice by the assertion of the defense since the issue was discussed and argued at the

January 17, 2006 Scheduling Conference. District of Columbia courts have held that

"there is room for flexibility in [pleading the statute of frauds defense], and where no

prejudice results from a party's failure to adhere to the letter of the rule, a defense should

not be lost. *Clark v. Clark*, 535 A.2d 872 (D.C. 1987). See also *Petrocelli v. Daniel

Woodhead Co.*, 993 F.2d 27, 29 n. 1 (3d Cir. 1993), where the court ruled that an

affirmative defense not raised in the original pleading is not waived if it can be properly

raised under Rule 15, governing amendments to pleadings; and *Allied Chem. Corp. v.

Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983), where the court stated that "Where the

matter is raised in the trial court in a manner that does not result in unfair surprise …

technical failure to comply precisely with Rule 8© is not fatal." Plaintiff can make no

claim of surprise here. This Court has been most gracious in allowing Plaintiff to time and opportunity to make her arguments.

In *Clark*, the court held that plaintiff was not prejudiced by defendant's assertion of the statute of frauds defense since the issue was argued at trial and plaintiff failed to object on the basis of failure to plead the defense at that time. *Id.* Similarly, in the instant case, the statute of frauds defense was raised and discussed at the scheduling conference on January 17, 2006. Furthermore, the court instructed the parties to submit supplemental briefs arguing for or against enforcement of the statute of frauds. As such, Plaintiff's failure to object at that time and her failure to show any prejudice, should afford the Defendant some flexibility in raising the defense.

**C. The alleged oral employment contract could not have been completed within one year.**

Plaintiff states that several contingent events could have caused the contract between the parties to be completed within one year, (e.g. termination and because she could have been stopped by the U.S. Citizenship and Immigration Services from continuing to work). However, it is well established that "the statute [of frauds] looks to performance and not the defeat of the contract, and defeasance within a year would not constitute performance according to the express intent of the parties, that performance should continue longer than a year." *Coan v. Onsinger*, 265 F.2d 575, 577, 105 U.S. App. D.C. 201, 203 (1959).

Plaintiff contends that her alleged employment contract with Defendant Whitaker was expressly intended that performance should continue for 3 years. The *Vinton* case cited by Plaintiff has no bearing on the instant case, as the alleged contract in that case

9

was for an indefinite time period, which was "until retirement." *See Vinton v. Adam Aircraft Industries, Inc.*, 232 F.R.D. 650 (D. Colo., 2005). Furthermore, in the *Vinton* case, the parties expressly stated that plaintiff could be terminated for "performance issues." *Id.* Even though either party could terminate the alleged employment contract or the fact that the United States Government could have discontinued plaintiff's alleged employment, it is clear that the alleged contract was for a definite period extending over a year thereby keeping plaintiffs alleged contract within the statute of frauds. *Coan*, at 577.

**D. Defendant Whitaker's supposed refusal to perform an alleged oral employment contract within the statute of frauds does not constitute such fraud as to raise estoppel.**

In the case at bar, Plaintiff alleges that her alleged partial performance and detrimental reliance prevents the application of the statute of frauds. However, *O'Rourk v. Auto Stats Education Services, Inc.*, 1989 WL 43956 (D.D.C) states "generally, part performance of an employment contract will not remove it from within the statute. The facts in the instant case are similar to *Easter v. Kass-Berger, Inc.*, 121 A.2d 868, 871 (D.C. 1956). In *Easter*, the plaintiff left his employment and moved from Harrisburg, Pennsylvania to the District of Columbia in reliance upon an alleged oral agreement for two years of employment. *Id.* at 868. The court in *Easter* held that the discharge of plaintiff from his employment after less than six weeks was "not such fraud as to prevent the application of the statute [of frauds], despite hardship to a plaintiff. *Id.* at 871; *See also Reynolds v. Stevens Studios*, 659 F.2d 44 (5th Cir. 1981) (where the court held that the loss of Reynolds previous position did not warrant the enforcement of the oral

contract). As such, Plaintiff's alleged contract continues to be governed by the statute of frauds and should be dismissed.

## II.    The U.S. Department of Homeland Security I-134 Affidavit of Support, on its face and by law, does not create any obligations for Defendant Whitaker with respect to Plaintiff.

The U.S. Department of Homeland Security I-134 Affidavit of Support is simply a non-enforceable promise by a sponsor to support the alien and ensure that the alien will not become a public charge. *Stump v. Stump,* 2005 WL 1290658 (N.D. Ind., 2005). In *Stump,* the defendant had prepared and signed an Affidavit of Support, Form I-134, to obtain a visa for his fiancée to come to the United States. *Id.* at 3. However, the I-134 Affidavit was not the same Affidavit of Support that the plaintiff sues to enforce. *See Id.* FN 2. Once the fiancée moved to the United States, the defendant in *Stump* filed form I-864 which was held to be a valid and legally enforceable contract because in the I-864 Form, the defendant agreed that the plaintiff (alien) could sue defendant (sponsor) if he failed to meet his obligations under the agreement. *Id.* at 5. No such agreement or language permitting the sponsor to be sued by the alien is listed in the I-134 Form. In fact, the court in *Tornheim v. Kohn,* 2002 WL 482534, *4 (E.D.N.Y.) specifically states that "an affidavit of support on an I-134 form is not a legally binding contract under the amended 8 U.S.C. 1183A.

In *Tornheim,* the defendant signed the affidavit of support on an I-134 Form instead of the I-864 Form and the court dismissed plaintiff's cause of action seeking specific enforcement of the I-134 Affidavit of Support signed by the defendant under 8 U.S.C § 1183a. for failing to state a claim upon which relief could be granted. *Id.* at *5.

The *Tornheim* court held that the [I-134] writing is entitled "Affidavit of Support" not "Contract of Support" nor an "Agreement of Support;" [the writing] is signed only by the affiant [and] does not recite or disclose consideration. *Id.* at *4. In the case at bar, there is no dispute that Plaintiff is relying upon Form I-134 to create a contractual obligation or rather breach of Sponsorship Affidavit between Plaintiff and Defendant Whitaker. However, no such claim exists on the face of the I-134 Affidavit. More importantly, the I-134 Affidavit is not a legally binding contract. *Id.* It is not a "Contract of Support," nor an "Agreement of Support." As, such, Count II of Plaintiff's Complaint should be dismissed.

**III.    Plaintiff's action for Tortious Interference with Contract, Tortious Interference with Perspective Advantage, Unjust Enrichment and Fraud are not sufficiently pled in Plaintiff's Complaint and cannot be maintained in the absence of a written agreement for a specified period.**

**A.     Plaintiff has not sufficiently pled facts to support Tortious Interference with Contract or Perspective Advantage.**

The elements of tortious interference with contract are: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Paul v. Howard University*, 754 A.2d 297, 309 (D.C. 2000). The elements of tortious interference with prospective business advantage mirror those of interference with contract. *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C.1986). To prevail on the latter claim, however, a plaintiff need not demonstrate the existence of a contract, but merely a prospective advantageous business transaction. *See Id.* Specifically, in order to establish a claim for tortuous interference

with perspective advantage, the evidence must show: (1) the existence of a valid business relationship; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy; and (4) resultant damage. *Bell v. Ivory*, 966 F. Supp. 28 (D.D.C. 1997). A general intent to interfere or knowledge that conduct will injure the plaintiff's business relationship is insufficient to impose liability. *Id.* at 31. Plaintiff cannot establish liability without a strong showing of intent to disrupt [an] ongoing business relationship. *Id.*

In the case at bar, Plaintiff has not sufficiently shown or pled the existence of a contract of employment agreement with her previous employer, nor has Plaintiff sufficiently pled the existence of a valid business relationship. *See generally* Complaint. Even assuming that a contract and a business relationship did exist between Plaintiff and the Ugandan State House, which Defendant does not concede that either did or does exist, Plaintiff falls short of pleading any facts to support her claims that Defendant's actions intentionally caused a breach of contract and a breach of termination of the relationship. For instance, in Plaintiff's Complaint, she states that Defendant simply talked to her supervisors at the Ugandan State House regarding the possibility of bringing Plaintiff to Washington, D.C. to work for the Defendant. Complaint ¶¶ 2, 23, 83-95. At best, the alleged actions were merely an inquiry to Plaintiff's supervisors and not actions rising to the level of intentionally inducing or causing the alleged breaches to occur.

Clearly, in the body of the Complaint, Plaintiff has not pled any facts to support her claim that Defendant Whitaker's actions somehow caused the Ugandan State House to breach an alleged employment contract with the Plaintiff and to terminate an alleged business relationship with her. In fact, Plaintiff characterizes leaving the Ugandan State

13

House job as a choice and not a mandate. Plaintiff states that her supervisor informed her that she was "allowed" to work in the United States. Complaint ¶¶ 23, 83-95. Nowhere in her Complaint did Plaintiff state that the Ugandan State House required her to leave her job and go to the United States to work. It is common knowledge that that once an employee chooses to leave a job, they are not automatically permitted to return to the same position. Under the law, unwarranted factual inferences will not be drawn to aid the Plaintiff. The court is not required to ignore facts in a complaint that undermine the claims of a plaintiff. *Northern Indiana Gun and Outdoor shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Since Plaintiff's pleadings are not sufficient in this regard, judgment on the pleadings is warranted and Counts 8 & 9 should be dismissed.

B.    **Plaintiff has not sufficiently pled facts to support her claim for fraud by Defendant Whitaker.**

The elements of fraud are (1) a false representation (2) of material fact (3) knowingly made (4) with intent to deceive and (5) action taken in reliance upon the misrepresentation. *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. App. 1977), cert. denied, 434 U.S. 1034, 98 S. Ct. 768, 54 L.Ed.2d 782 (1978). Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. *Id.* In the case at bar, Plaintiff merely alleges that Defendant Whitaker wasn't honest with her, but fails to present sufficient factual evidence that Defendant Whitaker knowingly and intentionally gave a false representation to Plaintiff that Defendant would provide payments for the care and support of Plaintiff's family in Uganda. Furthermore, the court in *Bennett* states that a

promissory representation, or a representation as to future events asserted in a common law fraud action, should only be considered a misrepresentation of fact where the evidence shows that the promise was made without the intent to perform, or that the promisor had knowledge that the events would not occur. *Id.* As stated earlier, there is no written agreement between Plaintiff and Defendant Whitaker to show any future promises. Therefore, judgment on the pleadings for Count 10 is warranted in the case at bar, since it appears beyond doubt that Plaintiff will be unable to clearly and convincingly prove any facts to support the alleged claims for fraud.

      C.    **Plaintiff has not sufficiently pled facts to support her claim for unjust enrichment.**

For the Plaintiff to recover on a quasi-contractual claim, she must show that the Defendant was unjustly enriched at his expense and that the circumstances were such that in good conscience the Defendant should make restitution. *News World Communications, Inc. v. Thompson*, 878 A.2d 1218 (D.C. 2005). Again there simply are not enough facts pleaded to support Plaintiff's claim that she was working for the Defendant. As such, Count 11 should be dismissed. Addressing Defendant Whitaker's payments to her of "at least $750 ... during the months of September, October, November and December 2004," (See Complaint at ¶ 27), Plaintiff, in her Opposition to Defendant's Motion for Judgment on the Pleadings, alleges that any assertion that Whitaker "met minimum wage...is belied by simple arithmetic." Plaintiff went on to allege, "Even assuming a 40-hour week, $750/month is below the statutory minimum." Plaintiff's continued assertions in her opposition in this regard are clearly inconsistent with the provisions of the Fair Labor Standards Act. Because of its relevance to the

resolution of this issue, especially the value of Plaintiff's wage claims, the guidelines for

application of the Fair Labor Standards Act to Domestic Service Employees, in pertinent

part, are quoted as follows: "In meeting the wage responsibilities imposed by the Act,

employers may take appropriate credit for the reasonable cost or fair value ... of food,

lodging and other facilities customarily furnished to the employee by the employer such

as drugs, cosmetics, dry-cleaning, etc. 29 CFR 552. 102 (a). See also S. Rep. 93-690, p.

19, and section 3(m) of the Act. For enforcement purposes, the Administrator will accept

a credit taken by the employer of up to 37.5 percent of the statutory minimum hourly

wage for a breakfast (if furnished), up to 50 percent of the statutory minimum hourly

wage for a lunch (if furnished), and up to 62.5 percent of the statutory minimum hourly

wage for a dinner (if furnished), which meal credits when combined do not in total

exceed 150 percent of the statutory minimum hourly wage for any day. Nothing herein

shall prevent employers from crediting themselves with the actual cost or fair value of

furnishing meals, whichever is less, as determined in accordance with part 531 of this

chapter, if such cost or fair value is different from the meal credits specified above, 29

CFR 552, 102 (c). In the case of lodging furnished to live-in domestic service

employees, the Administrator will accept a credit taken by the employer of up to seven

and one-half times the statutory minimum hourly wage for each week lodging is

furnished, 29 CFR 552, 102 (d). In determining reasonable cost or fair value, the

regulations and rulings in 29 CFR part 531 are applicable, Sec. 29(b), 88 Stat. 76, 29

U.S.C. 206(f), Secretary's Order No. 16-75, dated Nov. 25, 1975 (40 FR 55913), and

Employment Standards Order No. 76-2, dated Feb. 23, 1976 (41 FR 9016). While

Plaintiff admits that Defendant Whitaker provided "for Plaintiff's lodging and food,

although allegedly insufficiently, (See complaint at ¶ 36) and admits that she used

Defendant Whitaker's home phone to place telephone calls to her family back in Uganda,

Plaintiff continues to refuse to make these, or any others for that matter, deductions, in

her "simple arithmetic" formula.

IV.    **Plaintiff's claim for wages under the Fair Labor Standards Act and the D.C. Minimum Wage Act cannot be maintained in the absence of a written agreement memorializing the alleged terms of employment.**

A.  **Plaintiff cannot bring a claim under the Fair Labor Standards Act because she was not legally permitted to work in the United States.**

Under the Immigration and Nationality Act, only persons legally entitled to work

may work in the United States. *See The Immigration and nationality Act*, 8 U.S.C. §

1101, as amended, § 274A.  Furthermore, the Immigration Reform and Control Act of

1986 also requires that an alien obtain specific documentation to become authorized for

employment in the United States. *See* 8 U.S.C.A. § 1324A(B) (West 1999).  The

Plaintiff does not dispute that she entered the United States on a Student Visa and not on

a Work Visa.  See Complaint at ¶ 27.

The instant case is similar to the *Reyes-Gaona v. North Carolina Growers

Association* case in which the Fourth Circuit dismissed the Plaintiff's claims under the

ADEA because he could not show that he was qualified for employment in the United

States.. *Reyes-Gaona V. North Carolina Growers Association and Del-Al Associates,

Inc.*, 2000 WL 1205738 * (M.D.N.C.).  In *Reyes,* the court cited the *Egbuna v. Time-Life

Libraries, Inc.* case. *Id.*  In *Egbuna*, the plaintiff, "a Nigerian national, sued his former

employer under Title VII, alleging that the employer had refused to rehire him in

retaliation for his participation in another employees discrimination suit." *Id.* (citing

*Egbuna v. Time-Life Libraries, Inc.,* 153 F.3d 184, 185 (1997). The court in *Egbuna*

found that since plaintiff's visa had expired he was unauthorized to work in the United

States. *Egbuna v. Time-Life Libraries, Inc.,* 153 F.3d 184, 185 (1997). Thereafter, the

court ruled that plaintiff had no cause of action against his employer because his

undocumented status rendered him ineligible both for the remedies he sought and for

employment in the United Stated. *Id.* Numerous federal and state statutes prohibit F-1

students from holding jobs in the United States. Federal Courts have consistently upheld

the right of legislatures to do so. In the case of *Leclerc v. Webb*, 415 F.3d 405 (2005),

plaintiffs brought a class action suit challenging Louisiana Supreme Court Rule XVII, §

3(B), which rendered them ineligible to sit for the Louisiana Bar. The District Court

upheld the constitutionality of the statute. In *Leclerc*, plaintiffs appealed, contending that

the Louisiana Law violated their rights under the Equal Protection Clause of the

Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, and the

Supremacy Clause of Art. VI, cl. 2. The Circuit Court disagreed with plaintiffs, ruling

that, "Because the level of constitutional protection afforded nonimmigrant aliens *is*

*different* from that possessed by permanent resident aliens, we hold that the Louisiana

rule survives rational basis review." It should also be noted that to strengthen homeland

security in the aftermath of September 11th, 2001, the President and the United States

Congress took extra steps to ensure the integrity of the immigration process. Because of

their relevance to this case, some of the relevant sections of the Immigration and

Naturalization Act are listed below, as follows: 40 8 C.F.R. § 214.2(f)(5)(I) provides that

the "[d]uration of status is defined as the time during which an F-1 student is pursuing a

full course of study at an educational institution. 41 8 U.S.C. §§ 1101(a)(15(F), (H), (J);

42 Title 8 U.S.C. § 1227(a)(1)(C) provides that, "Any alien . . . in and admitted to the

United States shall, upon the order of the Attorney General, be removed if . . . the alien

who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant

status in which the alien was admitted or to which it was changed under section 1258 of

this title, or to comply with the conditions of any such status, is deportable; 8 C.F.R. §

241.1(a)(3) provides, "At the time of admission or extension of stay, every nonimmigrant

alien must also agree to depart the United States at the expiration of his or her authorized

period of admission or extension of stay, or upon abandonment of his or her authorized

nonimmigrant status; See also 8 U.S.C. § 1184 (explaining the manner in which the

Attorney General's discretion pertains to various nonimmigrant alien categories), 43 10

U.S.C. § 3253.44; 8 C.F.R. § 214.1(e) (nonimmigrant aliens may not engage in

productive employment without authorization); and 8 C.F.R. § 214.2(f) (prohibiting F-1

visa holders from obtaining gainful employment, not including work-study and internship

programs). The penalty for unauthorized employment is a determination of "failure to

maintain status," 8 C.F.R. § 214.1(e). Considering the fact that Plaintiff, in the case at

bar, was unauthorized to work in the United States together with the facts that there is no

written contract and that the Defendant denies that she employed Plaintiff, this court

should dismiss Counts 3,4,5,6 &7 as there is no cause of action under the Fair Labor

Standards Act.

**B.  Plaintiff cannot claim overtime pay for alleged domestic work while residing in Defendant Whitaker's home.**

Under both Federal and District of Columbia law, domestic service workers who reside in their employee's residence are exempt from the overtime pay requirement. *See The Fair Labor Standards Act of 1938* (FLSA), as amended, 29 U.S.C. § 201 et seq; 29 CFR, Parts 510 to 794.  It is Plaintiff's contention that the exemption does not apply to work that a domestic service employee performs outside of the home in which she resides.  For support Plaintiff states that Defendant Whitaker required Plaintiff to perform unpaid work for Defendant Harris at Ms. Harris's home.  See Complaint ¶ 2.  However, the alleged work as alleged was for co-defendant Harris and not Defendant Whitaker.  Plaintiff fails to provide sufficient facts in her Complaint that Defendant Whitaker was supposed to pay for alleged work to the benefit of Ms. Harris and her home.  I suppose this is exactly the reason Plaintiff chose to bring an action against co-defendant Harris.  Since Plaintiff alleges that she did domestic work for Defendant Whitaker in her home and concedes the fact that she resided there, Plaintiff simply cannot now claim overtime payment.

**WHEREFORE**, the premises considered, Defendant respectfully requests:

1.  That the Motion of Defendant Rosa Whitaker be granted in all respects and that Judgment be entered for Defendant Rosa Whitaker on the Complaint of Plaintiff.

2.  For such other and further relied as to the Court seems just and proper.

Respectfully Submitted by,

Johnny Barnes #212985

20

7725 – 16th Street, N.W.
Washington, D.C. 20012
Telephone: (202) 882-2828
Facsimile: (202) 882-4128
E-Mail: Johnny@thewhitakergroup.us
Counsel for Defendant Rosa Whitaker

## CERTIFICATE OF SERVICE

I hereby certify that on 9 March, 2006, a true and signed copy of the foregoing
SUPPLEMENTAL BRIEF OF DEFENDANT ROSA WHITAKER TO THE MOTION
FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT ROSA WHITAKER, was
filed electronically and mailed first class, postage prepaid to:

Alex C. Lakatos, Esquire
1909 "K" Street, N.W.
Washington, D.C. 20006-1101

Christine N. Kearns, Esquire
Anne E. Langford, Esquire
2300 "N" Street, N.W.
Washington, D.C.  20037-1128

Kerri Sherlock, Esquire
Break the Chain Campaign
733 – 15th Street, N.W.
Washington, D.C.  20005

Johnny Barnes #212985