**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                               |   |                                  |
|-------------------------------|---|----------------------------------|
| IDAH ZIRINTUSA                | ) |                                  |
|            Plaintiff,         | ) |                                  |
|        v.                     | ) | Civil Action No. 05-1738 (EGS)   |
| ROSA WHITAKER, *et al*.       | ) |                                  |
|            Defendants.        | ) |                                  |

**MEMORANDUM OPINION**

Pending before the Court is Rosa Whitaker's Motion for Judgment on the Pleadings. Upon careful consideration of the motion, response and reply thereto, and supplemental briefings, the Court **GRANTS IN PART** and **DENIES IN PART** Whitaker's motion.

**I. BACKGROUND**

Plaintiff Idah Zirintusa is a Ugandan citizen who currently resides in the United States on a student visa. Compl. ¶ 9. Prior to her arrival in the United States, Zirintusa worked as a Catering Officer at the Uganda State House, the residence of the president of Uganda. *Id*. ¶ 16. As a Catering Officer, Zirintusa earned a base salary and per diem during travel and received a benefits package that included housing, health insurance, transportation, bonuses, and a scholarship for one of her children to attend a private school. *Id*. ¶ 17. Zirintusa signed renewed employment agreements with the Uganda State House, and

those agreements were for a term of years.  *Id*. ¶ 18.  Zirintusa was not an at-will employee in Uganda.  *Id*.

Defendant Rosa Whitaker was formerly the Assistant U.S. Trade Representative for Africa before starting her own consulting firm in 2002.  *Id*. ¶ 10.  Zirintusa first met Whitaker in or around September 2002 when Whitaker was visiting the Ugandan president.  *Id*. ¶ 19.  Over the next year or two, Whitaker attempted to lure Zirintusa from her job to come work for Whitaker in the United States, but Zirintusa refused her offers.  *Id*. ¶20-22.  During her conversations with Zirintusa, Whitaker allegedly promised employment for a period of three years, four times the wages Zirintusa earned in Uganda, full tuition at a U.S. college, food, shelter and healthcare in the United States, and separate payments to support Zirintusa's family in Uganda.  *Id*. ¶ 21.

In February 2002, Whitaker approached the Ugandan president and other state officials and expressed her desire to have Zirintusa come work for her in Washington, D.C.  *Id*. ¶ 23.  Zirintusa was told by her Ugandan employer that she was "allowed" to work in the United States and that she would not be able to get her old job upon her return.  *Id*.  Zirintusa understood this to mean that she was being terminated from her position in the Uganda State House, so she reluctantly accepted Whitaker's offer

of employment on the terms that Whitaker had previously proposed to her. *Id.* ¶ 25.

With Whitaker's assistance, Zirintusa came to the United States on a student visa. *Id.* ¶ 26. Whitaker sponsored the student visa and submitted an Affidavit of Support (Form I-134) to the Immigration and Naturalization Service (now Department of Homeland Security or DHS) in December 2003. *Id.* ¶ 27. By signing the Affidavit of Support, Whitaker agreed that she would maintain and support Zirintusa and prevent Zirintusa from becoming a public charge for a period of three years. *See* Affidavit of Support, Ex. 1 to Pl.'s Opp'n to Mot. to Dismiss.

Zirintusa arrived in the United States on August 18, 2004. Compl. ¶ 31. The day after Zirintusa arrived, Whitaker instructed her to begin to perform domestic tasks in Whitaker's home. *Id.* The following week, Whitaker took Zirintusa to the home of Whitaker's friend, Pauline Harris, and instructed Zirintusa to clean Harris's house once a week. *Id.* ¶ 32. Zirintusa alleges that Harris paid Whitaker for Zirintusa's services and that Zirintusa never received any payment from Harris. *Id.* Zirintusa worked for 17 weeks for approximately 60 hours a week – six 8-hours days per week for Whitaker and one 12-hour day per week for Harris. *Id.* ¶ 34. Zirintusa alleges that Whitaker paid her less salary than was originally promised and

Whitaker did not pay for her food or healthcare as promised. *Id*. ¶¶ 33, 35.

Zirintusa complained to Whitaker that she was unhappy with her working conditions and that Whitaker was not honoring her promises. *Id*. ¶ 36. Zirintusa alleges that she was terminated from her employment in retaliation for her complaints. *Id*.

On or about December 18, 2004, Zirintusa met with Sheila Williams – Whitaker's sister and Chief of Staff at the Whitaker Group. *Id*. ¶ 39. During that meeting, Williams had Zirintusa sign a scholarship participation form dated April 21, 2004 that Zirintusa had never seen before. *Id*. Six days later, on December 24, 2004, Williams informed Zirintusa that she was terminated from her employment for Whitaker, effective immediately. *Id*. ¶ 40. Zirintusa then signed, at Williams's direction, another document stating that she declined to accept a return ticket to Uganda and a $1,500 resettlement sum, and that she would identify a new financial sponsor in the United States. *Id*.

On August 31, 2005, Zirintusa filed a complaint in this Court alleging breach of an employment agreement, breach of the Affidavit of Support, violations of the Fair Labor Standards Act, violations of the D.C. Payment and Collection of Wages Law and D.C. Minimum Wage Act, tortious interference with contract and prospective advantage, fraud, and unjust enrichment. Whitaker

filed a motion to dismiss on November 17, 2005 and a motion for judgment on the pleadings on December 22, 2005.  On January 17, 2006, this Court denied Whitaker's motion to dismiss and took the motion for judgment on the pleadings under advisement.

## II.  DISCUSSION

### A.  Standard of Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) should be granted if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law.  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992).  The Court views the facts in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.  *Id.*  Entry of judgment under Rule 12(c) is inappropriate "if there are allegations in the complaint which, if proved, would provide a basis for recovery."  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  "A plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact," however, are not sufficient to defeat such a motion.  *Id*.

### B.  Breach of Oral Employment Contract

Zirintusa alleges that she and Whitaker entered into a three-year oral employment contract pursuant to which Whitaker promised Zirintusa (1) four times the wage she earned in Uganda, (2) full tuition at a U.S. college, (3) food, shelter, and

5

healthcare in the United States, and (4) separate payments to support Zirintusa's family who remained in Uganda. Whitaker argues that Whitaker and Zirintusa had no employment contract and that if Zirintusa was an employee, the employment was at-will and Zirintusa could be terminated at any time. Viewing the facts in the light most favorable to Zirintusa as the Court must do at this stage, the Court finds that Zirintusa has sufficiently alleged that she had an employment contract with Whitaker.

Because Zirintusa asserts that she had an *oral* employment agreement that extended for a period of more than one year, the Court must also determine whether the statute of frauds is a bar.[1] The statute of frauds proscribes the enforcement of oral contracts that cannot be performed within one year of their formation. *See* D.C. Code § 28-3502; *Coan v. Orsinger*, 265 F.2d 575, 576 (D.C. Cir. 1959). Based on existing precedent in this Circuit and the D.C. Court of Appeals, the Court finds that the oral employment agreement between Zirintusa and Whitaker comes within the statute of frauds. *See Hodge v. Evans Fin. Corp.*, 823 F.2d 559, 563 (D.C. Cir. 1987) ("Under the conventional view of the statute, an oral employment contract for a stated, definite term of years exceeding one year . . . is unenforceable.");

---

[1] At the Initial Status Conference on January 17, 2006, the Court *sua sponte* raised the issue of whether or not the statute of frauds applies to this case and gave the parties and opportunity to submit supplemental briefings on the issue.

*Easter v. Kass-Berger, Inc.*, 121 A.2d 868, 870 (D.C. 1956) (upholding the trial court's determination that a two-year oral employment agreement falls within the statute of frauds).

The Court may refuse to allow the defense of the statute of frauds to be a bar to an oral employment contract, however, if one of several exceptions applies. Courts may refuse to allow the statute of frauds defense when the defendant's own fraud is responsible for the absence of a writing, when the equitable doctrine of part performance is applicable, and when the defendant has admitted to the existence of the contract. *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1066 (D.C. 1980). Zirintusa argues that Whitaker admitted to the contract and that her partial performance of and detrimental reliance on the contract estops Whitaker from asserting the statute of frauds defense. For the reasons stated below, the Court disagrees that Whitaker admitted to the contract but agrees that Zirintusa's part performance and detrimental reliance remove this contract from the statute of frauds at least for the time being and discovery should proceed on this matter.

Zirintusa argues that because Whitaker has admitted the existence of some sort of agreement between Zirintusa and Whitaker, the statute of frauds does not apply. In her answer, Whitaker only admits that she offered to assist Zirintusa to relocate to Washington, D.C. to pursue an education and that she

7

would provide financial support in connection with the offer. Whitaker also admits that she reached an agreement with Zirintusa whereby Zirintusa would come to the United States on a student visa. Throughout her pleadings, Whitaker is very careful not to explicitly admit the existence of an employment contract. Therefore, Zirintusa's argument that Whitaker's acknowledgment of some sort of agreement is sufficient to constitute a waiver of the statute of frauds is unconvincing.

Zirintusa also argues that the statute of frauds is inapplicable due to her partial performance of and detrimental reliance on the employment contract. The D.C. Court of Appeals has held that partial or complete performance under an oral contract may make the statute of frauds inapplicable to that contract. *See Amberger & Wohlfarth, Inc. v. District of Columbia*, 300 A.2d 460, 463 (D.C. 1973).[1] However, the Court of Appeals has also held that "[a]s a general rule, nothing short of full performance will take a contract not to be performed within one year from within the statute." *Easter*, 121 A.2d at 871. Moreover, "in the absence of other and stronger circumstances, a mere refusal to perform an oral agreement is not such fraud as to prevent the application of the statute, despite hardship to a plaintiff." *Id*. In order to effectively assert estoppel, the

---

[1] This case involved a lease of property and not an employment contract.

plaintiff must be able to show that "he has changed his position substantially for the worse and that he has incurred unjust and unconscionable injury." *O'Rourke v. Audio Stats Educ. Services, Inc.*, Civ. A. No. 85-2768, 1989 WL 43956, at *2 (D.D.C. Apr. 18, 1989).

In *Easter*, the plaintiff left a job in Harrisburg, Pennsylvania and moved to the District of Columbia in reliance on an alleged oral agreement for two years of employment. *Easter*, 121 A.2d at 869. The Court held that the discharge of the plaintiff after only six weeks of employment at his new job in D.C. was not sufficient to prevent application of the statute of frauds. *Id*. at 871; *see also O'Rourke*, 1989 WL 43956, at *3 (finding that "plaintiff's decision to leave his previous employment does not constitute an unjust or unconscionable injury that would require the Court to disregard the statute of frauds"); *Reynolds v. Stevens Studios*, 659 F.2d 44, 46 (5th Cir. 1981) (holding that Reynold's forfeiture of his earlier employment in reliance on an oral contract for new employment did not prevent application of the statute of frauds).

The Court finds that this case is distinguishable from other cases in which individuals gave up their previous employment in reliance on an oral employment agreement. Taking the facts in Zirintusa's complaint as true, Zirintusa left a job at the Uganda State House that provided job security, housing, provisions for

9

her children's education, and other fringe benefits in order to move halfway around the world to take a job with Whitaker based on an alleged oral agreement of employment for three years. Zirintusa depended on Whitaker for her visa, education, housing, food, healthcare, and employment.  The Court finds that this is a much greater sacrifice than moving from Harrisburg, Pennsylvania to Washington, D.C. as was the case in *Easter*.  The Court further finds that "other and stronger circumstances" are at play here besides a mere refusal to perform an oral employment agreement. Therefore, the statute of frauds is not a bar to further litigation regarding the alleged three-year oral contract for employment between Zirintusa and Whitaker.

### C.   Affidavit of Support

Zirintusa asserts that Whitaker breached the Affidavit of Support (Form I-134) submitted to the INS, in which Whitaker promised to provide room, board, and tuition to Zirintusa for a period of three years.  Whitaker argues that the Affidavit of Support is not a binding contract between the parties.  Federal Courts have repeatedly sided with Whitaker.  *See, e.g., Cheshire v. Cheshire*, No. 3:05-CV-00453-TJC-MCR, 2006 WL 1208010, at *2 (M.D. Fla. May 4, 2006) ("[F]ederal courts have consistently found that Form I-134 is not a legally enforceable contract against a sponsor by a sponsored immigrant."); *Stump v. Stump*, No. 1:04-CV-253-TS, 2005 WL 1290658, at *4 (N.D. Ind. May 27,

2005) (finding that the I-134 Form "is a nonenforceable promise by the sponsor to support the alien"); *Tornheim v. Kohn*, No. 00 CV 5084(SJ), 2002 WL 482534, at *4 (E.D.N.Y. Mar, 26, 2002) ("[A]n affidavit of support on an I-134 Form is not a legally binding contract."). The Court sees no reason to disagree with the holdings of these courts. Thus, the Court grants Whitaker's motion for judgment on the pleadings as to Zirintusa's claim for breach of the Affidavit of Support.

### D.   FLSA and D.C. Labor Laws

Zirintusa asserts that Whitaker violated various provisions of the Fair Labor Standards Act ("FLSA"), D.C. Payment and Collection of Wages Law, and D.C. Minimum Wage Act by failing to pay Zirintusa the minimum wage and overtime pay to which she was entitled for the domestic services she provided to Whitaker and Harris. Whitaker argues that Zirintusa cannot sustain her claims because Zirintusa was not legally permitted to work in the United States. Whitaker further argues that Zirintusa is not entitled to overtime pay under either federal or D.C. law because domestic service workers who reside in their employer's residence are exempt from the overtime pay requirement.

Whitaker relies in part on the Immigration Reform and Control Act ("IRCA") to support her argument that Zirintusa cannot bring a cause of action for minimum wage and overtime violations. IRCA makes it unlawful to hire illegal aliens and

provides civil and criminal penalties for those who do.  *See* 8 U.S.C. § 1324a; *see also Patel v. Quality Inn South*, 846 F.2d 700, 704 (11th Cir. 1988).  The purpose behind IRCA is to eliminate employers' economic incentives to hire undocumented aliens.  *See Patel*, 846 F.2d at 704 (exploring the legislative history of IRCA).  Nothing in IRCA, however, prohibits undocumented workers from asserting FLSA claims.  *See id.* ("[N]othing in the IRCA or its legislative history suggests that Congress intended to limit the rights of undocumented aliens under the FLSA."); *Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002) ("Numerous lower courts have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA.") (compiling cases).  Indeed, it would provide perverse incentives to employers to seek out and knowingly hire illegal aliens in contravention of IRCA if those aliens could not protect themselves by bringing claims under the FLSA.  *See Patel*, 846 F.2d at 704; *Singh v. Julta*, 214 F. Supp. 2d 1056, 1062 (N.D. Cal. 2002).

Whitaker's reliance on cases in which illegal aliens were not entitled to bring employment discrimination claims are unconvincing.  In *Reyes-Gaona v. North Carolina Growers Ass'n*, No. 1:00CV00093, 2000 WL 1205738 (M.D.N.C. June 22, 2000), the district court held that Reyes-Gaona could not state a claim for relief under the Americans with Disabilities Act because his lack

of authorization to work in the United States meant that he was not "qualified" for the job that he was seeking.  In *Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184, 186 (4th Cir. 1998), the Fourth Circuit held that an undocumented alien who sued his former employer under Title VII for refusing to rehire him did not have a cause of action because his undocumented status rendered him ineligible for both the remedies he sought (reinstatement) and for employment in the United states.  In both of these cases, the plaintiffs sought backpay and an order compelling an employer to hire them.  By contrast, Zirintusa is seeking minimum wage and overtime pay for work already performed and is not seeking further employment from Whitaker.

The Court further rejects Whitaker's argument that a judgment on the pleadings in her favor is warranted because Zirintusa was exempt from the overtime pay requirements of the FLSA.  Under the FLSA, "an employee who is employed in domestic service in a household and who resides in such a household" is exempt from overtime pay.  *See* 29 U.S.C. § 213(b)(21).  Zirintusa claims that, in addition to the work she performed in Whitaker's home, Whitaker made her perform work in Harris's home as well and the work in Harris's home accounted for much of her overtime.  Whitaker argues that any alleged overtime work was for Harris and that Zirintusa fails to allege sufficient facts to support her contention that Whitaker was supposed to pay Zirintusa for the

work performed for Harris.  The parties dispute what the Court considers a material fact:  whether Zirintusa performed overtime work outside Whitaker's home with Whitaker as her employer. Viewing the facts in the light most favorable to Zirintusa at this stage of the litigation and therefore assuming that Zirintusa performed domestic service work outside Whitaker's household as an employee of Whitaker, Zirintusa survives the motion for judgment on the pleadings on her overtime claims.

### E.   Tortious Interference

Zirintusa alleges interference with contractual relations and interference with prospective business advantage based on Whitaker's interference with Zirintusa's work for the Uganda State House.  Whitaker argues that Zirintusa's claims lack credibility and that Zirintusa has failed to sufficiently plead the existence of an employment agreement or business relationship with her previous employer.

To establish a *prima facie* case of intentional interference with contractual relations, the plaintiff has the burden of showing "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach."  *Paul v. Howard Univ.*, 754 A.2d 297, 308-09 (D.C. 2000).  Zirintusa sufficiently pleads all of these elements to survive a motion for judgment on the pleadings.  In her complaint, Zirintusa alleges

14

that she had a contract for a term of years with the Uganda State House, Whitaker knew of the contract, Whitaker intentionally interfered with that contract by exerting influence over Zirintusa's superiors, and Whitaker's actions led to the termination of Zirintusa's employment relationship with the Uganda State House.

To sustain a claim of interference with prospective business advantage, the evidence must show "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach" or "termination of the business expectancy, and (4) resultant damage." *Bennett Enters. v. Domino's Pizza*, 45 F.3d 493, 499 (D.C. Cir. 1995). Zirintusa sufficiently pleads all of these elements as well. Zirintusa alleges that she had a valid business relationship with her employer that included certain fringe benefits, Whitaker knew of this business relationship, and Whitaker intentionally interfered with this business relationship and the expectancy of continued benefits by influencing the Uganda State House regarding Zirintusa's employment, thereby causing the end of this relationship.

Whitaker argues that Zirintusa has not met her burden of pleading on her tortious interference claims because Zirintusa simply alleges that Whitaker talked to her employer and that

15

cannot be interference.  Whitaker further argues that Zirintusa does not state anywhere in her complaint that Zirintusa was required to leave her job at the Uganda State House and go to the United States.  Whitaker ignores, however, Zirintusa's assertions in her complaint that Zirintusa understood her employer's statement that she was "allowed" to go to the United States and would not have a job upon her return to mean that she was being terminated from the Uganda State House and that she was expected to take Whitaker's offer.  The Court finds that Zirintusa has met her burden of pleading her tortious interference claims and is entitled to discovery on these issues.

**F.   Fraud**

Zirintusa alleges that Whitaker falsely promised her that if she accepted Whitaker's offer of employment, Whitaker would provide payments for the care and support of Zirintusa's family in Uganda.  Whitaker argues that Zirintusa's fraud claim is too lacking in credibility to be believable and that Zirintusa has not sufficiently pled facts to support her fraud claim.  The Court disagrees.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Normally, "this means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented

16

and what was obtained or given up as a consequence of the fraud." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (citations omitted). However, Rule 9's requirement to plead fraud with particularity does not abrogate Rule 8's directive that pleadings may provide only a "short and plain statement of the claim or defense." *Id*. at 1386.

If a fraud claim is based on diversity or supplemental jurisdiction as it is in this case, then state substantive law usually defines the elements of fraud. 2-9 Moore's Federal Practice § 9.03[1][e]. The elements of fraud in the District of Columbia are (1) a false representation (2) of a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in reliance on the misrepresentation. *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). Fraud is "never presumed and must be particularly pleaded." *Id*. Fraud must be established by "clear and convincing evidence, which is not equally consistent with either honestly or deceit." *Id*. The party pleading fraud "must allege such facts as will reveal the existence of all the requisite elements of fraud." *Id*. at 59-60.

Zirintusa has satisfied the pleading requirements for her fraud claim. She provides enough detail to state who is the alleged perpetrator of the fraud, when and where the fraudulent statements were made, the nature of the fraudulent statements,

and what Zirintusa gave up as a result.  Specifically, Zirintusa claims that Whitaker "made material misstatements of fact in January 2003, September 2003, and July 2004, when she falsely promised Zirintusa that if Zirintusa accepted Whitaker's offer of employment, Whitaker would provide payments for the care and support of Zirintusa's family in Uganda."  Compl. ¶ 97. Zirintusa also alleges that Whitaker made these representations knowing they were false, Zirintusa reasonably relied on the misstatements, and Zirintusa sold her possessions at a significant loss and left her family in Uganda to come work for Whitaker.  The Court finds that these facts are sufficient to overcome a motion for judgment on the pleadings.

### G.   Unjust Enrichment

Zirintusa asserts that Whitaker received a benefit at Zirintusa's expense when Whitaker accepted domestic services from Zirintusa without paying Zirintusa full compensation for the value of the services rendered.[2]  Whitaker responds that Zirintusa's claim for unjust enrichment is not supported by believable allegations and that Zirintusa has failed to plead facts sufficient to support her unjust enrichment claim. Whitaker further argues that Zirintusa cannot establish that she

---

[2] Similarly, Zirintusa claims that Harris was unjustly enriched by Zirintusa's domestic services in her home because Zirintusa did not receive payment for that work from either Harris or Whitaker.

was unjustly enriched because Zirintusa has failed to take into account the provisions of the FLSA that allow an employer to deduct the costs of food, lodging and other expenses from a live-in domestic employee's wages.

Unjust enrichment occurs when "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Communs., Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). In this case, Zirintusa sufficiently alleges that Whitaker received a benefit at her expense when Whitaker accepted Zirintusa's domestic services without paying full compensation for the value of those services. Zirintusa further sufficiently alleges that Whitaker received a benefit at Zirintusa's expense when Whitaker accepted payments from Harris for domestic services Zirintusa performed for Harris without compensating Zirintusa for those services. Finally, Zirintusa sufficiently alleges that Harris received a benefit at Zirintusa's expense by accepting domestic services without paying Zirintusa for those services. Zirintusa has met her burden of pleading unjust enrichment. Without any discovery having yet commenced in this case, it is too early for the Court to say whether or not Zirintusa was in fact entitled to any additional wages or whether FLSA deductions for living expenses would be sufficient to overcome any claim of unjust enrichment.

**III. CONCLUSION**

For the foregoing reasons, the Court concludes that Whitaker's motion for judgment on the pleadings is **GRANTED** only as to the claim of breach of the Affidavit of Support in Count II of Zirintusa's complaint and **DENIED** as to all other claims. An appropriate Order accompanies this Memorandum Opinion.


**Signed:**     **EMMET G. SULLIVAN**
            **UNITED STATES DISTRICT JUDGE**
            **January 3, 2007**