UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IDAH ZIRINTUSA )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROSA WHITAKER, et al. )<br>)<br>Defendants. )  | Civil Action No. A:05CV01738 (EGS)<br><br>**PLAINTIFF'S BRIEF OUTLINING<br>DISCOVERY DISPUTE** |

Pursuant to the Court's March 20, 2007, Order, Plaintiff submits this brief outlining her discovery dispute arising from her Rule 30(b)(6) deposition of The Whitaker Group ("TWG").[1] Although TWG is a non-party, TWG is defendant Whitaker's company and it designated Ms. Whitaker's sister, Sheila Williams, to testify on its behalf. Despite TWG's obligation to testify as "to the matters on which examination is requested," Ms. Williams, with the support of her counsel, but without any legal basis, limited her testimony to a narrow set of issues. Further, Ms. Williams was unprepared to speak on behalf of TWG, and improperly limited her answers to her personal knowledge. As a result, the deposition was unproductive and TWG should be compelled to testify again, in manner consistent with Rule 30(b)(6).

In the first minutes of the deposition, Ms. Williams made clear that she was "only going to testify to about the Whitaker Group Scholarship program … and nothing else."[2] Ms. Williams refused to answer about half of the highly relevant topics in the Rule 30(b)(6) subpoena, including: (1) duties of current and former TWG employees; (2) TWG business records; (3) TWG's response to Plaintiff's request for documents; (4) arrangements and agreements

---

[1] Plaintiff served a Rule 30(b)(6) subpoena on TWG on January 30, 2007. (*See* Ex. 1). TWG's counsel requested additional time to produce documents and a deferment of the deposition date. Accordingly, plaintiff served TWG's counsel with an updated Rule 30(b)(6) subpoena with new dates and a few additional requests. (*See* Ex. 2).
[2] *See* Ex 3, Tr. 11:10-16.

- 1 -

between Plaintiff and TWG; (5) communications between Plaintiff and TWG; and (6) Ms. Whitaker's work travel for times including the period when she met the plaintiff.[3]

Because Ms. Williams limited her testimony as set forth above, she effectively precluded the Plaintiff from identifying (and learning how to locate) key witnesses. For example:

> Q. Of the people you remember, which employees of The Whitaker Group met [plaintiff] Idah [Zirintusa] in 2004?
> A. Again, I'm not going to answer that, because it does not tie directly to The Whitaker Group Scholarship Program, and I consider that privileged information.[4]
> 
> * * *
> 
> Q. Does The Whitaker Group have a bookkeeper?
> A. Again, I'm not going to answer that question, because it does not speak specifically to the Scholarship Program.[5]

Plaintiff tried to discover information demonstrating that she had a contract with Ms. Whitaker, and not a mere "scholarship," by asking questions to show that TWG knew that the contract existed. Ms. Williams (in an apparent effort to support defendant's theory that the plaintiff had only a scholarship), limited her answers to TWG's scholarship program:

> Q. How did The Whitaker Group learn about Idah?
> A. Okay. Again, are you asking about The Whitaker Group, the company?
> Q. Yes.
> A. Okay, I'm not going to – I cannot answer any questions as relates to [TWG].
> Q. Okay. How did you first learn about Idah?
> A. As related to the Scholarship Program?
> Q. No, just how did you – generally, how did you first learn about Idah?
> A. Again, if it pertains to the Scholarship Program, I will answer….[6]
> 
> * * *
> 
> Q. And what did Ms. Whitaker say about Idah [before Idah came here]?
> A. As related to the Scholarship Program?
> Q. Yes.
> A. Basically … that she was interested in attending Montgomery College ….
> Q. And did she say anything else about Idah not in relation to the scholarship program?
> A. I can't answer anything that's not related to the scholarship program.[7]

---

[3] *See* Ex 3, Tr. 13:17 – 15:3. TWG also refused to produce documents that were not related to the scholarship program, including Ms. Whitaker's pay stubs and business travel records.
[4] *See* Ex. 3, Tr. 16:16-20. *See also id.*, Tr. 15:19-16:13 (same);
[5] *See* Ex. 3, Tr. 22:6-9. *See also id.*, Tr. 22:10-15 (refusing to say if TWG has an accountant).
[6] *See* Ex. 3, Tr. 61:12 – 62:6; *id.* Tr. at 66:21 – 66:9; 73:6-15 (refusing to answer how Ms. Whitaker met plaintiff).
[7] *See* Ex. 3, Tr. 64:2 – 65:8; Tr. 103:16-20 (same); *see also* Ex. 3, Tr. 85:19 – 86:19 (refusing to answer questions about a TWG employee scheduled to meet plaintiff).

In all, Ms. Williams, with her counsel's support, refused to answer dozens of questions on numerous topics including: (1) TWG's document retention policy;[8] (2) Ms. Whitaker's position, duties, hours, and assistants (that bear on Ms. Whitaker's need to hire plaintiff as a domestic worker);[9] (3) Ms. Williams' background, biases and qualifications to testify;[10] and (4) even questions on TWG's scholarship program if Ms. Williams felt that the answers would reveal other aspects of TWG's business.[11]

Ms. Williams made no effort to prepare to testify to "matters known or reasonably available to the organization," as required by Rule 30(b)(6).[12]  Instead, she limited her testimony to matters within her person knowledge, which is entirely improper.  For example:

> Q. Did anyone at The Whitaker Group, to your knowledge, communicate that [TWG would pay plaintiff's tuition for two years]?
> A. I can't speak for anyone else at The Whitaker Group.[13]
> * * *
> Q. And why did Rosa recommend Idah [for the scholarship program]?
> A. I can't respond to that.
> Q. And what's the basis of your refusal to respond.
> A. Because I don't know.  I think the question is better suited for Ms. Whitaker.[14]

Finally, counsel for TWG provided no valid or meaningful basis for the deponent's refusal to answer the questions described above.  For example:

> Q. Okay, I'll just ask one more time if you would tell me who met Ms. Zirintusa?
> Mr. WALLER: I think she's answered that question.
> THE WITNESS: I've answered that question and I consider that privileged ….
> MR. LAKATOS: Counsel, what is your basis for – are you instructing your witness not to answer that question?
> MR. WALLER: Well, what I'm saying here is that my client has answered the question.  At some point it becomes a matter of badgering my client ….[15]

---

[8] *See* Ex. 3, Tr. 19:16-19.
[9] *See* Ex. 3, Tr. 24:18 – 25:1; 188:18 – 189:19.
[10] *See* Ex. 3, Tr. 186:12 – 188:17; 194:9 – 196:9.
[11] *See* Ex. 3, Tr. 23:12 – 24:17; 27:10 – 28:5.
[12] *See* Ex. 3, Tr. 8:6-9 (deponent did not meet with anyone or review any documents to prepare).
[13] *See* Ex. 3, Tr. 79:6-18.
[14] *See* Ex. 3, Tr. 68:3-8.
[15] *See* Ex. 3, Tr. 17:2 – 19:02; Tr. 103:16 – 104:7; 204:11-18.

Dated: March 23, 2007                                    Respectfully submitted,

                                                         MAYER BROWN, ROWE & MAW


                                                          /s/ Alex Lakatos_____
                                                         Alex C. Lakatos, Esq. (DC Bar No. 453763)
                                                         1909 K Street, NW
                                                         Washington, DC 20006
                                                         (202) 263-3312


Certificate Pursuant to LCvR 7(m)

     The undersigned counsel conferred with opposing counsel in an effort to resolve the above-described discovery dispute. Any attempt to obtain relief on this matter is opposed.

                                                          /s/ Alex Lakatos_____
                                                         Alex C. Lakatos, Esq. (DC Bar No. 453763)

- 5 -

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 23rd day of March 2007, a copy of the foregoing Plaintiffs' Brief Outlining Discovery Dispute and the Declaration of Alex Lakatos in support thereof was served via First Class Mail, postage prepaid, and electronic mail on the following:

    Mr. J. Edward Waller
    Counselor At Law
    1001-1013 Springfield Avenue
    Suite 215
    Irvington, NJ  07111
    Email: jwallernj@aol.com

    *Counsel for The Whitaker Group*

    /s/ Alex Lakatos_____
    Alex C. Lakatos