**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IDAH ZIRINTUSA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. A:05CV01738 (EGS) |
| | ) | |
| vs. | ) | |
| | ) | |
| ROSA WHITAKER, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF ALEX C. LAKATOS

I, Alex C. Lakatos, hereby declare as follows:

1. I am one of the attorneys representing Plaintiff Idah Zirintusa.

2. Attached to this declaration as Exhibit 1 is a true and correct copy of the subpoena for the 30(b)(6) Deposition of, and Production of Documents by, The Whitaker Group, dated January 30, 2007.

3. Exhibit 1 was served on The Whitaker Group on January 30, 2007.

4. Attached to this declaration as Exhibit 2 is a true and correct copy of the subpoena for the 30(b)(6) Deposition of, and Production of Documents by, The Whitaker Group, dated February 20, 2007.

5. Exhibit 2 was served on counsel for The Whitaker Group, who agreed to accept service on behalf of The Whitaker Group, on February 20, 2007.

6. Attached to this declaration as Exhibit 3 are true and correct copies of excerpts of the transcript of the 30(b)(6) Deposition Of The Whitaker Group By And Through Their Corporate Representative, Sheila Williams, that took place on March 5, 2007.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed: March 23, 2007                    _____/s/_____
                                                              Alex C. Lakatos

# EXHIBITS

# EXHIBIT 1

**Issued by the**

## UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

**Idah Zirintusa**

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:  05-1738 (EGS)

v.

**Rosa Whitaker**

**and**

**Pauline Harris**

To:    The Whitaker Group
        1725 I Street NW
        Suite 300
        Washington, D.C. 20006

■  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Offices of Mayer, Brown, Rowe & Maw LLP 1909 K Street, NW, 12th Floor Washington, DC  20006 | DATE AND TIME FEB. 9, 2007 9:30 A.M. |
|---|---|

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See **Attachment 1 hereto.**

| PLACE    Offices of Mayer, Brown, Rowe & Maw LLP 1909 K Street, NW, 12th Floor Washington, DC  20006 | DATE AND TIME FEB. 20, 2007 |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE JANUARY 30, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Attorney for Plaintiff,
Alex C. Laktos, Esq.
1909 K Street, NW, 11th Floor
Washington, DC  20006
(202) 263-3367

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

DCDB01 20842800.1   30-Jan-07
08:55

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　Date

Signature of Server

Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)　A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)　(A)　A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)　Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)　(A)　On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)　fails to allow reasonable time for compliance;

(ii)　requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)　requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)　subjects a person to undue burden.

(B)　If a subpoena

(i)　requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)　requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)　requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### Attachment 1 to Subpoena to The Whitaker Group

You are instructed to produce the following documents at the time and place specified in the subpoena in accordance with the following instructions and definitions.

### Instructions and Definitions

1.    If you contend that you are entitled to withhold from production the whole or any part of any responsive documents on the basis of the attorney-client privilege, the work product doctrine, or other grounds, for each such document:

(a) describe the nature of the document (e.g., letter, memorandum);
(b) state the date of the document;
(c) identify the sender, author, and all recipients of the document;
(d) summarize the subject matter of the document;
(e) state the basis on which you contend you are entitled to withhold the document from production.

2.  If an objection is made to any request herein, all documents covered by the request not subject to the objection should be produced.  Similarly, if an objection is made to production of a document, the portion(s) of that document not subject to objection should be produced with the portion(s) objected to deleted and indicated clearly.

3.  You must produce all responsive documents as they are kept in the ordinary course of business, or you must organize the documents to correspond with the categories in this request.

4.  The term "assistance" means the provision, to or for the direct or indirect benefit of the person receiving the assistance, or to or for the direct or indirect benefit of that person's dependents or designees, of any monies, payments, benefits, opportunities, or advantages, including but not limited to financial payments; provision of in-kind benefits (such as food and housing); provision of employment; provision of assistance to facilitate the obtaining of

3

employment, entry into the United States, or admission to an educational institution or any other benefit or entitlement.

5.    The term "concerning" and the phrases "refer to" "or relate to" mean referring to, relating to, regarding, reflecting, discussing, constituting, mentioning, pertaining to, alluding to, describing, supporting, evidencing, or associated with.

6.    The term "communication(s)" means the transmittal of information by any means. This includes but is not limited to any oral, verbal, written, or other exchange between two or more individuals/entities on any topic, for example through conversations (in-person, telephonic, or otherwise) or exchanges in writing (transmitted via any method, including email, letter, facsimile, or otherwise).

7.    The word "document(s)" means all written, printed, recorded or graphic matter, photographic matter, sound reproductions, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically or otherwise) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made; without limiting the generality of the foregoing, the word "document(s)" <u>includes the original and any nonidentical copy and also every draft and proposed draft</u> of all correspondence, memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, voice mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or documentary material of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

8.    The words "Plaintiff" and "Plaintiff's" refer to Plaintiff Idah Zirintusa.

9.  If there are no documents responsive to any request set forth above, state that there are no responsive documents.

## **Documents to be Produced**

1.  All documents concerning the institution and administration of The Whitaker Group Scholarship Program.  This includes, but is not limited to, documents relating to the initial establishment of the program; the funding of the program; any policies or procedures in place, formal or informal, that relate to who is involved in the selection of applicants, what criteria are used to select participants, who assists in securing visas, transportation, completing admissions documents and paying tuition for participants, and how these arrangements are to be made; any minutes from board or group meetings concerning the program or its establishment; and any correspondence or other documentation, internal or otherwise, relating to administering the program, choosing participants, and making necessary arrangements for participants.

2.  All documents concerning Plaintiff and The Whitaker Group Scholarship Program.  This includes, but is not limited to, any documents concerning any application materials received from Plaintiff relating to the program; communications between The Whitaker Group and Plaintiff concerning the program; and financial records relating to arrangements made pursuant the program for tuition, travel, visa expenses, etc.

3.  All documents concerning all individual applicants, and/or participants or beneficiaries of, The Whitaker Group Scholarship Program.  This includes, but is not limited, to application materials submitted by applicants and participants; correspondence between The Whitaker Group and applicants or participants; and records and correspondence relating to arrangements made by The Whitaker Group for the program participants for purposes of visa procurement, travel arrangements and tuition payments for the participants.

5

4.     Any other documents concerning The Whitaker Group Scholarship Program not covered by the preceding requests.

5.     All documents concerning an airplane ticket offered to Plaintiff. This includes, but is not limited to, any correspondence with Plaintiff concerning scheduling a time and date for departure, and financial documents recording how payment was made and by whom it was authorized.

6.     Any documents, including calendar entries, reflecting visits by Plaintiff to the offices of The Whitaker Group.

7.     All documents concerning any accounts held by The Whitaker Group used at any time to provide assistance to the Plaintiff, from the time period in which those accounts were used to provide assistance to Plaintiff.

8.     Any documents not covered by previous requests in the control, custody, or possession of The Whitaker Group or any of its agents or employees that relate in any way to Plaintiff.

9.     Any documents not covered by previous requests in the control, custody, or possession of The Whitaker Group or any of its agents, employees, or affiliates concerning the institution or litigation of the lawsuit captioned <u>Idah Zirintusa v. Rosa Whitaker et al.</u>, Civil Action No. 1:05CV01738 (EGS).

10.     Any documents, including but not limited to calendar entries, handwritten messages, emails, etc., relating to communications between Daniel Portnoy, Scott Kucik, Vincent Piazza, or any other employees or agents of Capitol Process Services and any employee, agent, or affiliate of The Whitaker Group.

6

11.    All documents concerning the travel by Rosa Whitaker from July 2004 through January 2005, and in August through October 2005.

7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| IDAH ZIRINTUSA )<br>)<br>The Plaintiff, )<br>)<br>v. )<br>)<br>ROSA WHITAKER )<br>)<br>and )<br>)<br>PAULINE HARRIS, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:05CV01738 (EGS) |

## NOTICE OF 30(b)(6) DEPOSITION OF THE WHITAKER GROUP

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Idah Zirintusa, by and through its counsel, will take the deposition upon oral examination, before a person authorized to administer oaths, of The Whitaker Group, on February 16, 2007, commencing at 9:30 a.m., at Mayer Brown Rowe & Maw LLP, 1909 K Street, 12th Floor, Washington, D.C. 20006. The deposition shall be transcribed by stenographic means, and continue from day to day until completed. Pursuant to Federal Rule of Civil Procedure 30(b)(6), The Whitaker Group shall designate one or more officers, directors, or managing agents, or other person or persons who consent to testify on its behalf, who are most knowledgeable about and will testify to the topics set forth in Attachment A. You are invited to attend and cross-examine.

DATED: January 30, 2007

8

MAYER BROWN ROWE & MAW LLP

Alex C. Lakatos (D.C. Bar No. 453763)
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Tel: (202) 263-3000
Fax: (202) 263-5312
alakatos@mayerbrownrowe.com
Counsel for Plaintiff Idah Zirintusa

9

**Attachment A**

**Topics of Inquiry**

1.  The nature, location, creation and maintenance of The Whitaker Group's business records.

2.  The Whitaker Group Scholarship Program, including but not limited to the program's institution and administration, the initial establishment of the program, the funding of the program and any policies or procedures in place concerning the program.

3.  Plaintiff and The Whitaker Group Scholarship Program, including but not limited to Plaintiff's application and any communications between Plaintiff and The Whitaker Group concerning the program.

4.  Individual applicants and/or participants or beneficiaries of The Whitaker Group Scholarship Program, including but not limited to their application, any communications between the applicants or participants and The Whitaker Group and assistance rendered by The Whitaker Group to the program's participants or beneficiaries.

5.  Identity and contact information of all agents, employees, or affiliates of the Whitaker Group who are and/or were involved in The Whitaker Group Scholarship Program.

6.  All assistance rendered or offered to Plaintiff by The Whitaker Group, including but not limited to assistance rendered in connection with The Whitaker Group Scholarship Program, and an airplane ticket offered to Plaintiff.

7.  All agreements and arrangements between Plaintiff and the Whitaker Group.

8.  All communications between Plaintiff and The Whitaker Group, including but not limited to all communications involving and/or concerning Plaintiff and all visits of Plaintiff to the offices of The Whitaker Group.

9.  Institution and litigation of the lawsuit captioned <u>Idah Zirintusa v. Rosa Whitaker et al.</u>, Civil Action No. 1:05CV01738 (EGS).

10. Communications between Daniel Portnoy, Scott Kucik, Vincent Piazza, or any other employees or agents of Capitol Process Services and any employee, agent, or affiliate of The Whitaker Group.

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January 2007, the foregoing subpoena and Notice of 30(b)(6) deposition directed to The Whitaker Group was served via first class, postage prepaid, U.S. mail on the following counsel of record:

> Johnny Barnes, Esq.
> 7725 – 16th Street, NW
> Washington, DC 20012

> Alex C. Lakatos

# EXHIBIT 2

Issued by the

**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLUMBIA**

**Idah Zirintusa**

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:  05-1738 (EGS)

v.

**Rosa Whitaker**

**and**

**Pauline Harris**

To:    The Whitaker Group
       1725 I Street NW
       Suite 300
       Washington, D.C. 20006

■  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the
   taking of a deposition in the above case.

| PLACE OF DEPOSITION    Offices of Mayer, Brown, Rowe & Maw LLP 1909 K Street, NW, 12th Floor Washington, DC 20006 | DATE AND TIME MARCH 5, 2007 9:30 A.M. |
|---|---|

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following
   documents or objects at the place, date, and time specified below (list documents or objects):

The Whitaker Group pay stubs and W-2s for Rosa Whitaker for 2004.

| PLACE    Offices of Mayer, Brown, Rowe & Maw LLP 1909 K Street, NW, 12th Floor Washington, DC 20006 | DATE AND TIME MARCH 5, 2007 9:30 A.M. |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate
one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may
set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure,
30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE FEBRUARY 20, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Attorney for Plaintiff,
Alex C. Lakatos, Esq.
1909 K Street, NW, 11th Floor
Washington, DC  20006
(202) 263-3312

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

DCDB01 20845094.1   20-Feb-07
16:07

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

Signature of Server

Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)   (A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)   (A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

|  |  |  |
|---|---|---|
| IDAH ZIRINTUSA | ) | |
| The Plaintiff, | ) | |
| v. | ) | |
| ROSA WHITAKER | ) | Civil Action No. 1:05CV01738 (EGS) |
| and | ) | |
| PAULINE HARRIS, | ) | |
| Defendants. | ) | |

## NOTICE OF 30(b)(6) DEPOSITION OF THE WHITAKER GROUP

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Idah Zirintusa, by and through its counsel, will take the deposition upon oral examination, before a person authorized to administer oaths, of The Whitaker Group, on March 5, 2007, commencing at 9:30 a.m., at Mayer Brown Rowe & Maw LLP, 1909 K Street, 12th Floor, Washington, D.C. 20006. The deposition shall be transcribed by stenographic means, and continue from day to day until completed. Pursuant to Federal Rule of Civil Procedure 30(b)(6), The Whitaker Group shall designate one or more officers, directors, or managing agents, or other person or persons who consent to testify on its behalf, who are most knowledgeable about and will testify to the topics set forth in Attachment A. You are invited to attend and cross-examine.

3

DATED: February 20, 2007

MAYER BROWN ROWE & MAW LLP

_____
Alex C. Lakatos (D.C. Bar No. 453763)
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Tel: (202) 263-3000
Fax: (202) 263-5312
alakatos@mayerbrownrowe.com
Counsel for Plaintiff Idah Zirintusa

## **Attachment A**

## **Topics of Inquiry**

1.      The positions, duties, compensation and business expenses of current and former employees of The Whitaker Group.

2.      The structure, organization, business and objectives of The Whitaker Group.

3.      The nature, location, creation and maintenance of The Whitaker Group's business records.

4.      Steps taken by The Whitaker Group to respond to the subpoena for documents served on The Whitaker Group on January 30, 2007.

5.   The Whitaker Group Scholarship Program, including but not limited to the program's institution and administration, the initial establishment of the program, the funding of the program and any policies or procedures in place concerning the program.

6.   Plaintiff and The Whitaker Group Scholarship Program, including but not limited to Plaintiff's application and any communications between Plaintiff and The Whitaker Group concerning the program.

7.   Individual applicants and/or participants or beneficiaries of The Whitaker Group Scholarship Program, including but not limited to their application, any communications between the applicants or participants and The Whitaker Group and assistance rendered by The Whitaker Group to the program's participants or beneficiaries.

8.   Identity and contact information of all agents, employees, or affiliates of the Whitaker Group who are and/or were involved in The Whitaker Group Scholarship Program.

9.  All assistance rendered or offered to Plaintiff by The Whitaker Group, including but not limited to assistance rendered in connection with The Whitaker Group Scholarship Program, and an airplane ticket offered to Plaintiff.

10. All agreements and arrangements between Plaintiff and the Whitaker Group.

11. All communications between Plaintiff and The Whitaker Group, including but not limited to all communications involving and/or concerning Plaintiff and all visits of Plaintiff to the offices of The Whitaker Group.

12. Institution and litigation of the lawsuit captioned <u>Idah Zirintusa v. Rosa Whitaker et al.</u>, Civil Action No. 1:05CV01738 (EGS).

13. Communications between Daniel Portnoy, Scott Kucik, Vincent Piazza, or any other employees or agents of Capitol Process Services and any employee, agent, or affiliate of The Whitaker Group.

14. Rosa Whitaker's travel schedule from July 2004 through January 2005 and from August through October 2005.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2007, the foregoing subpoena and

Notice of 30(b)(6) deposition directed to The Whitaker Group was served via first class, postage

prepaid, U.S. mail on the following counsel of record:

> Johnny Barnes, Esq.
> 7725 – 16th Street, NW
> Washington, DC 20012
>
> _____
> Alex C. Lakatos

# EXHIBIT 3

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 6

| | | |
|---|---|---|
| 10:07:43 | 1 | PROCEEDINGS |
| 10:07:43 | 2 | SHEILA WILLIAMS, |
| 10:07:43 | 3 | corporate designee for The Whitaker Group. |
| 10:07:43 | 4 | having been duly sworn, testified as follows: |
| 10:07:55 | 5 | EXAMINATION BY COUNSEL FOR PLAINTIFF |
| 10:07:55 | 6 | BY MS. LIEBERMAN: |
| 10:07:59 | 7 | Q  Thank you for coming today. And could you |
| 10:08:02 | 8 | please -- well, first I'll introduce myself for the |
| 10:08:08 | 9 | record. My name is Sharan Lieberman. I'm here on |
| 10:08:11 | 10 | behalf of Idah Zirintusa, the plaintiff in this case, |
| 10:08:13 | 11 | with Mayer, Brown, Rowe & Maw. |
| 10:08:17 | 12 | MR. LAKATOS: Alex Lakatos for plaintiff. I |
| 10:08:21 | 13 | have here with me today my colleague, Mike Widmer, |
| 10:08:25 | 14 | also for plaintiff. |
| 10:08:27 | 15 | MR. WALLER: J. Edward Waller, representing |
| 10:08:29 | 16 | the Whitaker Group. |
| 10:08:31 | 17 | THE WITNESS: And Sheila Williams, the Chief |
| 10:08:33 | 18 | Operating Officer for the Whitaker Group. |
| 10:08:34 | 19 | BY MS. LIEBERMAN: |
| 10:08:35 | 20 | Q  Thank you. Again, welcome. Thank you for |
| 10:08:37 | 21 | coming today, and before we start I'm just going to go |
| 10:08:40 | 22 | over a few administrative things. |

Page 7

| | | |
|---|---|---|
| 10:08:44 | 1 | Okay. First, I'm going to ask the |
| 10:08:49 | 2 | questions, you're going to answer the questions, and |
| 10:08:52 | 3 | your answer will be recorded by the court reporter. |
| 10:08:54 | 4 | and you're under oath today. |
| 10:08:58 | 5 | When I ask the questions, I'll assume that |
| 10:09:00 | 6 | you understand my questions unless you tell me you |
| 10:09:03 | 7 | don't understand, and I'll be happy to rephrase or put |
| 10:09:06 | 8 | it another way. So if you don't understand, just let |
| 10:09:09 | 9 | me know, if that's okay. |
| 10:09:11 | 10 | A  That's fine. |
| 10:09:11 | 11 | Q  And also when you give your answer, if you |
| 10:09:14 | 12 | could answer orally rather than shaking your head or |
| 10:09:19 | 13 | nodding, it makes it easier for the court reporter to |
| 10:09:24 | 14 | transcribe it. |
| 10:09:25 | 15 | Lastly, if you need to take a break at any |
| 10:09:27 | 16 | time, just let us know, and we're happy to take a |
| 10:09:30 | 17 | break if you get tired. |
| 10:09:32 | 18 | A  Okay. |
| 10:09:34 | 19 | Q  So first, have you ever been deposed before |
| 10:09:39 | 20 | on behalf of the Whitaker Group? |
| 10:09:41 | 21 | A  No. |
| 10:09:42 | 22 | Q  Have you ever been deposed before |

Page 8

| | | |
|---|---|---|
| 10:09:44 | 1 | individually? |
| 10:09:45 | 2 | A  No. |
| 10:09:48 | 3 | Q  Now, before today, what type of preparation |
| 10:09:51 | 4 | did you do in order to get ready for today's |
| 10:09:54 | 5 | deposition? |
| 10:09:58 | 6 | A  Didn't really do anything special. |
| 10:10:00 | 7 | Q  Did you meet at all with anyone? |
| 10:10:03 | 8 | A  No. |
| 10:10:04 | 9 | Q  Did you review any documents? |
| 10:10:07 | 10 | A  No, not that I can recall, no. |
| 10:10:11 | 11 | Q  Okay. I'd like to show you a document |
| 10:10:23 | 12 | first. |
| 10:10:47 | 13 | MS. LIEBERMAN: And Laurie, could you please |
| 10:10:47 | 14 | mark this as The Whitaker Group Exhibit 1. |
| 10:10:48 | 15 | THE WITNESS: I was just thinking about the |
| 10:10:48 | 16 | last question. You mean somebody outside of the |
| 10:10:52 | 17 | attorney? |
| 10:10:52 | 18 | BY MS. LIEBERMAN: |
| 10:10:52 | 19 | Q  If you met with your attorney, that would be |
| 10:10:55 | 20 | a person that would count as -- you know, if you |
| 10:10:57 | 21 | discussed -- |
| 10:10:57 | 22 | A  Okay. We didn't meet. |

Page 9

| | | |
|---|---|---|
| 10:10:57 | 1 | Q  You didn't meet or speak on the telephone |
| 10:11:01 | 2 | with your attorney? |
| 10:11:03 | 3 | A  Yes, I did. |
| 10:11:04 | 4 | Q  How many times? |
| 10:11:05 | 5 | MR. WALLER: One time. |
| 10:11:08 | 6 | MS. LIEBERMAN: One time? |
| 10:11:09 | 7 | MR. WALLER: Yes. |
| 11:59:57 | 8 | BY MS. LIEBERMAN: |
| 10:11:10 | 9 | Q  And about how long did you speak? |
| 10:11:13 | 10 | A  Not a very long time. |
| 10:11:15 | 11 | MR. WALLER: Five minutes. |
| 10:11:17 | 12 | MS. LIEBERMAN: Okay. |
| 10:12:00 | 13 | (TWG Exhibits 1 and 2 were marked for |
| 10:12:00 | 14 | identification and attached to the deposition |
| 10:12:01 | 15 | transcript.) |
| 10:12:01 | 16 | BY MS. LIEBERMAN: |
| 10:12:17 | 17 | Q  If you could just take a minute and look at |
| 10:12:20 | 18 | it. You don't have to read it in detail, but see if |
| 10:12:22 | 19 | you recognize it and let me know when you're done. |
| 10:12:29 | 20 | A  What's the date on here, on the first one? |
| 10:12:35 | 21 | Q  It should be on the back. January 30th, |
| 10:12:50 | 22 | 2007. |

3 (Pages 6 to 9)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 10

| | | |
|---|---|---|
| 0:12:51 | 1 | A  Okay. |
| 0:12:53 | 2 | Q  And if you could focus your attention on the |
| 0:12:57 | 3 | one dated January 30th, that would be Page 10, |
| 0:13:02 | 4 | Attachment A. |
| 0:13:05 | 5 | A  Page 10? |
| 0:13:08 | 6 | Q  Right, and then on the second one I gave |
| 0:13:09 | 7 | you, it's also Attachment A. It's Page 5. |
| 0:13:18 | 8 | A  Page 5? One second. Uh-huh. |
| 0:13:26 | 9 | Q  Do you recall going over any of these -- |
| 0:13:31 | 10 | A  I recall seeing them, yes. |
| 0:13:32 | 11 | Q  Seeing them? |
| 0:13:34 | 12 | A  Uh-huh. |
| 0:13:34 | 13 | Q  So are you prepared to talk about these |
| 0:13:36 | 14 | items today? |
| 0:13:37 | 15 | A  Some of them. |
| 0:13:38 | 16 | Q  Some of them? |
| 0:13:38 | 17 | A  Uh-huh. |
| 0:13:42 | 18 | Q  Are there any ones that you are not prepared |
| 0:13:44 | 19 | to talk about today? |
| 0:13:46 | 20 | A  I think if you go through them, I will let |
| 0:13:48 | 21 | you know the ones that I will not be responding to. |
| 0:13:52 | 22 | Q  All right. Which ones specifically? |

Page 11

| | | |
|---|---|---|
| 0:13:55 | 1 | A  So we're not going to go through them one -- |
| 0:13:59 | 2 | Q  Well, which ones specifically are you not |
| 0:14:01 | 3 | going to respond to? |
| 0:14:02 | 4 | A  Well, I should probably look at them. |
| 0:14:05 | 5 | Q  All right. And Ms. Williams, just to remind |
| 0:15:37 | 6 | you before you answer, there are two subpoenas, so |
| 0:15:40 | 7 | there's a list in the first one and a list in the |
| 0:15:42 | 8 | second one. |
| 0:15:57 | 9 | A  Okay. Some of them are duplicated, right? |
| 0:16:01 | 10 | Q  Yes, some of them may be the same. |
| 0:16:31 | 11 | A  Okay. The topics that I will respond to |
| 0:16:35 | 12 | basically have to do with the Whitaker Group |
| 0:16:41 | 13 | Scholarship Program. |
| 0:16:43 | 14 | Q  You are only going to testify about the |
| 0:16:44 | 15 | Whitaker Group Scholarship Program -- |
| 0:16:46 | 16 | A  Uh-huh. |
| 0:16:46 | 17 | Q  -- and nothing else? |
| 0:16:49 | 18 | A  That's correct. |
| 0:16:55 | 19 | Q  Could you just point out which numbers. |
| 0:17:06 | 20 | A  Number 2 I can respond to. We have some |
| 0:17:09 | 21 | information to your office concerning that. |
| 0:17:12 | 22 | Q  Okay. |

Page 12

| | | |
|---|---|---|
| 0:17:13 | 1 | A  Some of the information I don't have in |
| 0:17:14 | 2 | front of me, so I can't give specific dates as relates |
| 0:17:18 | 3 | to, you know, "when established" and those kinds of |
| 0:17:21 | 4 | things. |
| 0:17:29 | 5 | Number 3, we've provided that information to |
| 0:17:32 | 6 | your office as well, as relates to the communication |
| 0:17:38 | 7 | between the plaintiff and the Whitaker Group, and I |
| 0:17:42 | 8 | mean I don't have copies of the information that I |
| 0:17:45 | 9 | submitted to your office, so I can't be -- I can't be |
| 0:17:48 | 10 | very specific. |
| 0:17:58 | 11 | And the same thing with Number 4; we've |
| 0:18:00 | 12 | provided that information to your office in writing, |
| 0:18:02 | 13 | and I don't have copies of what I submitted to your |
| 0:18:05 | 14 | office, so I can't specifically tell you, you know, |
| 0:18:10 | 15 | who the beneficiaries were or what the compensation |
| 0:18:13 | 16 | was for them under the Scholarship Program. |
| 0:18:22 | 17 | Number 5 I don't plan to respond to. |
| 0:18:39 | 18 | Number 6 I can respond to, and a lot of that |
| 0:18:46 | 19 | information we've already submitted to your office. |
| 0:18:48 | 20 | Q  Okay. |
| 0:18:49 | 21 | A  Number 8, it seems to be a little bit |
| 0:18:55 | 22 | repetitious from one of your earlier questions about |

Page 13

| | | |
|---|---|---|
| 0:18:59 | 1 | any communication between the Applicant and the |
| 0:19:02 | 2 | Whitaker Group, which we provided to your office. I |
| 0:19:06 | 3 | cannot sit here and tell you what dates Ms. Zirintusa |
| 0:19:11 | 4 | actually visited the office, if you're looking for |
| 0:19:15 | 5 | specific dates. |
| 0:19:16 | 6 | Q  But you will answer questions about that? |
| 0:19:18 | 7 | A  Yes. |
| 0:19:19 | 8 | Q  Okay. |
| 0:19:24 | 9 | A  I don't know what Number 9 means. |
| 0:19:29 | 10 | Q  Okay. |
| 0:19:31 | 11 | A  And I don't -- I have no information for |
| 0:19:33 | 12 | Number 10. |
| 0:19:49 | 13 | Q  And the second document, which is Exhibit 2, |
| 0:19:51 | 14 | Ms. Williams, you were looking at before you were |
| 0:19:57 | 15 | looking at Exhibit 1, right? |
| 0:19:59 | 16 | A  Right. |
| 0:20:00 | 17 | Q  And now we're on to Exhibit 2. |
| 0:20:10 | 18 | A  Number 1 I will not respond to. I will not |
| 0:20:15 | 19 | be providing any response for that. |
| 0:20:26 | 20 | Number 2, I can give you one of the Whitaker |
| 0:20:32 | 21 | Group's brochures that will explain the structure and |
| 0:20:36 | 22 | the organization, but I can't sit here and, you know, |

4 (Pages 10 to 13)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

## Page 14

| 10:20:40 | 1 | give you real specifics and stuff for Number 2. |
| 10:20:45 | 2 | Number 3 I don't plan to respond to. |
| 10:20:50 | 3 | Number 4 I don't plan to respond to, because |
| 10:20:57 | 4 | that's not specific to the Whitaker Group Scholarship |
| 10:21:00 | 5 | Program. |
| 10:21:04 | 6 | Number 5 seems to be a duplicate of one of |
| 10:21:10 | 7 | your questions that was in the prior attachments or |
| 10:21:14 | 8 | exhibit. |
| 10:21:14 | 9 | Same thing for Number 6. |
| 10:21:19 | 10 | Same thing for Number 7, which most of this |
| 10:21:23 | 11 | information we've already sent copies to your office |
| 10:21:27 | 12 | in response to the first subpoena. |
| 10:21:51 | 13 | Number 8 is still another duplicate of the |
| 10:21:57 | 14 | prior information. The prior subpoena that was |
| 10:21:59 | 15 | submitted to us, it's a duplicate. |
| 10:22:10 | 16 | Number 9 is a duplicate. |
| 10:22:25 | 17 | Number 10 has nothing to do with the |
| 10:22:28 | 18 | Whitaker Group Scholarship Program. |
| 10:22:34 | 19 | Number 11, same thing. That's a duplicate |
| 10:22:37 | 20 | of one of the questions in the prior subpoena. |
| 10:22:41 | 21 | Number 12, I have no idea what you're asking |
| 10:22:46 | 22 | for as it relates to Number 12, and it's also a |

## Page 15

| 10:22:50 | 1 | duplicate of the information in the prior subpoena. |
| 10:22:53 | 2 | Same thing for Number 13. |
| 10:22:56 | 3 | And Number 14 I don't plan to respond to. |
| 10:23:00 | 4 | Q   Thank you, Ms. Williams. |
| 10:23:08 | 5 | Okay, I'm going to first ask you some |
| 10:23:11 | 6 | general questions about The Whitaker Group. |
| 10:23:12 | 7 | A   Okay. |
| 10:23:13 | 8 | Q   What type of an organization is it? |
| 10:23:16 | 9 | A   The Whitaker Group is a trade and investment |
| 10:23:21 | 10 | company. We help to improve and increase trade |
| 10:23:25 | 11 | relations between the U.S. and African countries. |
| 10:23:29 | 12 | Q   Is it a nonprofit company? |
| 10:23:31 | 13 | A   No, it is not. |
| 10:23:32 | 14 | Q   What type of classification is it? |
| 10:23:36 | 15 | A   It's an LLC. |
| 10:23:38 | 16 | Q   And how does The Whitaker Group generate |
| 10:23:40 | 17 | income? |
| 10:23:42 | 18 | A   We have clients that we work for that pay a |
| 10:23:47 | 19 | fee to The Whitaker Group for services provided. |
| 10:24:01 | 20 | Q   Which Whitaker Group employees met Idah |
| 10:24:07 | 21 | Zirintusa in 2004? Actually, let me rephrase. Do you |
| 10:24:10 | 22 | know who Idah Zirintusa is? |

## Page 16

| 10:24:13 | 1 | A   Yes. |
| 10:24:14 | 2 | Q   Which Whitaker Group employees in 2004 met |
| 10:24:20 | 3 | Idah? |
| 10:24:24 | 4 | A   I don't plan to answer that since it does |
| 10:24:27 | 5 | not tie directly to the Scholarship Program, and I |
| 10:24:30 | 6 | can't sit here and tell you everybody that she might |
| 10:24:32 | 7 | have met at the Whitaker Group. |
| 10:24:35 | 8 | Q   How many employees in 2004 were there? |
| 10:24:38 | 9 | A   I don't know. I would have to go back and |
| 10:24:40 | 10 | check my records. |
| 10:24:41 | 11 | Q   Could you give us an estimate. Is it under |
| 10:24:45 | 12 | ten? |
| 10:24:54 | 13 | A   Probably. I can't remember. It's been |
| 10:24:57 | 14 | three years ago. |
| 10:24:58 | 15 | Q   Okay. Of the people that you remember, |
| 10:25:01 | 16 | which employees of The Whitaker Group met Idah in |
| 10:25:05 | 17 | 2004? |
| 10:25:05 | 18 | A   Again, I'm not going to answer that, because |
| 10:25:09 | 19 | it does not tie directly to The Whitaker Group |
| 10:25:12 | 20 | Scholarship Program, and I consider that privileged |
| 10:25:15 | 21 | information. |
| 10:25:17 | 22 | Q   Did The Whitaker Group give Idah Zirintusa a |

## Page 17

| 10:25:21 | 1 | scholarship? |
| 10:25:22 | 2 | A   Yes. |
| 10:25:25 | 3 | Q   Okay. I'll just ask one more time if you |
| 10:25:30 | 4 | would tell me who met Ms. Zirintusa. |
| 10:25:32 | 5 | MR. WALLER: I think she's answered that |
| 10:25:34 | 6 | question. |
| 10:25:35 | 7 | THE WITNESS: I've answered that question, |
| 10:25:36 | 8 | and I consider that privileged information. |
| 10:25:39 | 9 | MR. LAKATOS: Counsel, what is your basis |
| 10:25:41 | 10 | for -- are you instructing your client not to answer |
| 10:25:44 | 11 | that question? |
| 10:25:45 | 12 | MR. WALLER: Well, what I'm saying here is |
| 10:25:46 | 13 | that my client has answered the question. At some |
| 10:25:49 | 14 | point it becomes a matter of badgering my client, so |
| 10:25:52 | 15 | she answered the question, and to continue to ask her |
| 10:25:55 | 16 | the question over and over again serves no real |
| 10:25:55 | 17 | purpose. |
| 10:25:56 | 18 | MR. LAKATOS: That's not what I'm saying. |
| 10:25:58 | 19 | Counselor, you're instructing your witness not to give |
| 10:25:59 | 20 | a substantive answer to that question; is that |
| 10:26:00 | 21 | correct? |
| 10:26:01 | 22 | MR. WALLER: My client has answered the |

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410  (800)292-4789  (301)762-8282  (703)288-0026  (410)539-3664

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 18

| 10:26:03 | 1 | question. I have indicated to the attorney here such. |
| 10:26:07 | 2 | The question has been repeated unnecessarily. It |
| 10:26:11 | 3 | amounts to badgering. I object to that type of |
| 10:26:13 | 4 | behavior. |
| 10:26:15 | 5 | MR. LAKATOS: What's your basis for |
| 10:26:15 | 6 | instructing your witness that that information is |
| 10:26:18 | 7 | privileged and she shouldn't answer the question? |
| 10:26:20 | 8 | MR. WALLER: Well, I think you're presuming |
| 10:26:22 | 9 | that I'm instructing my client to say that's |
| 10:26:24 | 10 | privileged, and I think that's a wrong presumption on |
| 10:26:28 | 11 | your part. Any communication I've had with my client |
| 10:26:31 | 12 | regarding this or any other matter is privileged |
| 10:26:33 | 13 | information, and I'm not obligated to disclose |
| 10:26:36 | 14 | anything to you. |
| 10:26:37 | 15 | MR. LAKATOS: Are you instructing your |
| 10:26:38 | 16 | client not to give a substantive response to that |
| 10:26:39 | 17 | question? |
| 10:26:43 | 18 | MR. WALLER: My client has given a |
| 10:26:44 | 19 | substantive response to the question. All I'm saying |
| 10:26:44 | 20 | here -- and I think I'm very clear -- is that at some |
| 10:26:47 | 21 | point in time repeating the question amounts to |
| 10:26:49 | 22 | badgering my client. |

Page 19

| 10:26:51 | 1 | MS. LIEBERMAN: Well, I repeated it twice. |
| 10:26:54 | 2 | THE WITNESS: And I've answered it twice. |
| 10:26:54 | 3 | I've responded to you twice. |
| 10:26:55 | 4 | BY MS. LIEBERMAN: |
| 10:26:57 | 5 | Q Did you meet Idah Zirintusa? |
| 10:26:58 | 6 | A Yes. |
| 10:27:02 | 7 | Q Did Rosa Whitaker meet Idah Zirintusa? |
| 10:27:05 | 8 | A Yes. |
| 10:27:05 | 9 | Q And is she an employee of The Whitaker |
| 10:27:07 | 10 | Group? |
| 10:27:08 | 11 | A Who? |
| 10:27:09 | 12 | Q Rosa Whitaker. |
| 10:27:10 | 13 | A Yes. |
| 10:27:11 | 14 | Q And are you an employee of The Whitaker |
| 10:27:12 | 15 | Group? |
| 10:27:12 | 16 | A Yes. |
| 10:27:31 | 17 | Q Does The Whitaker Group have a policy |
| 10:27:33 | 18 | concerning the retention of documents? |
| 10:27:40 | 19 | A Since that does not pertain to the |
| 10:27:43 | 20 | Scholarship Program, I'm not going to answer that. |
| 10:27:48 | 21 | Q When are documents permitted to be |
| 10:27:50 | 22 | destroyed? |

Page 20

| 10:27:52 | 1 | MR. WALLER: I have to object to that. |
| 10:27:54 | 2 | That's really commercial information. That's |
| 10:27:59 | 3 | privileged information. |
| 10:27:59 | 4 | BY MS. LIEBERMAN: |
| 10:28:18 | 5 | Q Has anyone at The Whitaker Group |
| 10:28:22 | 6 | specifically instructed that information relating to |
| 10:28:27 | 7 | the Scholarship Program be destroyed? |
| 10:28:31 | 8 | A No. |
| 10:28:33 | 9 | Q Has anyone at The Whitaker Group |
| 10:28:35 | 10 | specifically instructed that documents relating to the |
| 10:28:38 | 11 | Scholarship Program be retained? |
| 10:28:41 | 12 | A When you say "retained," what do you mean? |
| 10:28:45 | 13 | Q I mean kept. |
| 10:28:46 | 14 | A You mean copies for the files? |
| 10:28:48 | 15 | Q Just kept. |
| 10:28:49 | 16 | A Yes. |
| 10:28:50 | 17 | Q Who gave that instruction? |
| 10:28:51 | 18 | A I did. |
| 10:28:54 | 19 | Q You do? |
| 10:28:54 | 20 | A Yes. |
| 10:28:55 | 21 | Q And who did you give that instruction to? |
| 10:28:58 | 22 | A I didn't give it to anyone. I keep the |

Page 21

| 10:29:01 | 1 | records for the Scholarship Program. |
| 10:29:03 | 2 | Q And where do you keep those records? |
| 10:29:05 | 3 | A On site. |
| 10:29:07 | 4 | Q On site? And how long have you kept records |
| 10:29:11 | 5 | of the Scholarship Program? |
| 10:29:17 | 6 | A I mean since I've -- I can't give you a |
| 10:29:21 | 7 | date. I don't know what you're looking for. |
| 10:29:25 | 8 | Q Just generally, how long have you kept |
| 10:29:29 | 9 | records of the Scholarship Program? |
| 10:29:36 | 10 | A Since I've been working with the Scholarship |
| 10:29:37 | 11 | Program. |
| 10:29:39 | 12 | Q And when did you start working for the |
| 10:29:41 | 13 | Scholarship Program? |
| 10:29:42 | 14 | A I would have to go back and check my |
| 10:29:43 | 15 | records. I mean I don't know if it was 2003, '4, or, |
| 10:29:47 | 16 | you know, what year it was. I would have to check. |
| 10:29:49 | 17 | Q Could it have been prior to 2003? |
| 10:29:54 | 18 | A No. |
| 10:29:56 | 19 | Q So sometime in 2003? |
| 10:29:58 | 20 | A I don't know. I would have to check my |
| 10:29:59 | 21 | records. Again I can't say if it was 2003 or '4. |
| 10:30:14 | 22 | Q Okay. So to your knowledge, have any |

6 (Pages 18 to 21)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 22

| | | |
|---|---|---|
| 10:30:17 | 1 | documents relating to the Scholarship Program been |
| 10:30:21 | 2 | destroyed? |
| 10:30:22 | 3 | A  To my knowledge, no. |
| 10:30:29 | 4 | Q  To your knowledge, have any of the documents |
| 10:30:31 | 5 | relating to the Scholarship Program been lost? |
| 10:30:34 | 6 | A  To my knowledge, no. |
| 10:30:40 | 7 | Q  Does The Whitaker Group have a bookkeeper? |
| 10:30:48 | 8 | A  Again I'm not going to answer that question, |
| 10:30:50 | 9 | because it does not speak specifically to the |
| 10:30:53 | 10 | Scholarship Program. |
| 10:30:55 | 11 | Q  Does The Whitaker Group have an accountant? |
| 10:31:00 | 12 | A  Again it's the same answer I gave before.  I |
| 10:31:03 | 13 | will respond to questions as they relate to the |
| 10:31:05 | 14 | Scholarship Program.  Anything outside of the |
| 10:31:08 | 15 | Scholarship Program I will not answer, so therefore I |
| 10:31:11 | 16 | will not answer that question. |
| 10:31:17 | 17 | Q  Who at The Whitaker Group has the authority |
| 10:31:19 | 18 | to write checks on behalf of the company? |
| 10:31:21 | 19 | A  Again I will not respond to that question, |
| 10:31:23 | 20 | for the same – for the aforementioned reason. |
| 10:31:28 | 21 | Q  Who at The Whitaker Group has the authority |
| 10:31:30 | 22 | to write checks relating to the Scholarship Program of |

Page 23

| | | |
|---|---|---|
| 10:31:33 | 1 | the company? |
| 10:31:35 | 2 | A  For the Scholarship Program I can write |
| 10:31:38 | 3 | checks. |
| 10:31:38 | 4 | Q  Can anyone else write checks? |
| 10:31:45 | 5 | A  There is one other person who has signature |
| 10:31:47 | 6 | authority; however, for the Scholarship Program I'm |
| 10:31:52 | 7 | the only person that have written checks. |
| 10:31:55 | 8 | Q  Has Rosa Whitaker ever written checks for |
| 10:32:02 | 9 | the scholarship -- |
| 10:32:03 | 10 | A  For the Scholarship Program? |
| 10:32:04 | 11 | Q  Right. |
| 10:32:05 | 12 | A  No. |
| 10:32:14 | 13 | Q  Is there an account at The Whitaker Group |
| 10:32:18 | 14 | that's relating to the Scholarship Program? |
| 10:32:22 | 15 | A  Is there an account, a separate account?  If |
| 10:32:26 | 16 | you're talking about me describing the structure for |
| 10:32:28 | 17 | The Whitaker Group's financial accounting, I'm not |
| 10:32:31 | 18 | going to respond to that. |
| 10:32:33 | 19 | Q  Okay, I'll repeat the question.  Is there an |
| 10:32:35 | 20 | account for the Scholarship Program at The Whitaker |
| 10:32:39 | 21 | Group? |
| 10:32:41 | 22 | A  Again in my mind it sounds like you're |

Page 24

| | | |
|---|---|---|
| 10:32:45 | 1 | asking for the structure at The Whitaker Group as |
| 10:32:47 | 2 | relates to our accounting structure, and I'm not going |
| 10:32:52 | 3 | to answer that question. |
| 10:33:14 | 4 | Q  Which account at The Whitaker Group is used |
| 10:33:18 | 5 | to write checks for the Scholarship Program? |
| 10:33:21 | 6 | A  Again if you want me to respond to the |
| 10:33:24 | 7 | accounting system for The Whitaker Group, I'm not |
| 10:33:28 | 8 | going to answer that question. |
| 10:33:31 | 9 | Q  I'm asking as it relates to the Scholarship |
| 10:33:34 | 10 | Program. |
| 10:33:35 | 11 | A  In order to answer that question, again I |
| 10:33:37 | 12 | would have to describe the accounting system that we |
| 10:33:40 | 13 | have at The Whitaker Group. |
| 10:33:48 | 14 | Q  Okay. |
| 10:33:51 | 15 | A  And also we sent copies of the information |
| 10:33:53 | 16 | to your office as relates to a check written for the |
| 10:33:57 | 17 | Scholarship Program, which you should have in your |
| 10:34:05 | 18 | files. |
| 10:34:08 | 19 | Q  Okay.  Who is Rosa Whitaker in relation to |
| 10:34:22 | 20 | The Whitaker Group? |
| 10:34:24 | 21 | A  If you want general information on the |
| 10:34:26 | 22 | company, again I can give you a brochure.  I did not |

Page 25

| | | |
|---|---|---|
| 10:34:30 | 1 | bring one with me today.  I will answer questions as |
| 10:34:33 | 2 | they relate to the Scholarship Program. |
| 10:34:36 | 3 | Q  Is Rosa Whitaker involved at all with the |
| 10:34:38 | 4 | Scholarship Program? |
| 10:34:44 | 5 | A  I don't know what you mean.  Are you talking |
| 10:34:46 | 6 | about management of the program or what? |
| 10:34:50 | 7 | Q  Let's start with management of the program. |
| 10:34:51 | 8 | Does Rosa Whitaker manage the Scholarship Program? |
| 10:34:54 | 9 | A  No. |
| 10:34:54 | 10 | Q  What role, if any, does Rosa have with the |
| 10:35:00 | 11 | Scholarship Program? |
| 10:35:08 | 12 | MS. LIEBERMAN:  Let the record reflect that |
| 10:35:09 | 13 | the witness and counsel are conferring at this time. |
| 10:35:19 | 14 | THE WITNESS:  Rosa Whitaker, just like |
| 10:35:22 | 15 | myself, you know, can make recommendations for who can |
| 10:35:30 | 16 | participate in the program, and other people can make |
| 10:35:34 | 17 | recommendations for who should participate in the |
| 10:35:37 | 18 | program. |
| 10:35:37 | 19 | BY MS. LIEBERMAN: |
| 10:35:37 | 20 | Q  Which other people can make |
| 10:35:40 | 21 | recommendations -- |
| 10:35:40 | 22 | A  I can. |

7 (Pages 22 to 25)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 26

| 10:35:41 | 1 | Q  -- for people to participate in the |
| 10:35:44 | 2 | Scholarship Program? |
| 10:35:45 | 3 | A  People send me recommendations with stuff |
| 10:35:48 | 4 | about a son or daughter.  Anybody can pretty much make |
| 10:35:51 | 5 | a recommendation to me as relates to the Scholarship |
| 10:35:52 | 6 | Program. |
| 10:35:54 | 7 | Q  Okay, and Ms. Williams, just for the clarity |
| 10:35:56 | 8 | of the record, just try to wait until I'm finished, |
| 10:36:00 | 9 | and then I'll also try to wait until you're finished. |
| 10:36:04 | 10 | A  Okay. |
| 10:36:05 | 11 | Q  Are there any other employees at The |
| 10:36:06 | 12 | Whitaker Group that can make recommendations relating |
| 10:36:13 | 13 | to the Scholarship Program? |
| 10:36:14 | 14 | A  I can.  I can also make them. |
| 10:36:18 | 15 | Q  Other than you and Rosa, does anyone else at |
| 10:36:22 | 16 | The Whitaker Group have a role in the Scholarship |
| 10:36:25 | 17 | Program? |
| 10:36:26 | 18 | A  There are other -- that have a role in the |
| 10:36:29 | 19 | Scholarship Program?  No.  I'm probably the person |
| 10:36:33 | 20 | that has the major role for the Scholarship Program. |
| 10:36:39 | 21 | Q  And do you have an assistant? |
| 10:36:42 | 22 | A  Again I'm not going to get into the |

Page 27

| 10:36:43 | 1 | structure of The Whitaker Group itself. |
| 10:36:49 | 2 | Q  Do you have someone at The Whitaker Group |
| 10:36:51 | 3 | that assists you in the Scholarship Program? |
| 10:36:54 | 4 | A  No, I don't. |
| 10:37:13 | 5 | Q  What other -- other than making |
| 10:37:16 | 6 | recommendations, does Rosa have any other role with |
| 10:37:20 | 7 | the Scholarship Program? |
| 10:37:24 | 8 | A  No.  She has no management role at all. |
| 10:37:27 | 9 | Q  Okay.  Is there any other role that she has? |
| 10:37:30 | 10 | A  None that I can think of. |
| 10:38:22 | 11 | Q  Why did The Whitaker Group decide to start |
| 10:38:24 | 12 | the Scholarship Program? |
| 10:38:27 | 13 | A  I think that was one of the responses we |
| 10:38:30 | 14 | submitted to your office, and are you asking |
| 10:38:37 | 15 | information about The Whitaker Group or the |
| 10:38:39 | 16 | Scholarship Program? |
| 10:38:42 | 17 | Q  I'm asking about why The Whitaker Group |
| 10:38:45 | 18 | decided to start the Scholarship Program. |
| 10:38:47 | 19 | A  Okay.  If the question concerns The Whitaker |
| 10:38:48 | 20 | Group, I'm not going to respond to that in terms of |
| 10:38:51 | 21 | the intentions or anything like that of The Whitaker |
| 10:38:54 | 22 | Group. |

Page 28

| 10:38:56 | 1 | Q  Okay.  Well, the question pertains to the |
| 10:38:58 | 2 | Scholarship Program, why was it generated. |
| 10:39:02 | 3 | A  But what you're asking is the intent of The |
| 10:39:04 | 4 | Whitaker Group, you know, why the program was set up, |
| 10:39:08 | 5 | that kind of thing, and I'm not going to respond to |
| 10:39:11 | 6 | that. |
| 10:39:19 | 7 | Q  I'm going to show you a document now. |
| 10:39:22 | 8 | MS. LIEBERMAN:  And Laurie, if you could |
| 10:39:22 | 9 | please mark this as Exhibit 3. |
| 10:39:54 | 10 | (Exhibit No. 3 was marked for identification |
| 10:39:54 | 11 | and attached to the deposition transcript.) |
| 10:39:55 | 12 | BY MS. LIEBERMAN: |
| 10:40:07 | 13 | Q  And if you could just take a moment to |
| 10:40:10 | 14 | review the document and let me know when you're done. |
| 10:40:14 | 15 | A  Uh-huh, okay. |
| 10:40:31 | 16 | Q  Do you recognize this document? |
| 10:40:32 | 17 | A  Yes. |
| 10:40:33 | 18 | Q  And what is this? |
| 10:40:34 | 19 | A  It's a description of the Scholarship |
| 10:40:36 | 20 | Program. |
| 10:40:38 | 21 | Q  Okay.  Did you draft this document? |
| 10:40:40 | 22 | A  Yes. |

Page 29

| 10:40:42 | 1 | Q  When did you draft this document? |
| 10:40:48 | 2 | A  Either 2003 or '4.  I can't remember. |
| 10:40:52 | 3 | Q  Why did you decide to draft this document? |
| 10:40:59 | 4 | A  To set up the Scholarship Program. |
| 10:41:01 | 5 | Q  Who received a copy of this document? |
| 10:41:06 | 6 | A  When you say "who received a copy," I'm |
| 10:41:07 | 7 | not -- I'm confused. |
| 10:41:09 | 8 | Q  Did you send this document to anyone or give |
| 10:41:12 | 9 | it to anyone? |
| 10:41:20 | 10 | A  We keep copies on file.  I can't recall who |
| 10:41:25 | 11 | may have gotten a copy of it. |
| 10:41:28 | 12 | Q  Do you recall that you ever gave this |
| 10:41:32 | 13 | document to anyone? |
| 10:41:38 | 14 | A  It's been so long ago.  I shared a copy with |
| 10:41:43 | 15 | your office through our attorney.  Probably other |
| 10:41:52 | 16 | people at -- I'm trying to think back to 2003 and '4. |
| 10:41:59 | 17 | I really can't -- I mean I really can't remember who |
| 10:42:02 | 18 | would have gotten a copy of this document. |
| 10:42:06 | 19 | Q  Is it possible that you created this |
| 10:42:07 | 20 | document in 2005? |
| 10:42:15 | 21 | A  No.  I'm pretty sure it was before then, but |
| 10:42:24 | 22 | again I would have to check my records.  I'm pretty |

8  (Pages 26 to 29)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

| Page 58 | Page 60 |
|---|---|

**Page 58**

11:40:43  1    In connection with Victor's scholarship, did

11:40:47  2  The Whitaker Group provide any funds for any of these

11:40:52  3  categories?

11:40:55  4    A  He could have used funding for any of these

11:40:57  5  categories.

11:40:59  6    Q  Was any of the Whitaker Group's funding

11:41:01  7  designated specifically for one of those categories?

11:41:04  8    A  You talking about the Scholarship Program

11:41:06  9  funds under The Whitaker Group?

11:41:08  10    Q  Yes.

11:41:09  11    A  Just want to make sure we're clear.

11:41:11  12    Q  That's fine.

11:41:12  13    A  Okay.  Ask your question again.  I'm sorry.

11:41:15  14    MS. LIEBERMAN:  If you could please read the

11:41:17  15  question.

11:41:24  16    (Whereupon, reporter reads requested

11:41:24  17  material.)

11:41:25  18    THE WITNESS:  For any one of these

11:41:26  19  categories?  No, he could have used funding for any of

11:41:29  20  these categories.

12:46:28  21  BY MS. LIEBERMAN:

11:41:31  22    Q  Did he request funding specifically for any

**Page 59**

11:41:33  1  of those categories?

11:41:34  2    A  Not specifically for any one category.

11:41:37  3    Q  Did he request assistance in securing a

11:41:41  4  visa?

11:41:41  5    A  Not that I know of.

11:41:44  6    Q  Did he --

11:41:45  7    A  If you look at the e-mail -- you should

11:41:47  8  refer back to the e-mail, and you'll see he was

11:41:49  9  already a student here.

11:41:50  10    Q  So The Whitaker Group did not assist him

11:41:53  11  with admissions?

11:41:54  12    A  No, not under our Scholarship Program, no.

11:41:58  13    Q  Did The Whitaker Group assist him with

11:42:01  14  health insurance?

11:42:03  15    A  Not under our Scholarship Program, no.

11:42:06  16    Q  Did they assist him -- did The Whitaker

11:42:08  17  Group assist him with room and board?

11:42:10  18    A  For room and board or tuition or any of

11:42:14  19  those costs affiliated with colleges, I have no way of

11:42:19  20  knowing.  I can't say for sure.  He could have used

11:42:21  21  the funds for any of these things that are listed

11:42:24  22  here.

**Page 60**

11:42:27  1    Q  And did Victor fill out any forms related to

11:42:30  2  the Scholarship Program?

11:42:31  3    A  No.  We don't have an application per se.

11:42:42  4    Q  Did Victor have a financial sponsor other

11:42:46  5  than -- let me rephrase.  Did he have a financial

11:42:51  6  sponsor in relation to the Whitaker Group Scholarship

11:42:53  7  Program?

11:42:54  8    A  I'm confused with that question.

11:42:56  9    Q  By which part of it are you confused?

11:42:59  10    A  If you can clarify what you mean by

11:43:03  11  "financial sponsor."

11:43:05  12    Q  Was there a person under The Whitaker Group

11:43:10  13  Scholarship Program that gave Victor additional funds?

11:43:17  14    A  Not that I'm aware of.

11:43:26  15    Q  Do you know how many -- is this the only

11:43:31  16  time -- let me rephrase.  Is this the only time that

11:43:35  17  Victor requested funds from The Whitaker Group?

11:43:38  18    A  It's the only documentation that I saw where

11:43:41  19  he requested funds from The Whitaker Group Scholarship

11:43:46  20  Program.

11:43:50  21    Q  Did The Whitaker Group give Victor funds

11:43:53  22  more than one time?

**Page 61**

11:44:00  1    A  I'm pretty certain this is the only time

11:44:04  2  that he was given funds under the Scholarship Program.

11:44:23  3    Q  Now I'm going to turn to Idah Zirintusa's

11:44:27  4  scholarship.  How -- did Idah Zirintusa receive a

11:44:59  5  scholarship from The Whitaker Group?

11:45:00  6    A  Yes.

11:45:01  7    Q  When did Idah receive the scholarship?

11:45:08  8    A  Again I have no copies of anything in front

11:45:10  9  of me, so I would have to check.  The information

11:45:16  10  probably that I sent to you, the same information that

11:45:18  11  I sent forward to you that kind of, you know, explains

11:45:23  12  or looks at that issue.

11:45:26  13    Q  How did The Whitaker Group learn about Idah?

11:45:31  14    A  Okay.  Again are you asking about The

11:45:32  15  Whitaker Group, the company?

11:45:35  16    Q  Yes.

11:45:36  17    A  Okay.  I'm not going to -- I cannot answer

11:45:38  18  any questions as relates to The Whitaker Group.

11:45:43  19    Q  Okay.  How did you first learn about Idah?

11:45:48  20    A  As related to the Scholarship Program?

11:45:58  21    Q  No, just how did you -- generally how did

11:46:01  22  you first learn about Idah?

16 (Pages 58 to 61)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 62

| | | |
|---|---|---|
| 11:46:03 | 1 | A   Again if it pertains to the Scholarship |
| 11:46:05 | 2 | Program, I will answer that information for you. |
| 11:46:09 | 3 | Q   Okay, and what is the basis for not |
| 11:46:10 | 4 | answering the question that I just posed? |
| 11:46:13 | 5 | A   As I stated when we first started, I would |
| 11:46:17 | 6 | respond to issues and questions surrounding the |
| 11:46:21 | 7 | Scholarship Program. |
| 11:46:27 | 8 | Q   How did you first learn about Idah in |
| 11:46:29 | 9 | connection with the Scholarship Program? |
| 11:46:32 | 10 | A   I started actually to receive e-mails and |
| 11:46:35 | 11 | stuff, which I think I provided to your office. I |
| 11:46:38 | 12 | don't have that information, so I can't say, you know, |
| 11:46:43 | 13 | what's in the e-mails and the dates and those kinds of |
| 11:46:45 | 14 | things. |
| 11:46:47 | 15 | Q   Okay.  To the best of your memory, when did |
| 11:46:50 | 16 | you first receive those e-mails? |
| 11:46:58 | 17 | A   In 2004. |
| 11:47:07 | 18 | Q   And who sent the e-mails?  Who were the |
| 11:47:11 | 19 | e-mails from? |
| 11:47:11 | 20 | A   The e-mails that I received as relates to |
| 11:47:14 | 21 | the Scholarship Program came from Idah via someone in |
| 11:47:21 | 22 | her family. |

Page 63

| | | |
|---|---|---|
| 11:47:24 | 1 | Q   And other than these e-mails, were there any |
| 11:47:29 | 2 | other communications that you had with Idah about the |
| 11:47:36 | 3 | Scholarship Program? |
| 11:47:47 | 4 | A   The e-mails that I received had to do with |
| 11:47:49 | 5 | her attending Montgomery College. |
| 11:47:58 | 6 | Q   Okay, and -- |
| 11:47:59 | 7 | A   So let me go back for a second.  If you're |
| 11:48:02 | 8 | asking for correspondence as relates specifically to |
| 11:48:04 | 9 | the Scholarship Program, that information was later -- |
| 11:48:09 | 10 | I started getting information initially on Idah |
| 11:48:12 | 11 | attending college. |
| 11:48:14 | 12 | Q   Okay, and why did -- sorry.  Let me |
| 11:48:19 | 13 | rephrase.  So the first e-mails were not about the |
| 11:48:31 | 14 | Scholarship Program? |
| 11:48:32 | 15 | A   No.  That came later. |
| 11:48:35 | 16 | Q   When did you first discuss the scholarship |
| 11:48:38 | 17 | with Idah? |
| 11:48:40 | 18 | A   When did I first discuss it with Idah?  I |
| 11:48:45 | 19 | would have to go back and look at my records.  I can't |
| 11:48:47 | 20 | remember. |
| 11:48:48 | 21 | Q   Can you give me a general month. |
| 11:48:50 | 22 | A   I'm going to say 2004. |

Page 64

| | | |
|---|---|---|
| 11:48:54 | 1 | Q   Was it in the summer? |
| 11:48:59 | 2 | A   I don't know.  I really don't know. |
| 11:49:10 | 3 | Q   Did you have any discussions with Rosa |
| 11:49:12 | 4 | Whitaker about Idah's attendance at Montgomery |
| 11:49:17 | 5 | College? |
| 11:49:20 | 6 | A   I had a discussion with Rosa Whitaker as |
| 11:49:23 | 7 | related to Idah Zirintusa attending Montgomery |
| 11:49:27 | 8 | College, yes. |
| 11:49:28 | 9 | Q   And when was that? |
| 11:49:30 | 10 | A   I would have to look at my records.  I don't |
| 11:49:31 | 11 | know. |
| 11:49:32 | 12 | Q   Was this before Idah came to the United |
| 11:49:35 | 13 | States? |
| 11:49:36 | 14 | A   Yes. |
| 11:49:38 | 15 | Q   And what did Ms. Whitaker say? |
| 11:49:43 | 16 | A   You know, I would not like to try to |
| 11:49:45 | 17 | remember conversations from three years ago.  To |
| 11:49:54 | 18 | summarize what the discussion was about, it had to do |
| 11:49:58 | 19 | with her knowing of someone interested in attending |
| 11:50:01 | 20 | Montgomery College and us talking about using |
| 11:50:10 | 21 | scholarship funds for Idah to attend school. |
| 11:50:15 | 22 | Q   And what did Ms. Whitaker say about Idah? |

Page 65

| | | |
|---|---|---|
| 11:50:21 | 1 | A   As related to the Scholarship Program? |
| 11:50:30 | 2 | Q   Yes. |
| 11:50:30 | 3 | A   Basically what I just stated before, that |
| 11:50:34 | 4 | she was interested in attending Montgomery College as |
| 11:50:39 | 5 | a student here in the U.S. |
| 11:50:41 | 6 | Q   And did she say anything else about Idah not |
| 11:50:46 | 7 | in relation to the Scholarship Program? |
| 11:50:48 | 8 | A   I can't answer anything that's not related |
| 11:50:51 | 9 | to the Scholarship Program. |
| 11:50:55 | 10 | MR. WALLER:  I want to object to that |
| 11:50:56 | 11 | question. |
| 11:50:57 | 12 | MS. LIEBERMAN:  And what's the basis of the |
| 11:50:59 | 13 | objection? |
| 11:51:00 | 14 | MR. WALLER:  Well, you're asking her to |
| 11:51:02 | 15 | basically articulate a conversation that in my opinion |
| 11:51:07 | 16 | happened three years ago.  She really doesn't have the |
| 11:51:10 | 17 | basis upon which she can recall what happened during |
| 11:51:14 | 18 | that time frame, so it would be very difficult for her |
| 11:51:16 | 19 | to give any correct answer about what transpired over |
| 11:51:20 | 20 | three years ago. |
| 11:51:21 | 21 | MS. LIEBERMAN:  I understand, counsel.  Your |
| 11:51:24 | 22 | objections under the Federal Rules are supposed to be |

17  (Pages 62 to 65)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 66

| | |
|---|---|
| 11:51:26 | 1 confined to objections to form and not objections to |
| 11:51:29 | 2 substance of the question, so if you'd like me to |
| 11:51:32 | 3 rephrase because it's a compound question, I can do |
| 11:51:35 | 4 that. |
| 11:51:35 | 5 MR. WALLER: You know, I would appreciate |
| 11:51:36 | 6 it, yeah, rephrase the question, yeah. |
| 11:51:39 | 7 MS. LIEBERMAN: So that your objection is to |
| 11:51:41 | 8 form? |
| 11:51:41 | 9 MR. WALLER: To form. Go ahead. Rephrase |
| 11:51:44 | 10 the question. |
| 11:51:44 | 11 BY MS. LIEBERMAN: |
| 11:51:49 | 12 Q Please describe any discussions you had with |
| 11:51:53 | 13 Rosa Whitaker about Idah Zirintusa before Idah came to |
| 11:51:58 | 14 the United States. |
| 11:51:59 | 15 A From 2004? |
| 11:52:03 | 16 Q My question is not limited to time. |
| 11:52:06 | 17 A Okay. Again, as I recall, the discussions |
| 11:52:10 | 18 that I had with her was her indicating that there was |
| 11:52:14 | 19 a student interested or there was a person interested |
| 11:52:18 | 20 in becoming a student here in the U.S. and interested |
| 11:52:22 | 21 in attending college here. |
| 11:52:25 | 22 Q Did Ms. Whitaker tell you how she met Idah? |

Page 67

| | |
|---|---|
| 11:52:35 | 1 A Is this related to the Scholarship Program? |
| 11:52:38 | 2 Again I'm not going to answer any questions that don't |
| 11:52:41 | 3 tie directly to the Scholarship Program. |
| 11:52:44 | 4 Q The question is not related to the |
| 11:52:46 | 5 Scholarship Program. |
| 11:52:47 | 6 A Okay. Then I don't plan to answer. |
| 11:52:49 | 7 Q And again I'll just ask the basis for not |
| 11:52:52 | 8 answering. |
| 11:52:53 | 9 A Because it's not tied to the Scholarship |
| 11:52:54 | 10 Program. |
| 11:53:14 | 11 Q Did Rosa recommend that Idah receive the |
| 11:53:18 | 12 scholarship? |
| 11:53:20 | 13 A I believe that she did, but again this has |
| 11:53:23 | 14 been three years ago. |
| 11:53:30 | 15 Q So it's possible that she didn't? |
| 11:53:37 | 16 A Again it's been three years ago, you know. |
| 11:53:39 | 17 I believe that she did. |
| 11:53:41 | 18 Q And when would she have made that |
| 11:53:44 | 19 recommendation? |
| 11:53:50 | 20 A Had to be way prior to Idah even coming to |
| 11:53:55 | 21 the U.S. and prior to us -- when I say "us," I'm |
| 11:54:00 | 22 talking about The Whitaker Group Scholarship |

Page 68

| | |
|---|---|
| 11:54:02 | 1 Program -- working with her to do anything so that she |
| 11:54:07 | 2 could become a student. It would have to have been |
| 11:54:10 | 3 prior to that. |
| 11:54:11 | 4 Q And why did Rosa recommend Idah? |
| 11:54:14 | 5 A I can't respond to that. |
| 11:54:16 | 6 Q And what's the basis of your refusal to |
| 11:54:18 | 7 respond? |
| 11:54:18 | 8 A Because I don't know. I think that's a |
| 11:54:21 | 9 question better suited for Ms. Whitaker. |
| 11:54:23 | 10 Q Okay. Well, you did testify earlier that |
| 11:54:25 | 11 you are on the Scholarship Committee? |
| 11:54:30 | 12 A That's correct. |
| 11:54:35 | 13 Q And did you testify that one of your duties |
| 11:54:38 | 14 is to make recommendations for who receives the |
| 11:54:42 | 15 scholarship? |
| 11:54:43 | 16 A I can make recommendations, yes. |
| 11:54:45 | 17 Q And does Rosa also make recommendations? |
| 11:54:48 | 18 A She can make recommendations, yes. |
| 11:54:50 | 19 Q And are those recommendations communicated |
| 11:54:52 | 20 to you? |
| 11:54:53 | 21 A Yes. |
| 11:54:54 | 22 Q Okay. So what, if anything, did Rosa say to |

Page 69

| | |
|---|---|
| 11:54:58 | 1 you as to why Idah should get a scholarship? |
| 11:55:02 | 2 A Again we're talking about, you know, three |
| 11:55:05 | 3 years ago. I can't recall every conversation that I |
| 11:55:08 | 4 had with Ms. Whitaker from that far back. |
| 11:55:14 | 5 Q Did you also recommend that Idah get a |
| 11:55:17 | 6 scholarship? |
| 11:55:21 | 7 A Normally you only -- a recommendation is |
| 11:55:25 | 8 only required from one person. |
| 11:55:27 | 9 Q Did you think Idah should get a scholarship? |
| 11:55:32 | 10 A I can in all fairness say I did not think |
| 11:55:38 | 11 she should or should not get a scholarship. |
| 11:56:00 | 12 Q When did you first meet Idah? |
| 11:56:08 | 13 A Idah came here as a scholarship student in |
| 11:56:13 | 14 2004. You talking about physically met her? |
| 11:56:19 | 15 Q Yes. |
| 11:56:20 | 16 A Okay, physically met her in 2004. |
| 11:56:25 | 17 Q Do you remember what month? |
| 11:56:29 | 18 A You know what? I sent that information to |
| 11:56:32 | 19 your office, and I don't have copies of it with me. |
| 11:56:44 | 20 (Discussion was held off the record.) |
| 05:59:57 | 21 BY MS. LIEBERMAN: |
| 11:56:59 | 22 Q Okay, I'm going to repeat my prior question. |

18 (Pages 66 to 69)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 70

| | | |
|---|---|---|
| 11:57:02 | 1 | Do you remember what month Idah came to the United |
| 11:57:06 | 2 | States? Actually, I don't think that was my question. |
| 11:57:12 | 3 | It was: Do you remember when you met Idah in 2004? |
| 11:57:15 | 4 | A Okay, physically met her in person? |
| 11:57:17 | 5 | Q Yes. |
| 11:57:18 | 6 | A It was in 2004 and it was prior to classes |
| 11:57:22 | 7 | starting, and as far as a date, I can't -- I don't |
| 11:57:28 | 8 | know. I would have to check. |
| 11:57:31 | 9 | Q Had you had any conversations with Idah |
| 11:57:34 | 10 | prior to the time that you physically met her? |
| 11:57:41 | 11 | A Prior to her coming to the U.S.? Yes. |
| 11:57:51 | 12 | Q How many times did you speak with her? |
| 11:57:53 | 13 | A I have no idea. |
| 11:57:54 | 14 | Q Was it over e-mail? |
| 11:57:58 | 15 | A There was some e-mails and there was some |
| 11:58:01 | 16 | phone calls. |
| 11:58:05 | 17 | Q Okay. What did you discuss with Idah? |
| 11:58:08 | 18 | A My discussions with Idah -- and this again |
| 11:58:12 | 19 | is as it relates to the Scholarship Program -- |
| 11:58:13 | 20 | basically had to do with her attending school at |
| 11:58:19 | 21 | Montgomery College. |
| 11:58:20 | 22 | Q So did you have discussions with Idah other |

Page 71

| | | |
|---|---|---|
| 11:58:22 | 1 | than what was relating to the Scholarship Program? |
| 11:58:33 | 2 | A Yes. |
| 11:58:33 | 3 | Q Okay, and first what did you discuss with |
| 11:58:42 | 4 | Idah in relation to the Scholarship Program? What did |
| 11:58:48 | 5 | you tell her? |
| 11:58:50 | 6 | A The things that I indicated to Idah had to |
| 11:58:54 | 7 | do with her attendance at Montgomery College. There |
| 11:59:03 | 8 | was information provided as it related to start dates, |
| 11:59:06 | 9 | orientation, testing, you know, that kind of stuff. |
| 11:59:16 | 10 | Q Did Idah tell you why she wanted to come to |
| 11:59:19 | 11 | the United States? |
| 11:59:25 | 12 | A She indicated to me -- and I can't remember |
| 11:59:28 | 13 | specific conversations -- that she was interested in |
| 11:59:32 | 14 | getting a U.S. education. |
| 11:59:35 | 15 | Q And did she tell you what her interest was? |
| 11:59:41 | 16 | A In terms of field of study? |
| 11:59:44 | 17 | Q Okay, in terms of field of study. |
| 11:59:47 | 18 | A She may have, and I can't recall right now. |
| 11:59:56 | 19 | Q Did she tell you that she wanted to work in |
| 11:59:58 | 20 | the United States? |
| 12:00:00 | 21 | A That she wanted to work in the United |
| 12:00:04 | 22 | States? No. |

Page 72

| | | |
|---|---|---|
| 12:00:06 | 1 | Q Did you have any discussions with Idah about |
| 12:00:09 | 2 | her working in the United States? |
| 12:00:11 | 3 | A I did have a conversation with Idah and |
| 12:00:17 | 4 | indicated to her that because she was here on a |
| 12:00:21 | 5 | student visa, she would not be able to work. |
| 12:00:26 | 6 | Q And what did she say? |
| 12:00:29 | 7 | A She just kind of shrugged. |
| 12:00:32 | 8 | Q Was this conversation on the phone? |
| 12:00:43 | 9 | A I can't remember. I don't know for sure. |
| 12:00:45 | 10 | Q Was this conversation before she came to the |
| 12:00:48 | 11 | United States? |
| 12:00:58 | 12 | A I would have to -- I can't remember. I mean |
| 12:00:59 | 13 | if it was before she came, it would have been via |
| 12:01:02 | 14 | telephone. I know we had a conversation once she was |
| 12:01:09 | 15 | here. |
| 12:01:11 | 16 | Q So you did have a conversation, once she was |
| 12:01:14 | 17 | here, about working? |
| 12:01:16 | 18 | A The fact that she was here as a student and |
| 12:01:18 | 19 | could not work. |
| 12:01:19 | 20 | Q Did you have any other conversations while |
| 12:01:21 | 21 | she was here, while Idah was here, about her working? |
| 12:01:28 | 22 | A That's, that's the one that I recall. |

Page 73

| | | |
|---|---|---|
| 12:01:30 | 1 | Q Okay, so only one conversation? |
| 12:01:32 | 2 | A And I don't know if it was once or more than |
| 12:01:34 | 3 | once and stuff, because I can't remember the entire |
| 12:01:37 | 4 | conversation, but yeah, I remember, you know, |
| 12:01:42 | 5 | indicating that she was here on a student visa, and |
| 12:01:47 | 6 | she was not eligible to work. |
| 12:01:57 | 7 | Q Did you ever speak with Rosa Whitaker about |
| 12:02:00 | 8 | how she met Idah? |
| 12:02:05 | 9 | A Again if it's not to do with the Scholarship |
| 12:02:06 | 10 | Program, you know, I'm not going to answer anything |
| 12:02:11 | 11 | that's not related to the Scholarship Program. |
| 12:02:19 | 12 | Q Did you ever speak with Rosa Whitaker about |
| 12:02:21 | 13 | Idah arriving? |
| 12:02:24 | 14 | A Again if it's not related to the Scholarship |
| 12:02:28 | 15 | Program, I'm not going to answer any of those |
| 12:02:32 | 16 | questions. |
| 12:02:59 | 17 | Q Is it fair to say that the ultimate decision |
| 12:03:00 | 18 | on whether or not to give Idah a scholarship rested |
| 12:03:06 | 19 | with Rosa? |
| 12:03:10 | 20 | A Can you explain that further. When you say |
| 12:03:13 | 21 | "ultimate" -- |
| 12:03:16 | 22 | Q Did Rosa make the final decision about |

19 (Pages 70 to 73)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 78

| | | |
|---|---|---|
| 12:08:36 | 1 | Q   Had The Whitaker Group ever brought any |
| 12:08:39 | 2 | African student over to the United States other than |
| 12:08:43 | 3 | Idah? |
| 12:08:44 | 4 | A   For a scholarship or to attend school? |
| 12:08:48 | 5 | Q   Yes. |
| 12:08:49 | 6 | A   Not that I recall. |
| 12:08:50 | 7 | Q   Has The Whitaker Group ever brought any -- |
| 12:08:53 | 8 | assisted in bringing anyone -- I'm sorry.  I'm going |
| 12:08:57 | 9 | to rephrase that.  I'm not going to ask that question. |
| 12:09:25 | 10 | Did you ever communicate to Idah that the |
| 12:09:30 | 11 | scholarship assistance would be for two years? |
| 12:09:42 | 12 | A   I don't recall having that conversation with |
| 12:09:44 | 13 | her, that the scholarship assistance would be for two |
| 12:09:48 | 14 | years. |
| 12:09:52 | 15 | Q   Did you ever inform Idah how much money she |
| 12:09:55 | 16 | would receive? |
| 12:09:58 | 17 | A   From the Scholarship Program? |
| 12:10:00 | 18 | Q   From the Scholarship Program. |
| 12:10:10 | 19 | A   No, because there was never a dollar amount |
| 12:10:12 | 20 | associated with the funding that we would provide.  We |
| 12:10:19 | 21 | will provide support for her to attend Montgomery |
| 12:10:22 | 22 | College. |

Page 79

| | | |
|---|---|---|
| 12:10:29 | 1 | Q   What did you tell Idah about the Scholarship |
| 12:10:31 | 2 | Program? |
| 12:10:38 | 3 | A   Again this is going back to 2004, and I |
| 12:10:43 | 4 | can't remember everything that might have been told to |
| 12:10:45 | 5 | her.  I'm pretty sure I indicated that her tuition |
| 12:10:51 | 6 | would be paid. |
| 12:11:04 | 7 | Q   And did you tell Idah for how long The |
| 12:11:07 | 8 | Whitaker Group would pay her tuition? |
| 12:11:12 | 9 | A   Did I specifically say it would be for two |
| 12:11:14 | 10 | years, is that what you're asking, or any time frame? |
| 12:11:18 | 11 | Q   No, did you tell Idah any time frame? |
| 12:11:21 | 12 | A   No, but we discussed the fact that the |
| 12:11:24 | 13 | program was a two-year program.  I don't know that I |
| 12:11:27 | 14 | specifically said to her we will pay for your tuition |
| 12:11:33 | 15 | for two years. |
| 12:11:37 | 16 | Q   Did anyone at The Whitaker Group, to your |
| 12:11:40 | 17 | knowledge, communicate that? |
| 12:11:41 | 18 | A   I can't speak for anyone else at The |
| 12:11:43 | 19 | Whitaker Group. |
| 12:11:44 | 20 | Q   I understand that, but to your knowledge was |
| 12:11:46 | 21 | that said -- did anyone say that to her, to your |
| 12:11:50 | 22 | knowledge? |

Page 80

| | | |
|---|---|---|
| 12:11:52 | 1 | A   To my knowledge, no, because you're talking |
| 12:12:00 | 2 | specifically about paying her tuition for two years |
| 12:12:03 | 3 | through the Scholarship Program, and whether or not |
| 12:12:06 | 4 | anybody had indicated that, I can't -- to my |
| 12:12:12 | 5 | knowledge, no one. |
| 12:12:14 | 6 | Q   Did Idah ever ask you how long her tuition |
| 12:12:17 | 7 | would be paid for? |
| 12:12:22 | 8 | A   I don't ever recall Idah specifically asking |
| 12:12:26 | 9 | how long her tuition would be paid for, although she |
| 12:12:30 | 10 | knew that the program at Montgomery College was a |
| 12:12:33 | 11 | two-year program. |
| 12:12:35 | 12 | Q   And how did she know that? |
| 12:12:38 | 13 | A   It's -- it's in all of the paperwork at |
| 12:12:45 | 14 | Montgomery College.  It's on their -- I can't remember |
| 12:12:50 | 15 | exactly what they sent to her, but in the general |
| 12:12:53 | 16 | information that they sent out to all prospective |
| 12:12:57 | 17 | students, you know, program descriptions and those |
| 12:13:00 | 18 | kinds of things are included. |
| 12:13:04 | 19 | Q   Before Idah came to the United States, did |
| 12:13:06 | 20 | you communicate any conditions of receiving |
| 12:13:11 | 21 | scholarship money from The Whitaker Group? |
| 12:13:18 | 22 | A   Because we assisted her in doing paperwork |

Page 81

| | | |
|---|---|---|
| 12:13:27 | 1 | for the school and because she had indicated her |
| 12:13:32 | 2 | intent was to go to school here, we did talk about her |
| 12:13:36 | 3 | having to be enrolled. |
| 12:13:45 | 4 | Q   And when you say "we," you mean you and -- |
| 12:13:51 | 5 | A   Idah, the student. |
| 12:13:53 | 6 | Q   And did anyone else at The Whitaker Group, |
| 12:13:56 | 7 | to your knowledge, communicate any conditions for |
| 12:13:59 | 8 | receiving the scholarship money? |
| 12:14:03 | 9 | A   Again you're asking about conversations |
| 12:14:05 | 10 | between Idah and someone other than myself? |
| 12:14:09 | 11 | Q   Yes. |
| 12:14:10 | 12 | A   I can't address that.  To my knowledge, I |
| 12:14:15 | 13 | don't believe anybody did. |
| 12:14:20 | 14 | Q   Did anyone communicate -- sorry.  I'm going |
| 12:14:22 | 15 | to rephrase that. |
| 12:14:38 | 16 | Did you ever communicate to Idah that there |
| 12:14:44 | 17 | were circumstances under which she would cease to |
| 12:14:48 | 18 | receive scholarship money from The Whitaker Group? |
| 12:14:54 | 19 | A   Did I ever tell her that there were |
| 12:14:56 | 20 | circumstances under which she would cease?  I don't |
| 12:15:01 | 21 | recall having a conversation with her about |
| 12:15:05 | 22 | termination of scholarship funding. |

21  (Pages 78 to 81)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 82

```
12:15:09   1      Q   Okay, so did anyone else ever communicate to
12:15:15   2   Idah that her scholarship could be terminated prior to
12:15:19   3   her coming to the United States?
12:15:26   4      A   Again you're asking for a conversation
12:15:28   5   outside my purview, between Idah and somebody else.
12:15:32   6      Q   To your knowledge.
12:15:33   7      A   To my knowledge, no.
12:15:37   8      Q   And once Idah was in the United States, were
12:15:39   9   there any conversations about how her scholarship
12:15:44  10   could be terminated?
12:15:54  11      A   I'm trying to think back. I don't recall,
12:16:09  12   because that would have been in 2004.
12:16:18  13      Q   Okay. I'm going to show you another
12:16:19  14   document.
12:16:21  15      A   Okay.
12:16:50  16          MS. LIEBERMAN:  This is Whitaker Group
12:16:51  17   Exhibit 7.
12:16:52  18          (TWG Exhibit No. 7 was marked for
12:16:52  19   identification and attached to the deposition
12:16:52  20   transcript.)
          21   BY MS. LIEBERMAN:
12:17:09  22      Q   Ms. Williams, when you're ready, after you
```

Page 83

```
12:17:12   1   review --
12:17:13   2      A   Okay.
12:17:14   3      Q   You ready?
12:17:14   4      A   Uh-huh.
12:17:16   5      Q   Ms. Williams, do you recognize Exhibit 7?
12:17:19   6      A   Yes.
12:17:20   7      Q   And what is Exhibit 7?
12:17:23   8      A   It's a schedule for Ms. Zirintusa's first
12:17:28   9   day or so here, or first couple of days maybe.
12:17:32  10      Q   And earlier you testified that you did not
12:17:34  11   exactly recall when Ms. Zirintusa arrived; is that
12:17:37  12   correct?
12:17:37  13      A   Right, uh-huh.
12:17:38  14      Q   And did this document refresh your memory
12:17:44  15   around when Ms. Zirintusa arrived?
12:17:45  16      A   On August of 2004.
12:17:50  17      Q   Did you draft this document?
12:17:56  18      A   No, I don't believe I did.
12:17:58  19      Q   Do you recall who did?
12:18:00  20      A   I can't remember. I can't remember.
12:18:14  21      Q   Would it have been your assistant at the
12:18:16  22   time?
```

Page 84

```
12:18:17   1      A   I don't even know if I had an assistant back
12:18:19   2   in 2004.
12:18:23   3      Q   Did you ask someone to prepare this
12:18:25   4   document?
12:18:33   5      A   I don't remember.
12:18:34   6      Q   Do you remember why the document was
12:18:36   7   prepared?
12:18:37   8      A   I think it was prepared to give Idah an idea
12:18:39   9   of what the schedule was going to be for her the first
12:18:43  10   couple of days she arrived in Washington.
12:18:51  11      Q   And if you look at the entry for Wednesday,
12:18:54  12   August 18th, 2004, at the top of the page, please --
12:18:58  13      A   Yep.
12:18:59  14      Q   -- it says, "4:00 -- Lunch at Cafe Asia."
12:19:05  15      A   Uh huh.
12:19:07  16      Q   Do you know whether around that time a lunch
12:19:09  17   at Cafe Asia occurred?
12:19:15  18      A   In looking at the schedule, you know, if I
12:19:18  19   were to assume that things were followed as listed
12:19:21  20   here, I would say yes, but to tell you for sure what
12:19:25  21   happened back in 2004 and this being 2007, there is no
12:19:29  22   way I could sit here and tell you that at 4:00 there
```

Page 85

```
12:19:33   1   was a lunch at Cafe Asia.
12:19:36   2      Q   Did you attend the lunch?
12:19:40   3      A   No, I did not.
12:19:41   4      Q   Do you know who would have attended the
12:19:43   5   lunch?
12:19:43   6      A   I do not.
12:19:44   7      Q   Would Idah have attended the lunch?
12:19:47   8      A   Since this is scheduled for Idah, I would
12:19:50   9   imagine she would have.
12:19:51  10      Q   Would Rosa have attended the lunch?
12:19:55  11      A   I don't know.
12:19:56  12      Q   Do you know if anyone else from Whitaker
12:19:58  13   Group would have attended the lunch?
12:20:00  14      A   I would imagine that there would have been
12:20:02  15   someone that attended the lunch with Idah. That's if
12:20:06  16   the lunch even took place.
12:20:07  17      Q   So it's possible that the lunch didn't take
12:20:09  18   place?
12:20:10  19      A   It's totally possible.
12:20:12  20      Q   And on Thursday, August 19, 2004, under the
12:20:15  21   entry that says "10:00 a.m.," who is Nicole?
12:20:21  22      A   Nicole is someone who used to work with The
```

22  (Pages 82 to 85)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

## Page 86

| | | |
|---|---|---|
| 12:20:26 | 1 | Whitaker Group. |
| 12:20:28 | 2 | Q  And in what capacity did she work with The |
| 12:20:31 | 3 | Whitaker Group? |
| 12:20:32 | 4 | A  Again I'm not going to lay out staff |
| 12:20:34 | 5 | functions and duties and stuff as it relates to the |
| 12:20:37 | 6 | Whitaker Group. |
| 12:20:38 | 7 | Q  What's Nicole's last name? |
| 12:20:40 | 8 | A  I would have to go back and check. I have |
| 12:20:42 | 9 | no idea. |
| 12:20:44 | 10 | Q  Do you have a record -- does The Whitaker |
| 12:20:46 | 11 | Group maintain a record of Nicole's -- |
| 12:20:49 | 12 | A  Again -- |
| 12:20:49 | 13 | Q  Excuse me. Let me just finish the question |
| 12:20:51 | 14 | for the court reporter. |
| 12:20:53 | 15 | A  Okay. |
| 12:20:53 | 16 | Q  Does The Whitaker Group have a record of |
| 12:20:56 | 17 | Nicole's employment? |
| 12:20:59 | 18 | A  Again any information not pertaining |
| 12:21:02 | 19 | specifically to the Scholarship Program I don't plan |
| 12:21:06 | 20 | to respond to. |
| 12:21:10 | 21 | Q  Let's look at the entry that says |
| 12:21:11 | 22 | "4:00 p.m." |

## Page 87

| | | |
|---|---|---|
| 12:21:13 | 1 | A  Uh-huh. |
| 12:21:15 | 2 | Q  Who is Ms. Sinotheni? |
| 12:21:20 | 3 | A  That's a good one. I really don't know. I |
| 12:21:33 | 4 | have absolutely no idea, and it's somebody from |
| 12:21:39 | 5 | Zimbabwe. I don't recall. |
| 12:21:41 | 6 | Q  Could she have been an employee at The |
| 12:21:43 | 7 | Whitaker Group? |
| 12:21:44 | 8 | A  No. |
| 12:21:56 | 9 | Q  If you would please turn to the entry on |
| 12:21:58 | 10 | August 20, 2004. It says, "1:00 p.m., Tour of the |
| 12:22:04 | 11 | Capital/Monument." Do you know if that tour took |
| 12:22:08 | 12 | place? |
| 12:22:08 | 13 | A  I don't know. |
| 12:22:09 | 14 | Q  Do you know who would have taken Idah on |
| 12:22:12 | 15 | that tour? |
| 12:22:13 | 16 | A  I have absolutely no idea. |
| 12:22:15 | 17 | Q  Do you recall why you put that item on |
| 12:22:17 | 18 | there? |
| 12:22:18 | 19 | A  I don't know that I did put it there. |
| 12:22:28 | 20 | Q  So someone else could have drafted this |
| 12:22:30 | 21 | document other than you? |
| 12:22:31 | 22 | A  They could have. |

## Page 88

| | | |
|---|---|---|
| 12:22:47 | 1 | Q  I'm going to show you another document. |
| 12:22:58 | 2 | MS. LIEBERMAN:  Let the record reflect that |
| 12:23:00 | 3 | counsel and the witness are conferring. |
| 12:23:07 | 4 | This will be Whitaker Group Exhibit 8. |
| 12:23:11 | 5 | (TWG Exhibit No. 8 was marked for |
| 12:23:11 | 6 | identification and attached to the deposition |
| 12:23:11 | 7 | transcript.) |
| 11:59:57 | 8 | BY MS. LIEBERMAN: |
| 12:23:53 | 9 | Q  And Ms. Williams, will you just let me know |
| 12:23:56 | 10 | when you've had a chance to review this document. |
| 12:23:59 | 11 | A  I have. |
| 12:24:10 | 12 | Q  Actually, before we move on to this |
| 12:24:12 | 13 | document, I do have a question about the previous |
| 12:24:14 | 14 | document that we just saw that I want to jump to. |
| 12:24:22 | 15 | On Friday, August 20th, 2004, if you look at |
| 12:24:27 | 16 | that entry, it says at 6:30 p.m., "Family dinner with |
| 12:24:33 | 17 | Rosa." |
| 12:24:34 | 18 | A  Uh-huh. |
| 12:24:36 | 19 | Q  Did you attend the family dinner with Rosa |
| 12:24:38 | 20 | on that day? |
| 12:24:39 | 21 | A  I don't know if a family dinner took place. |
| 12:24:41 | 22 | Q  Did you attend any kind of dinner with Rosa |

## Page 89

| | | |
|---|---|---|
| 12:24:44 | 1 | and Idah on that day? |
| 12:24:49 | 2 | A  I don't recall attending a dinner with Rosa |
| 12:24:52 | 3 | or Idah on that day. |
| 12:25:00 | 4 | Q  So you don't know if a family dinner |
| 12:25:03 | 5 | occurred? |
| 12:25:04 | 6 | A  No, I don't. |
| 12:25:06 | 7 | Q  And it also says at 9:00 p.m., "Church with |
| 12:25:11 | 8 | Rosa." Did you attend church with Rosa and Idah? |
| 12:25:15 | 9 | A  I don't recall attending church with Rosa |
| 12:25:17 | 10 | and Idah that day. |
| 12:25:18 | 11 | Q  Did you ever attend church with Rosa and |
| 12:25:20 | 12 | Idah? |
| 12:25:22 | 13 | A  Not that I recall, no. |
| 12:25:35 | 14 | Q  Okay. Now we'll move on back to Exhibit 8. |
| 12:25:39 | 15 | Ms. Williams, what do you recognize this document to |
| 12:25:41 | 16 | be? |
| 12:25:41 | 17 | A  It looks like the Department of Justice |
| 12:25:48 | 18 | student visa form. |
| 12:25:50 | 19 | Q  Did you assist in preparing this document? |
| 12:26:09 | 20 | A  I honestly don't recall. |
| 12:26:13 | 21 | Q  If you didn't assist in preparing this |
| 12:26:15 | 22 | document, who may have? |

23  (Pages 86 to 89)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

---

Page 102

```
12:59:15   1      Q  Did Rosa Whitaker ever provide Idah with
12:59:19   2   clothing?
12:59:20   3      A  You would have to ask Rosa Whitaker.  I have
12:59:22   4   no idea.  What I talked about what Idah asked for, she
12:59:30   5   was asking me for clothing.
12:59:32   6      Q  Was she asking you in your personal
12:59:35   7   capacity?
12:59:36   8      A  Yes.
12:59:41   9      Q  What, if anything else, did you discuss with
12:59:44   10  Idah that day?
12:59:45   11     A  That's all I can recall.
01:00:00   12     Q  Do you remember if Idah came to you on this
01:00:02   13  date?
01:00:09   14     A  Because I can't remember where the
01:00:17   15  conversation or meeting took place, I can't remember
01:00:21   16  if I went to meet with her or if she came to the
01:00:25   17  office.
01:00:31   18     Q  When you say "came to her," where would you
01:00:35   19  have come?
01:00:36   20     A  I would probably have gone -- if it was a
01:00:39   21  meeting where I went to see her, it would probably
01:00:43   22  have been at Rosa's house.
```

Page 103

```
01:00:47   1      Q  Did you often meet Idah at Rosa's house?
01:00:50   2      A  No, I did not.
01:00:52   3      Q  How many times have you met Idah at Rosa's
01:00:55   4   house?
01:00:56   5      A  I have absolutely no idea.
01:00:57   6      Q  Is there anyone else who would know how many
01:00:59   7   times you met Idah at Rosa's house?
01:01:02   8      A  No.
01:01:09   9      Q  How many times did you meet Idah at the
01:01:11   10  office?
01:01:15   11     A  At the office?  Not that many times, but I
01:01:22   12  can't give you a number.
01:01:25   13     Q  When Idah came to the office, was this
01:01:27   14  ordinarily during business hours?
01:01:31   15     A  As far as I recall, I want to say yes.
01:01:36   16     Q  And who at The Whitaker Group would have
01:01:39   17  seen Idah when she visited the office?
01:01:42   18     A  Again if you're getting into The Whitaker
01:01:43   19  Group information that's not related to the
01:01:46   20  scholarship program, I don't plan to answer.
01:01:56   21     MS. LIEBERMAN:  Counsel, I want to inform
01:01:59   22  you on the record that this information, people who
```

Page 104

```
01:02:04   1   saw Idah at The Whitaker Group, is relevant to our
01:02:07   2   subpoena and to the claims and defenses in this
01:02:10   3   litigation and that at an appropriate time we will
01:02:13   4   move to compel this information, so if you don't
01:02:16   5   provide it now, we will request that the Court order
01:02:19   6   that you provide the information.
01:02:35   7      MR. WALLER:  Okay.
01:02:39   8   BY MS. LIEBERMAN:
01:02:39   9      Q  On the 18th what did you tell Idah about
01:02:43   10  this form when you gave it to her to sign?
01:02:50   11     A  On the 18th when we met?  I wanted her to
01:02:55   12  look over it.  Any of the items and stuff that we had
01:03:01   13  provided and stuff that were listed here, I wanted her
01:03:05   14  to look at that section very closely, and if she
01:03:12   15  agreed with the information that was here, then she
01:03:16   16  was to sign and date it that we had done these things.
01:03:20   17     Q  Did she ask you any questions about the
01:03:22   18  form?
01:03:24   19     A  Not that I recall.  She -- what did she ask?
01:03:34   20  I don't recall her asking any questions.  She did take
01:03:38   21  time out to look at the form and stuff before she
01:03:40   22  signed.
```

Page 105

```
01:03:41   1      Q  Did she make any comments about the form?
01:03:43   2      A  Not that I recall, and if she did, I can't
01:03:46   3   remember what they were.
01:03:54   4      Q  Did you explain to her why you were asking
01:03:56   5   her to sign it at this time?
01:03:58   6      A  Yes, which I just relayed to you.
01:04:04   7      Q  And did you explain to her that this
01:04:15   8   Scholarship Participation Form pertained to the fall
01:04:21   9   semester?
01:04:27   10     A  I don't think I indicated a semester to her.
01:04:31   11  I don't recall that I did.  I'm not sure.
01:06:01   12     (Discussion was held off the record.)
01:06:09   13  BY MS. LIEBERMAN:
01:06:09   14     Q  I'd like you to turn to the second paragraph
01:06:12   15  of the document --
01:06:14   16     A  Okay.
01:06:18   17     Q  -- in the second to the last sentence where
01:06:20   18  it says, "However, the sponsor will provide a monthly
01:06:25   19  stipend."
01:06:28   20     A  Uh-huh.
01:06:28   21     Q  What is a sponsor?
01:06:35   22     A  You're asking me for a definition of what a
```

27 (Pages 102 to 105)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS

## CONDUCTED ON MONDAY, MARCH 5, 2007

### Page 186

| | | |
|---|---|---|
| 04:11:27 | 1 | refunded? |
| 04:11:28 | 2 | A   No. |
| 04:12:03 | 3 | Q   Ms. Williams, what is your title at The |
| 04:12:04 | 4 | Whitaker Group? |
| 04:12:06 | 5 | A   My current title is Chief Operating Officer. |
| 04:12:12 | 6 | Q   And how long have you held that position at |
| 04:12:13 | 7 | The Whitaker Group? |
| 04:12:16 | 8 | A   As COO? |
| 04:12:18 | 9 | Q   Yes. |
| 04:12:21 | 10 | A   I can't recall. I can't recall when that |
| 04:12:27 | 11 | title became effective. |
| 04:12:29 | 12 | Q   How long have you been at The Whitaker |
| 04:12:30 | 13 | Group? |
| 04:12:43 | 14 | A   You mean as it relates to the scholarship |
| 04:12:45 | 15 | program? |
| 04:12:49 | 16 | Q   No, I mean how long have you been at The |
| 04:12:51 | 17 | Whitaker Group? |
| 04:12:53 | 18 | A   If it's not related to the scholarship |
| 04:12:56 | 19 | program, I'm not answering any of those questions. |
| 04:12:59 | 20 | Q   What are your primary duties as Chief |
| 04:13:01 | 21 | Operating Officer? |
| 04:13:04 | 22 | A   As it relates to the scholarship program? |

### Page 187

| | | |
|---|---|---|
| 04:13:06 | 1 | Q   No. |
| 04:13:07 | 2 | A   Okay. If it's outside of the scholarship |
| 04:13:10 | 3 | program, then I'm not answering any questions about |
| 04:13:14 | 4 | The Whitaker Group. |
| 04:13:16 | 5 | Q   Is Rosa Whitaker your sister? |
| 04:13:23 | 6 | A   Is it about the scholarship program? I |
| 04:13:26 | 7 | answer the same as it was before. |
| 04:13:29 | 8 | Q   Unless I say that it's about the scholarship |
| 04:13:32 | 9 | program, just interpret it just as I've stated the |
| 04:13:35 | 10 | question. Just to make it go quicker, say "same |
| 04:13:38 | 11 | answer." |
| 04:13:39 | 12 | A   Okay. |
| 04:13:40 | 13 | Q   Do you have any other family members that |
| 04:13:42 | 14 | work at Whitaker Group? |
| 04:13:44 | 15 | A   Same answer. |
| 04:13:48 | 16 | Q   How many hours do you work each week? |
| 04:13:52 | 17 | A   Same answer. |
| 04:13:53 | 18 | Q   How many days a week do you work? |
| 04:13:55 | 19 | A   Same answer. |
| 04:14:03 | 20 | Q   What professional degrees do you have, if |
| 04:14:04 | 21 | any? |
| 04:14:05 | 22 | A   Same answer. |

### Page 188

| | | |
|---|---|---|
| 04:14:07 | 1 | Q   Do you have a degree in accounting? |
| 04:14:12 | 2 | A   Same answer. |
| 04:14:17 | 3 | Q   Did The Whitaker Group file tax returns for |
| 04:14:21 | 4 | 2004? |
| 04:14:21 | 5 | A   Same answer. |
| 04:14:25 | 6 | Q   Did The Whitaker Group -- let me rephrase |
| 04:14:32 | 7 | the question. Did The Whitaker Group file tax returns |
| 04:14:35 | 8 | for the tax year of 2004? |
| 04:14:37 | 9 | A   Same answer. |
| 04:14:42 | 10 | Q   What was The Whitaker Group's income for |
| 04:14:45 | 11 | 2004? |
| 04:14:47 | 12 | A   Same answer. |
| 04:14:52 | 13 | Q   How does The Whitaker Group compensate you? |
| 04:14:55 | 14 | A   Same answer. |
| 04:14:59 | 15 | Q   Do you receive a bonus at the end of the |
| 04:15:01 | 16 | year? |
| 04:15:02 | 17 | A   Same answer. |
| 04:15:19 | 18 | Q   How long has Rosa Whitaker been employed by |
| 04:15:21 | 19 | The Whitaker Group? |
| 04:15:23 | 20 | A   Same answer. |
| 04:15:24 | 21 | Q   How many hours a day does Ms. Whitaker work? |
| 04:15:34 | 22 | A   Same answer. |

### Page 189

| | | |
|---|---|---|
| 04:15:38 | 1 | Q   How many days per week does Ms. Whitaker |
| 04:15:43 | 2 | work? |
| 04:15:43 | 3 | A   Same answer. |
| 04:15:44 | 4 | Q   How many hours does Ms. Whitaker work -- |
| 04:15:48 | 5 | does Ms. Whitaker spend inside the office? |
| 04:15:52 | 6 | A   Same answer. |
| 04:15:53 | 7 | Q   Does Ms. Whitaker typically work late hours? |
| 04:15:56 | 8 | A   Same answer. |
| 04:16:01 | 9 | Q   What is Ms. Whitaker's salary? |
| 04:16:04 | 10 | A   Same answer. |
| 04:16:05 | 11 | Q   Does Ms. Whitaker receive a bonus? |
| 04:16:07 | 12 | A   Same answer. |
| 04:16:09 | 13 | Q   How much does Ms. Whitaker travel on |
| 04:16:12 | 14 | average? |
| 04:16:12 | 15 | A   Same answer. |
| 04:16:13 | 16 | Q   Does Ms. Whitaker have a secretary? |
| 04:16:17 | 17 | A   Same answer. |
| 04:16:18 | 18 | Q   Does she have a personal assistant? |
| 04:16:20 | 19 | A   Same answer. |
| 04:16:25 | 20 | MS. LIEBERMAN:  One second off the record. |
| 04:16:30 | 21 | (Whereupon, a recess was taken from 4:16 |
| 04:16:30 | 22 | p.m. to 4:17 p.m.) |

48  (Pages 186 to 189)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 194

| | | |
|---|---|---|
| 04:22:25 | 1 | BY MS. LIEBERMAN: |
| 04:22:25 | 2 | Q  Before you came to the deposition, did you |
| 04:22:29 | 3 | look at tax information related to The Whitaker Group? |
| 04:22:35 | 4 | A  Related to The Whitaker Group? No. |
| 04:22:39 | 5 | Q  Okay. Did you look at any financial |
| 04:22:45 | 6 | information related to The Whitaker Group? |
| 04:22:47 | 7 | A  Not that I recall, other than stuff for the |
| 04:22:52 | 8 | scholarship program that your office has copies of. |
| 04:24:00 | 9 | MS. LIEBERMAN:  I'm going to take a five- to |
| 04:24:02 | 10 | ten-minute break, and we're going to go off the record |
| 04:24:06 | 11 | at this time. |
| 04:24:07 | 12 | THE WITNESS:  Okay. |
| 04:24:08 | 13 | (Whereupon, a recess was taken from |
| 04:24:08 | 14 | 4:24 p.m. to 4:33 p.m.) |
| 04:33:48 | 15 | BY MS. LIEBERMAN: |
| 04:33:50 | 16 | Q  Ms. Williams, how did you determine that you |
| 04:33:55 | 17 | were the person most qualified to respond to the |
| 04:33:59 | 18 | subpoena today? |
| 04:34:08 | 19 | A  I don't know that I can answer that. |
| 04:34:11 | 20 | Q  And what's the basis for your -- |
| 04:34:13 | 21 | A  Well -- |
| 04:34:14 | 22 | Q  Excuse me. Just let me finish for the court |

Page 195

| | | |
|---|---|---|
| 04:34:16 | 1 | reporter. What is the basis for your opinion that you |
| 04:34:22 | 2 | can't answer the question? |
| 04:34:35 | 3 | A  I guess my response would be that as relates |
| 04:34:40 | 4 | to the scholarship program I probably have more |
| 04:34:43 | 5 | information than anybody else, and that was my area of |
| 04:34:48 | 6 | focus, TWG Scholarship Program. |
| 04:35:04 | 7 | Q  And is it correct that you're testifying |
| 04:35:06 | 8 | today that you are not the person who is most informed |
| 04:35:10 | 9 | to testify about the finances of The Whitaker Group? |
| 04:35:16 | 10 | A  I go back to my same answer I had before as |
| 04:35:19 | 11 | relates to the Whitaker Group, that since your |
| 04:35:22 | 12 | question does not specifically ask information about |
| 04:35:26 | 13 | the scholarship program, then I'm not answering. |
| 04:35:30 | 14 | Q  Okay, so you're refusing to answer the |
| 04:35:31 | 15 | question that I'm posing, which is whether or not you |
| 04:35:37 | 16 | are the person at The Whitaker Group who is most |
| 04:35:39 | 17 | informed about the finances; is that correct? |
| 04:35:42 | 18 | A  That's correct. |
| 04:35:43 | 19 | Q  Okay, and so you're not going to answer any |
| 04:35:48 | 20 | questions related to the finances of The Whitaker |
| 04:35:49 | 21 | Group? |
| 04:35:50 | 22 | A  That's correct. |

Page 196

| | | |
|---|---|---|
| 04:35:50 | 1 | Q  Who is better qualified to testify about |
| 04:35:53 | 2 | that than you? |
| 04:35:54 | 3 | A  About finances for The Whitaker Group? |
| 04:35:56 | 4 | Q  Yes. |
| 04:35:57 | 5 | A  Again the same answer I gave just now. I'm |
| 04:35:59 | 6 | not answering any questions as relates to anything |
| 04:36:03 | 7 | outside of the scholarship program. It sounds like |
| 04:36:08 | 8 | your question has to do with The Whitaker Group |
| 04:36:10 | 9 | itself. |
| 04:36:11 | 10 | MS. LIEBERMAN:  And counsel, are you |
| 04:36:13 | 11 | instructing the witness not to answer the question |
| 04:36:14 | 12 | that I just posed? |
| 04:36:17 | 13 | MR. WALLER:  Well, I think the witness has |
| 04:36:19 | 14 | answered your question. Number two, any conversation |
| 04:36:22 | 15 | I have had with my client before and after or during |
| 04:36:26 | 16 | this deposition are privileged conversations, and I'm |
| 04:36:29 | 17 | not going to discuss the contents of our conversations |
| 04:36:33 | 18 | under any circumstances. |
| 04:36:35 | 19 | MS. LIEBERMAN:  So you're going to allow her |
| 04:36:36 | 20 | to refuse to testify about the question that I just |
| 04:36:39 | 21 | posed about who is most knowledgeable at The Whitaker |
| 04:36:41 | 22 | Group about the finances of The Whitaker Group? |

Page 197

| | | |
|---|---|---|
| 04:36:47 | 1 | MR. WALLER:  She answered the question based |
| 04:36:48 | 2 | upon information and belief. That's the best answer |
| 04:36:52 | 3 | you're going to get. |
| 04:36:53 | 4 | MS. LIEBERMAN:  So the answer is no, you're |
| 04:36:55 | 5 | not going to -- yes, you are going to allow her -- |
| 04:36:58 | 6 | MR. WALLER:  I'm advising my client to |
| 04:37:01 | 7 | testify and answer all questions truthfully, and she |
| 04:37:04 | 8 | has done that. |
| 04:37:11 | 9 | BY MS. LIEBERMAN: |
| 04:37:11 | 10 | Q  Okay, Ms. Williams, I've noticed that |
| 04:37:14 | 11 | through the deposition you've been jotting down notes; |
| 04:37:18 | 12 | is that correct? |
| 04:37:21 | 13 | A  Yes. |
| 04:37:22 | 14 | Q  I'd ask you to produce those notes to me |
| 04:37:25 | 15 | now, and we can make a copy of it, because that is |
| 04:37:28 | 16 | discoverable information. |
| 04:37:34 | 17 | A  I'm going to refuse that, because the notes |
| 04:37:36 | 18 | that I've been jotting down, some of which have |
| 04:37:40 | 19 | nothing to do with this deposition -- |
| 04:37:41 | 20 | Q  Well, I would renew my request and inform |
| 04:37:44 | 21 | you that that is not a relevant basis to refuse to |
| 04:37:46 | 22 | give them to us. |

50 (Pages 194 to 197)

30(b)(6)DEPOSITION OF THE WHITAKER GROUP BY AND THROUGH THEIR CORPORATE REPRESENTATIVE SHEILA WILLIAMS
CONDUCTED ON MONDAY, MARCH 5, 2007

Page 202

| | | |
|---|---|---|
| 04:42:59 | 1 | continuing obligation to produce any information that |
| 04:43:02 | 2 | is relevant to the subpoena, even in 2007, just |
| 04:43:07 | 3 | throughout the litigation as any relevant information |
| 04:43:11 | 4 | comes up. |
| 04:43:12 | 5 | So you didn't look for 2007; that's your |
| 04:43:17 | 6 | testimony? |
| 04:43:19 | 7 | A   Not that I recall, no. |
| 04:43:25 | 8 | Q   Did you look at bank records in preparing |
| 04:43:28 | 9 | for this deposition? |
| 04:43:33 | 10 | A   Bank records?  Not that I recall. |
| 04:43:41 | 11 | Q   And did you look at credit card statements? |
| 04:43:43 | 12 | A   Not that I recall, no. |
| 04:43:45 | 13 | Q   Did you look at wire transfers? |
| 04:43:55 | 14 | A   I can't remember.  I want to say that maybe |
| 04:44:03 | 15 | I did not, but I can't remember for sure. |
| 04:44:06 | 16 | Q   So you're really not prepared to testify |
| 04:44:08 | 17 | today as a witness representative of The Whitaker |
| 04:44:11 | 18 | Group, are you? |
| 04:44:14 | 19 | A   I'm as prepared, I think, as anyone can be, |
| 04:44:18 | 20 | given the information that I came here to respond to, |
| 04:44:21 | 21 | which was the scholarship information. |
| 04:44:24 | 22 | Q   Yet you don't have that information related |

Page 203

| | | |
|---|---|---|
| 04:44:31 | 1 | to bank records and the scholarship program, right? |
| 04:44:36 | 2 | A   I did not look at bank records as relates to |
| 04:44:41 | 3 | the scholarship program. |
| 04:44:44 | 4 | Q   So you're unprepared to testify as to the |
| 04:44:46 | 5 | bank records that might have to do with the |
| 04:44:48 | 6 | scholarship program? |
| 04:44:49 | 7 | A   I'm not going to say I'm not prepared, |
| 04:44:51 | 8 | because for the most part we had copies of checks for |
| 04:44:53 | 9 | those things that we funded as relates to the |
| 04:44:57 | 10 | scholarship program. |
| 04:44:58 | 11 | Q   But you're not prepared to talk about wire |
| 04:45:00 | 12 | transfers that may have been made in connection to the |
| 04:45:05 | 13 | scholarship program? |
| 04:45:08 | 14 | A   I can't answer that, no. |
| 04:45:10 | 15 | Q   Why not? |
| 04:45:12 | 16 | A   Because I can't remember all of the |
| 04:45:14 | 17 | information that I looked at. |
| 04:45:15 | 18 | Q   But there was a wire transfer you testified |
| 04:45:18 | 19 | earlier about? |
| 04:45:19 | 20 | A   Yes.  As I said, I can't respond to that |
| 04:45:21 | 21 | now, because -- there was information and stuff, I'm |
| 04:45:26 | 22 | pretty sure, but I did not pull information.  This is |

Page 204

| | | |
|---|---|---|
| 04:45:35 | 1 | just from memory. |
| 04:45:36 | 2 | Q   So you're really not prepared to talk about |
| 04:45:39 | 3 | that? |
| 04:45:39 | 4 | A   I guess if you want to phrase it like that, |
| 04:45:43 | 5 | then I'm not prepared. |
| 04:45:44 | 6 | Q   So you're not? |
| 04:45:44 | 7 | A   Okay. |
| 04:45:46 | 8 | MS. LIEBERMAN:  Well, at this time I'm going |
| 04:45:47 | 9 | to -- we will adjourn at this time.  I don't have any |
| 04:45:51 | 10 | further questions at this time. |
| 04:45:54 | 11 | MR. LAKATOS:  Right.  I think as you |
| 04:45:55 | 12 | understand, we are going to move to compel the |
| 04:45:57 | 13 | testimony that you're withholding. |
| 04:45:59 | 14 | MR. WALLER:  You know, the last time I |
| 04:46:01 | 15 | checked, it was a good court, there was a lot of |
| 04:46:04 | 16 | people coming with that motion, so I look forward to |
| 04:46:07 | 17 | seeing you in court, counsel. |
| 04:46:10 | 18 | MS. LIEBERMAN:  Thank you. |
| 04:46:11 | 19 | (Signature having not been waived, the |
| 04:46:11 | 20 | deposition of SHEILA WILLIAMS was concluded at 4:46 |
| 04:46:11 | 21 | p.m.) |
| 04:46:11 | 22 | |

Page 205

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | ACKNOWLEDGEMENT OF WITNESS |
| 4 | |
| 5 | I, Sheila Williams, corporate designee for |
| 6 | The Whitaker Group, do hereby acknowledge that I have |
| 7 | read and examined the foregoing testimony, and the |
| 8 | same is a true, correct and complete transcription of |
| 9 | the testimony given by me, and any corrections appear |
| 10 | on the attached Errata sheet signed by me. |
| 11 | |
| 12 | |
| 13 | _____ |
| 14 | (DATE)        (SIGNATURE) |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

52 (Pages 202 to 205)