UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAH ZIRINTUSA )<br>)<br>The Plaintiff, )<br>)<br>v. )<br>)<br>ROSA WHITAKER, et. al. )<br>)<br>)<br>Defendants. )<br>) | Civil Action No. 05-1738 (EGS/JMF) |

## MEMORANDUM OF FACTS AND LAW IN SUPPORT OF PLAINTIFF IDAH ZIRINTUSA'S MOTION FOR PROTECTIVE ORDER BARRING DISCOVERY INTO HER IMMIGRATION STATUS

### INTRODUCTION

Courts nationwide consistently have barred defendants, in cases like just this one, from conducting any "discovery" whatsoever into a former employee's immigration status. Courts recognize that such requests are both wholly irrelevant to any defense dispositive of Fair Labor Standards Act ("FLSA") and breach of contract claims, as well as highly intimidating, such that absent a protective order, many plaintiffs would be cowed into abandoning their legitimate claims and left vulnerable to exploitive labor practices. The Fifth Circuit, for example, held that the danger of "inhibit[ing] petitioners in pursuing their rights" was so profound that a writ of mandamus, ordering a district court to withdraw its discovery order, was warranted. See In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987) (denying immigration discovery where, as here, plaintiffs sued for FLSA and breach of contract violations); see also Liu v. Donna Karan, Int'l Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (citation omitted) (denying immigration discovery because of "the danger of intimidation, the danger of destroying the cause of action").

A court need not find that the Defendants deliberately have attempted to intimidate the Plaintiff in order to grant a protective order. See Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (granting a protective order and holding that the Court "need not find ... ominous undertones in defendant's discovery requests" in order to conclude that "[p]laintiff's fears of her immigration status deterring further prosecution of her claims are well founded."). But, in this case, the need for a protective order is particularly acute because, even before this action started and continuing through today, the defendants have engaged in a highly intimidating campaign to cause Ms. Zirintusa to leave the country and abandon her claims.

## FACTS

### 1. Ms. Zirintusa Has a Sound Basis To Pursue a Claim for Fair Compensation.

It is undisputed that Ms. Zirintusa performed housework for Ms. Whitaker in Uganda, when Ms. Whitaker – a former Assistant United States Trade Representative to Africa – was a guest of Ugandan President Musevini.[1] And, it is undisputed that in August 2004, Ms. Zirintusa moved from Uganda to the United States to live with Defendant Whitaker.[2] Ms. Zirintusa has testified that

Ms. Whitaker disputes that Ms. Zirintusa did any housework at all.[4] But Ms. Whitaker admits that

Ms. Whitaker also admits that                 **REDACTED**

---

[1] See Amended Answer of Defendant Rosa Whitaker (November 4, 2005) ("Am. Answer") (Docket Entry 10), ¶ 19.
[2] See Am. Answer ¶ 31.
[3] See Declaration of Alex Lakatos (Oct. 26, 2007) ("Lakatos Decl."), at Ex. 1 (Deposition of Idah Zirintusa (May 31, 2007), at 283-284).
[4] See Am. Answer ¶¶ 21, 53, 54, 61.
[5] See Lakatos Decl., Ex. 2 (Defendant Rosa Whitaker's Responses to Plaintiff's Second Set of Requests for Admissions (October 2, 2007) ("Second Admissions"), Responses No 10, 11, 13).

As well, has submitted a declaration that:

Similarly, defendant Pauline Harris has testified that

**REDACTED**

2.    **Defendants Have Tried to Coerce Ms. Zirintusa to Leave the Country.**

Ms. Whitaker has testified that,

Ms. Whitaker's sister testified that,

---

[6] See Lakatos Decl. Ex. 2 (Second Admissions, Responses nos. 71, 73, 77).

[8] See Lakatos Decl. Ex. 4 (Deposition of Pauline Harris (August 30, 2007) at 87-88).
[9] See Lakatos Decl. Ex 1 (Deposition of Idah Zirintusa, at 296-97).
[10] See Lakatos Decl. Ex. 5 (Deposition of Rosa Whitaker (June 26, 2007) at 174, 177).
[11] See Lakatos Decl. Ex. 6 (Deposition of The Whitaker Group (March 5, 2007), at 110, 147).
[12] See Lakatos Decl. Ex. 7 (Deposition of The Whitaker Group (August 16, 2007) at 189).

### 3. Defendants' Conduct Already Has Intimidated Ms. Zirintusa.

Despite being left homeless and jobless on Christmas eve 2004, Ms. Zirintusa pursued her claims.

**REDACTED**

This incident was particularly intimidating to Ms. Zirintusa, because Ms. Whitaker is a former U.S. government official, and Ms. Zirintusa is from Uganda where, according to the State Department's Country Report on Human Rights Practices (2005), human rights problems include "official impunity."[14] Under these circumstances, the threat of deportation to Uganda (where the State Department also lists "restricted right to a fair trial" and "unlawful killings" among the human rights concerns[16]) is particularly coercive to Ms. Zirintusa.

---

[14] See Uganda, Country Reports on Human Rights Practices, Released by the Bureau of Democracy, Human Rights and Labor (March 8, 2005) available on the U.S. Department of State website: http://www.state.gov/g/drl/rls/hrrpt/2005/61598.htm ("Uganda Human Rights Report").
[15] See Lakatos Decl. Ex. 8 (Defendant Rosa Whitaker's Responses to Plaintiff's First Set of Requests for Admissions (February 1, 2007), Response no. 3).
[16] See Uganda Human Rights Report, Introduction.

4. **This Court Has Rejected Defendants' Attempt to Use Ms. Zirintusa's Status to Dismiss Her Claims.**

Once served, the Defendants began to focus their defense on a counterattack against Ms. Zirintusa based on her immigration status, asserting that they had no legal obligations to an "illegal immigrant." See, e.g., Am. Answer ("Fourth Defense. Plaintiff lacks the capacity to be a litigant in this matter under Federal Rule of Civil Procedure 17(b), inasmuch as she is in this country illegally."); Motion to Dismiss of Defendant Rosa Whitaker, at 8-9 (Nov. 17, 2005) (Docket Entry 14) ("Plaintiff seeks to recover wages from defendant. ... [T]he issue must be raised of whether an action may be brought by an illegal alien. ... An illegal alien does not have the capacity to bring a claim in U.S. courts.").

This Court, however, squarely rejected those arguments: "Numerous lower courts have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA." Mem. Op. (Jan. 3, 2007) at 12 (Docket Entry 39) (quoting Flores v. Amignon, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002)). "Indeed, it would provide perverse incentives to employers to seek out and knowingly hire illegal aliens ... if those aliens could not protect themselves by bringing claims under the FLSA." Id.

5. **Defendants' Have Focused Their Discovery on Ms. Zirintusa's Immigration Status Despite this Court's Denial of Their Defense Based on that Issue.**

Once this Court ruled that the defendants could not excuse their failure to comply with their obligations to Ms. Zirintusa by questioning her immigration status, there was no need for any further inquiry into the matter. But, rather than engage on the merits, the Defendants have chosen to make Ms. Zirintusa's immigration status a centerpiece of their discovery strategy. Their document requests include, without limitation, "All copies of Plaintiff's visa applications,

including applications that were denied" and "All documents relating to Plaintiffs' current visa, including communications regarding her current visa status."[17] Not only did the Defendants request that Plaintiff provide the information, if any, already in her possession, Defendants moreover sought to have the Plaintiff file, on their behalf, an additional application with the Department of Homeland Security to procure, and ultimately produce, even more of her immigration materials.[18]

In response, Plaintiff raised appropriate objections.[19] In addition, Plaintiff wrote a letter to Defendants that (1) cited several cases like this one in which courts denied access to immigration materials, (2) expressed concern that the Defendants were merely trying to harass and intimidate her, and (3) nevertheless tried to propose a compromise:

> With regard to your request that Ms. Zirintusa produce (and obtain from the Department of Homeland Security for production) information concerning her immigration status, courts have consistently refused to require the disclosure of such materials. [citations to case law omitted] … In this case, it is plain that Ms. Zirintusa's immigration materials are not relevant and that defendants' effort to obtain such information is <u>an improper effort to embarrass and intimidate the plaintiff so that she will be dissuaded from bringing her claims</u>. … Nevertheless, in an effort to reach a compromise with you on this point, we are prepared to consider reasonable stipulations to address your concerns and would ask that you propose appropriate stipulations to resolve this matter.[20]

Defendants' response confirmed that the Plaintiff's concerns were well founded. They cited no cases supporting the discovery they were seeking, set forth no legitimate purpose for the information being sought, and said nothing at all in response to Plaintiff's offer to compromise.[21] Accordingly, Plaintiff wrote once more to state that if the Defendants would not accept a

---

[17] See Lakatos Decl. Ex. 9 (Plaintiff's Response to Defendants' Second Set of Requests for the Production of Documents to Plaintiff Idah Zirintusa (June 29, 2007), at Requests 5, 6).
[18] See Lakatos Decl. Ex. 10 (Letter from T. Valencius, Esq., counsel for Defendants, to A. Lakatos, Esq., counsel for Plaintiff (July 3, 2007)).
[19] See Lakatos Decl. Ex. 9.
[20] See Lakatos Decl. Ex. 11 (Letter from A. Lakatos to J. M. Hannon, counsel for Defendants (July 18, 2007) (citations omitted) (emphasis added)).
[21] See Lakatos Decl. Ex. 12 (Letter from J.M. Hannon to A. Lakatos (Sept. 7, 2007), at 2).

compromise, she would bring this motion for a protective order.[22]

## ARGUMENT

Time and again, courts have shielded vulnerable foreign plaintiffs, like Ms. Zirintusa, who seek recourse in U.S. courts after having been subjected to exploitive labor practices (e.g., FLSA violations, breaches of employment agreements, retaliatory termination), from being questioned on their immigration status. See, e.g., Rivera v. Nibco, 364 F.3d 1057 (9th Cir. 2004) (affirming order granting protective order shielding female immigrant factory workers bringing Title VII case from having to disclose immigration data); In re Reyes, 814 F.2d at 170-71 (granting writ of mandamus to prevent inquiry into immigration status of migrant farm workers suing for FLSA and breach of contract violations); EEOC v. First Wireless Group, Inc, No. 03-cv-4990, 2007 WL 586720 (E.D.N.Y. Feb. 20, 2007) (affirming magistrate judge's protective order preventing discovery into plaintiffs' immigration status in Title VII, Title I and retaliation case by Hispanic immigrants); Lozano v. City of Hazelton, 239 F.R.D. 397 (M.D. Pa. 2006) (granting protective order shielding plaintiffs' identities and immigration status in action challenging anti-immigration legislation); EEOC v. City of Joliet, 239 F.R.D. 490 (N.D. Ill. 2006) (denying discovery of immigration status in FLSA case); Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499 (W.D. Mich. 2005) (same); Liu v. Donna Karan, Int'l, Inc., 207 F. Supp. 2d 191 (S.D.N.Y. 2002) (same); Flores, et al. v. Albertson, Inc., No. CV0100515AHM(SHX), 2002 WL 1163623, at *4 (C.D. Cal. April 9, 2002) (holding that immigration materials were irrelevant to fraud, FLSA and breach of contract claims, and that their production could cause a "miscarriage of justice"); Topo, 210 F.R.D. 76 (granting protective shielding inquiry of plaintiff's immigration status in Alien Tort Claims Act, trafficking and involuntary servitude,

---

[22] See Lakatos Decl. Ex. 13 (Letter from A. Lakatos to J.M. Hannon (Sept. 10, 2007)).

false imprisonment, and federal and state minimum wage action by non United States citizen recruited for a domestic servant position).

Courts have explained that immigration materials simply are not relevant to such cases, and that even if there were any relevance, the *in terrorem* effect on plaintiffs would far outweigh any putative benefit to the defense. In this case, the Court already has ruled that the Defendants may not defeat the Plaintiff's claims simply by invoking her immigration status. Mem. Op. (Jan. 3, 2007) at 12. In so ruling, this Court specifically relied upon Flores v. Amignon, 233 F. Supp. 2d at 464-65, a case that granted a motion for a protective order shielding immigration information from discovery, holding that "the information is not relevant to defendant's defense, but ... even if it were, the potential prejudice far outweighs whatever minimal probative value such information could have." Defendants have not identified any legitimate basis for seeking Ms. Zirintusa's immigration materials, let alone a basis for the detailed exegesis of those materials – e.g., "[a]ll documents relating to Plaintiffs' current visa, including communications regarding her current visa status – that they seek.

Even if Defendants could concoct a theory of relevance, the danger this discovery presents would still merit a protective order. Citing the dangers of exactly this type of discovery, in Reyes, the Fifth Circuit issued a writ of mandamus ordering the district court to withdraw all portions of the discovery order that would have required the plaintiffs to answer questions concerning citizenship and alienage. The Court explained that such discovery "could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case." 814 F.2d at 170. In Rivera, the Ninth Circuit reached the same conclusion:

> While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution. See Br. of Amicus Curiae of National Employment Law Project, et al., at 4-12. The case law substantiates these fears. ... Even documented workers may be chilled by the type of discovery at issue here. Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding. Any of these individuals, failing to understand the relationship between their litigation and immigration rights, might chose to forego civil rights litigation.

364 F.3d 1057, 1064-65 (9th Cir. 2004); see also Flores, 233 F.Supp.2d at 464-65 n.2 (citations omitted) ("[i]f forced to disclose their immigration status, most undocumented aliens would withdraw their claims and refrain from bringing an action such as this in the first instance. This would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation."); City of Joliet, 239 F.R.D. at 493 (the "the intimidating effect of such [discovery] is hard to exaggerate.").

Like the plaintiffs in Reyes, Rivera, Flores and the other cases cited above, Ms. Zirintusa is vulnerable foreign plaintiff whose immigration status warrants heightened protection. The Defendants already have attempted to use Ms. Zirintusa's immigration status as a weapon to defeat her claims and intimidate her; this Court already has prevented the former. Mem. Op. (Jan. 2, 2007) at 12. The Court may "make any order which justice required to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Federal Rule of Civil Procedure 26(c). That standard is satisfied here, and a protective order is warranted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a Protective Order should be granted.

Dated: October 26, 2007               Respectfully submitted,

                                      _____//s// Alex C. Lakatos_____
                                      Alex C. Lakatos, D.C. Bar No. 453763
                                      MAYER, BROWN, ROWE & MAW LLP
                                      1909 K Street, N.W.
                                      Washington, D.C. 20006-1101
                                      Tel: (202) 263-3000
                                      alakatos@mayerbrownrowe.com

                                      *Attorney for Plaintiff Idah Zirintusa*

## CERTIFICATE OF SERVICE

I, Alex C. Lakatos, hereby certify that on October 26, 2007, I caused a true and correct copy of (1) the Motion For Protective Order Barring Discovery Plaintiff Idah Zirintusa Immigration Status; (2) the Proposed Order Barring Discovery Of Plaintiff Idah Zirintusa's Immigration Status, and (3) the Motion For Leave To File Certain Documents Under Seal to be filed electronically and served electronically through the court's CM/ECF System; and a true and correct copy of a Memorandum Of Facts And Law In Support Of A Motion For Protective Order Barring Discovery Of Idah Zirintusa's Immigration Status and a true and correct copy of Declaration Of Alex C. Lakatos in Support Thereof, to be filed by first class mail upon the following:

J. Michael Hannon
Hannon Law Group, LLP
1901 18th Street, NW
Washington, DC 20009

Dated: October 26, 2007

Respectfully submitted,

/s/ Alex C. Lakatos

Alex C. Lakatos

DC Bar No: 453763

MAYER BROWN LLP
1909 K Street N.W.,
Washington, D.C. 20006-1101

*Counsel for Ms. Idah Zirintisa.*