Redactions pursuant to
June 12, 2007 Minute
Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IDAH ZIRINTUSA | ) | |
| | ) | |
| The Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROSA WHITAKER, et. al. | ) | Civil Action No. 05-1738 (EGS/JMF) |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF IDAH ZIRINTUSA'S MEMORANDUM OF FACTS AND LAW
## IN SUPPORT OF HER MOTION FOR DISCOVERY SANCTIONS AND TO COMPEL

### INTRODUCTION

From the outset of this case, rather than simply defend on the merits, defendants have engaged in a consistent pattern of stonewalling the progress of the action and evading discovery. Defendants already have (1) committed a vehicular hit-and-run assault on a process server in order to avoid service in this matter;[1] and (2) been sanctioned by the Court for avoiding their discovery obligations.[2] Unfortunately, that pattern has continued. As set forth below,

---

[1] Plaintiff's Motion to Hold Defendant Rosa Whitaker in Contempt for Extraordinary Evasion of Process based on the hit-and-run assault is at Docket Entry 8. In support of that Motion, Plaintiff submitted the Affidavit of Daniel Portnoy, the process server whom Ms. Whitaker hit (Docket Entry 8, Attachment 4) and the Affidavit of Luis Gonzales (Docket Entry 8, Attachment 6), a neutral witness who confirmed the hit-and-run. Ms. Whitaker did not submit a contrary affidavit in her Opposition. (Docket Entry 11). This Court ordered that the Contempt Motion be "denied without prejudice to reconsideration upon final resolution of this case, either by way of settlement or judgment." (Minute Order, Jan. 17, 2006). Plaintiff respectfully urges this Court to consider the Motion for Contempt at this time, in conjunction with Defendants' other misconduct, in determining the sanctions to impose. See Cross v. General Motors Corp., 721 F.2d 1152 (8th Cir. 1983) (holding that district court properly considered "full record" and "cumulative effect" of misconduct in granting discovery sanctions).

[2] This Court's Order, granting Plaintiff's Motion to Compel and ordering that fees and costs be imposed upon Defendant Whitaker's business, The Whitaker Group ("TWG"), provides: "[T]he Court finds that TWG's attempts to impede discovery in this case cannot be tolerated. … In this case, the Court finds that the plaintiff attempted to take a deposition in good faith, that there is no justification for TWG's obstruction, and that there are no other circumstances that would make an award of both attorney's fees for litigating the motion to compel and costs and fees associated with the need to take a second deposition unjust." (Docket Entry 53, at 4-5).

defendants willfully have destroyed some of the most important evidence in this case and have flouted crucial discovery rules. Based on this pattern of misconduct that cannot be cured by monetary sanctions alone, the Plaintiff seeks, inter alia: (1) an appropriate preclusive order that certain "facts shall be taken as established for the purpose of the action," (2) an adverse inference instruction, and (3) monetary sanctions. See Fed. R. Civ. P. 37(b).

## ARGUMENT

### I. Defendant Harris Should Be Sanctioned For Deliberately Destroying the Most Crucial Evidence in the Case Against Her.

The dispute in this Fair Labor Standard Act ("FLSA") case against Ms. Harris centers on how much housework Ms. Zirintusa performed for Ms. Harris, and what Ms. Zirintusa has a right under the law to be paid for that work.

## REDACTED

However, at her deposition, Ms. Harris admitted that Ms. Zirintusa

---

[3] Relevant excepts from the transcript of the deposition of Plaintiff Idah Zirintusa are attached as Ex. 15 to the Declaration of Alex Lakatos, Esq. (Oct. 26, 2007) ("Lakatos Decl.").
[4] Lakatos Decl. Ex. 16 (Defendant Harris's Response to Plaintiff's First Request for Admissions).
[5] Relevant excepts from the two transcripts of the deposition of Defendant Pauline Harris are attached at Lakatos Decl. Ex. 18.

# REDACTED

Thus, their dispute centers not on <u>whether</u> Ms. Zirintusa worked, but rather on <u>how much</u> she worked, what her work included, and what, if anything, Ms. Zirintusa received in exchange, e.g., purported "gifts" of discarded clothing slated for removal from Ms. Harris's home.

This controversy is a classic "he-said she-said" dispute, with both parties offering conflicting testimony, and neither party having deposed a "tie-breaking" witness who saw how much Ms. Zirintusa worked, what she did, or whether she received anything of value in kind. The only physical or documentary evidence that could alter the balance – and thus, the most vital physical evidence in the case against Ms. Harris – is evidence concerning the condition of Ms. Harris's house. But, as set forth in more detail below, Ms. Harris willfully destroyed that evidence in a deliberate effort to thwart Plaintiff's repeated, proper efforts to discover it.

A.   **Ms. Harris's Destruction of Evidence Was Willful.**

Because the evidence in Ms. Harris's home was crucial, Plaintiff sought to obtain it at the earliest opportunity, and repeatedly made efforts to obtain it. On January 29, 2007, Plaintiff e-mailed Defendant to request dates for entry onto Ms. Harris's land.[6] On January 31, Plaintiff still had not heard back, so she left a voicemail and again e-mailed to request dates.[7] On February 1, when Plaintiff still had not heard back, Plaintiff noticed the entry onto Ms. Harris's land for March 9, 2007, giving Defendant Harris over 30 days notice.[8] (Plaintiff served a Rule 34(a)(2) notice for entry onto Ms. Whitaker's land at the same time; however, Defendants

---

[6] See Lakatos Decl. Ex. 1 (Jan. 29, 2007 e-mail from A. Lakatos to J. Barnes).
[7] See Lakatos Decl. Ex. 2 (Jan. 31, 2007, e-mail from A. Lakatos to J. Barnes).
[8] See Lakatos Decl. Ex. 3 (Plaintiff's Request for Entry Upon Defendant Harris's Land (Feb. 1, 2007)).

responded that Ms. Whitaker already had sold the property and moved.[9]) Defendant Harris never served any objections to the Plaintiffs' Request for Entry onto Land. To the contrary, on February 23, 2007, Defendant Harris wrote back to confirm that she would agree to the Entry onto Land at the requested time: "Ms. Harris will make her property available, as requested, exterior and interior, at 9:00 a.m. on 9 March 2007."[10] Plaintiff's counsel responded the same day: "With regard to the Rule 34(a)(2) Request directed to Ms. Harris, I will plan to arrive at Ms. Harris's property at 9:00 a.m. on March 9, as per your agreement."[11]

Then, on March 5, 2007, just days before March 9, 2007, when the Entry onto Land was scheduled and agreed, and weeks after Defendant Harris had confirmed the March 9 entry date, Defendant Harris's counsel wrote to cancel the discovery unilaterally, without any explanation: "It turns out that Ms. Harris is not able to be present on March 9th at 9:00 a.m. for the home inspection. Can you supply me with another date(s) that I can put to her for this purpose?"[12]

Because obtaining this evidence was critical to the Plaintiff's case, Ms. Zirintusa's counsel immediately wrote back on March 6, 2007, proposing two alternate dates:

> I note that the March 9, 2007 entry onto land has been scheduled for over a month and that you have confirmed that date several times. Nevertheless, as an accommodation to you and your client, we would agree to meet for the entry and inspection on Thursday, March 8, 2007, at 9:00 a.m. or Monday, March 12, 2007, at 9:00 a.m. Please tell me which you would prefer.[13]

Defendant Harris responded the same day. Not only did Defendant Harris refuse the dates the Plaintiff proposed (despite having requested a proposal), she moreover declined to provide any alternate dates of her own. Instead, her counsel made an unwarranted ad hominem

---

[9] See Lakatos Decl. Ex. 4 (Feb. 23, 2007 e-mail from J. Barnes to A. Lakatos).
[10] Id.
[11] See Lakatos Decl. Ex. 5 (Feb. 23, 2007 e-mail from A. Lakatos to J. Barnes).
[12] See Lakatos Decl. Ex. 6 (March 5, 2007, e-mail from J. Barnes to A. Lakatos).
[13] See Lakatos Decl. Ex. 7 (March 6, 2007, e-mail from A. Lakatos to J. Barnes).

attack on Plaintiff's counsel: "Attorney Lakatos, I must say, I have never encountered a more discourteous attorney in my years of practicing law. My client questions the relevancy of the inspection, considers it abusive and harassing and is unable to affirm any of the dates you indicate."[14]

Accordingly, on March 6, 2007, counsel for Plaintiff wrote back again to obtain a date for the Entry onto Land:

> You responded that neither of those dates is acceptable, but you have yet to propose a date that you and your client would prefer. As the dates I proposed are unacceptable to you (again, for reasons you do not explain), please indicate on what date you and your client are prepared to go forward with the Rule 34(a)(2) request.[15]

On March 7, 2007, Defendant Harris wrote back. Although Defendant Harris "questioned" the purpose of the Entry onto Land, she did not serve any objections. Instead, she agreed that she would revert to Plaintiff with an appropriate date:

> Attorney Lakatos, <u>I shall inquire about other dates</u>. It <u>seems</u> Ms. Harris <u>questions</u> the need for such an inspection. We are willing to stipulate that Plaintiff was in Ms. Harris' home on several occasions and to make other relevant and reasonable stipulations in this connection (obviously, with the exception of stipulations that run counter to our position in this case), but the relevance and need for the inspection remains a question for Ms. Harris. <u>Nonetheless, as stated, I shall inquire about other dates.</u>[16]

Nine days later, on March 16, 2007, when Plaintiff still had not heard back from Defendant Harris with any of the dates that she had promised to provide, Plaintiff wrote again to Defendant Harris to inquire when she could conduct the Entry onto Land:

> I still have not heard back from you on the dates you promised to provide. It is not acceptable for defendants to avoid their discovery obligations by unilaterally canceling previously agreed upon dates and <u>simply failing to reschedule as</u>

---

[14] See Lakatos Decl. Ex. 8 (March 6, 2007, e-mail from J. Barnes to A. Lakatos).
[15] See Lakatos Decl. Ex. 9 (March 6, 2007 e-mail from A. Lakatos to J. Barnes).
[16] See Lakatos Decl. Ex. 10 (March 7, 2007 e-mail from J. Barnes to A. Lakatos (emphasis added)).

promised. Please be advised that if we have not agreed upon a date for the entry onto land before the end of March, plaintiff will move to compel.[17]

Plaintiff wrote again to inquire about the situation on May 8, 2007 and June 13, 2007.[18]

Then, on June 15, 2007, Defendant Harris for the first time informed Plaintiff that she had sold her house.[19] **REDACTED**

In sum, Plaintiff Zirintusa served a proper Rule 34(a)(2) request for the entry onto Ms. Harris land, and followed-up in over half a dozen written communications. Ms. Harris never filed an objection. To the contrary, she repeatedly made false promises that she would provide access to her home, when in fact, she was merely stalling discovery until she could move out of her house and destroy the evidence in it.

During Ms. Harris's deposition, Plaintiff learned the full story. Defendant Harris sold her

In short, on one hand, she made false promises that she would honor her discovery obligations to forestall any action by the Plaintiff, while at the same time, she                                                      There can no doubt Ms. Harris acted willfully to thwart Plaintiff's discovery.

**B.     The Evidence At Issue Was Critical.**

An inspection of Ms. Harris' property would have provided Plaintiff with the opportunity

---

[17] See Lakatos Decl. Ex. 11 (March 16, 2007 e-mail from A. Lakatos to J. Barnes) (emphasis added).
[18] See Lakatos Decl. Ex. 12 (May 8, 2007 e-mail from A. Lakatos to T. Valancius, Esq., counsel for Defendants); id. Exhibit 13 (June 13, 2007, e-mail from A. Lakatos to J.M. Hannon, Esq., counsel for Defendants).
[19] See Lakatos Decl. Ex. 14 (June 15, 2007 e-mail from J.M. Hannon to A. Lakatos).

to take photos and measurements showing the appearance and contents of Ms. Harris's home, which would show the jury several crucial things. One, the quantity and quality of Ms. Harris's personal belongings and furniture, plus the manner in which Ms. Harris kept, organized and cleaned the house and her possessions. All of that would demonstrate, among other things, why a housekeeper was necessary and how much housework needed to be done. Two, how the house appeared after Ms. Zirintusa finished **REDACTED** This would support Plaintiff's position that Ms. Harris's testimony downplayed the work that Ms. Zirintusa performed. Three, the truth of Ms. Zirintusa's testimony, e.g., if Ms. Zirintusa testified that she organized the silverware in a particular fashion, or polished particular pairs of Ms. Harris's shoes, photographic evidence could confirm the veracity of her testimony.

Moreover, examination of Ms. Harris's home was vital to Plaintiff's trial preparation. Without being able to examine exactly what it was that Ms. Zirintusa cleaned and organized, Ms. Zirintusa's counsel was deprived of the opportunity to learn the facts necessary to prosecute the case effectively, including knowing what questions to ask on cross and direct examination.

### C.   This Court Should Impose Preclusive Sanctions, an Adverse Inference Instruction and Monetary Sanctions.

A district court may order sanctions for misconduct relating to the destruction of evidence either pursuant to either Fed. R. Civ. P. 37(b)(2) or its inherent power to "protect [its] integrity and prevent abuses of the judicial process." Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (discussing appropriateness of sanctions where defendant failed to preserve emails). Such sanctions may include "taking certain facts as established, prohibiting the introduction of certain evidence and/or rendering a judgment of default" and issuing an adverse inference instruction to the jury. Fed. R. Civ. P. 37(b)(2)(A).

Where, as here, the discovery violations are in bad faith, it is appropriate for the Court to deem certain facts to be established. See, e.g., Hilao v. Estate of Marcos, 103 F.3d 762 (9th Cir. 1996) (affirming imposition of sanctions on defendant that established as true certain facts concerning defendant's ownership and transfer of certain assets, based on defendant's failure to appear, testify and produce documents at their depositions); NLRB v. Numark Int'l, Inc., No. 2:05-MC-14-RL-PRC, 2007 WL 2461648 (N.D. Ind. Aug. 27, 2007) (in labor dispute, establishing facts concerning, among other things, where certain employees worked and who supervised them, as penalty for willful misconduct in failing to answer interrogatories). Even in the absence of bad faith, preclusive sanctions are appropriately imposed for the destruction of evidence. See In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1066-1067 (N.D. Cal. 2006) (explaining that a duty to preserve evidence attaches "when a party should have known that the evidence may be relevant to future litigation," and holding that "some degree" of preclusion sanctions was warranted, although plaintiffs had not shown that defendant acted willfully).

Here, Plaintiff seeks an order establishing, as fact, that Ms. Zirintusa worked for Defendant Harris as described in Ms. Zirintusa's Complaint, i.e., that Ms. Zirintusa worked as a housekeeper for Ms. Harris 12 hours a day, 1 day a week, for 17 weeks. (Compl. ¶ 34). This sanction is closely tailored to Ms. Harris's willful destruction of evidence that Ms. Zirintusa would have used to prove the foregoing point, and is not unduly harsh because Ms. Harris already concedes **REDACTED**

See United States v. Philip Morris USA Inc., 327 F. Supp. 2d 21, 25 (D.D.C. 2004) (explaining that the "choice of sanctions should be guided by the 'concept of

proportionality' between offense and sanction.") (citing Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996)).

In Philip Morris, defendant Philip Morris's automatic e-mail system continued deleting e-mails for two months after Philip Morris had learned of the problem, despite the fact that Philip Morris was required to preserve its e-mails for discovery. The Philip Morris decision noted the irreparable damage caused by such destruction of evidence: "you cannot recreate what has been destroyed. ... Because we do not know what has been destroyed, it is impossible to assess to accurately assess what harm has been done to the [plaintiff] and what prejudice it has suffered." 327 F. Supp. 2d at 25. Crafting a remedy to fit the wrong, the Court held that all witnesses, including defendant's proposed expert, who had failed to comply with Philip Morris' internal document control policy, would be barred from giving testimony. Id.

In Napster, Inc., the Court found that one of the defendants had deleted communications that it had a duty to preserve, knowing that such a duty existed, which amounted to "gross negligence, if not willfulness." 462 F. Supp. 2d. at 1078. The court could not determine the exact degree of prejudice that plaintiffs suffered, because the number of e-mails destroyed was unknown, and there was evidence that the number destroyed was small. Id. at 1077. Based on this, the Court nevertheless held that there was a sufficient basis to impose "some" preclusive sanctions and an adverse inference instruction. Id. at 1078.

Here, Ms. Harris's destruction of evidence was more severe than the destruction in Napster, Inc., because it (1) was willful, (2) involved all of the key physical evidence (not just some of it), and (3) involved evidence that was known to be the most important to the claims against Defendant Harris. For similar reasons, Ms. Harris's destruction was more severe than the

destruction in <u>Philip Morris</u>. Yet Ms. Zirintusa seeks only the limited establishment of facts, i.e., the minimum remedy that will cure the damage done.

In addition, in <u>Philip Morris</u>, the court imposed a monetary sanction of $2.75 million, explaining that defendant's "reckless disregard and gross indifference" to its "preservation obligations" mandated sanctions in order to deter Philip Morris and others from engaging in such conduct in the future. 326 F. Supp. 2d at 26. Here, Ms. Harris's conduct went beyond "reckless disregard;" her conduct was willful. Accordingly, Plaintiff seeks monetary sanctions sufficient to deter such conduct by Ms. Harris and others going forward, in the amount of the greater of $10,000 or 5% of the profits Ms. Harris realized from the sale of house during the period when Ms. Zirintusa lawfully was seeking to inspect it. Ms. Zirintusa also seeks her costs for bringing this motion and for the time expended seeking to enter Ms. Harris's land pursuant to Rule 34(a)(2), only to be stymied by Ms. Harris's misconduct.

## II. Defendant Whitaker Refused To Sign Her Interrogatory Answers

On December 16, 2005, Plaintiff Zirintusa served her first set of Interrogatories on Defendant Whitaker. On February 2, 2007, Defendant Whitaker served her Answers.[21] Defendant Whitaker's counsel at the time, Johnny Barnes, Esq., signed Ms. Whitaker's Interrogatory Answers for her, so that the signature line read:

Executed on 1 February 2007:      /s/
                                  Rosa Whitaker, Authorized by E-Mail

Subsequently, Ms. Whitaker hired new counsel and Mr. Barnes withdrew from the representation. (Docket Entries 47, 51, 57). After Ms. Whitaker hired new counsel, her defense strategy changed. Accordingly, she testified that **REDACTED**

---

[21] See Lakatos Decl. Ex. 19 (Whitaker's Answer to Plaintiff's First Interrogatories (Feb. 2, 2007)).

**REDACTED** She also testified that

Under Rule 33(b)(2), "the answers [to interrogatories] are to be signed by the person making them, and the objections signed by the attorney making them." Accordingly, after Ms. Whitaker's deposition, Ms. Zirintusa wrote to Ms. Whitaker to request that she comply with Rule 33(b)(2) by holographically signing her February 1, 2007 interrogatory answers.[23] Ms. Whitaker, however, refused to so. The appropriate remedy when a party or an attorney refuses to sign interrogatories is a court order compelling them to do so. See CytoSport, Inc. v. Natures Best, Inc., No. CIV S-06-1799 DFL EFB, 2007 WL 1040993 (E.D. Cal. April 4, 2007) ("If in fact counsel did not sign the responses, the court hereby orders it to do so"); Huertas v. City of Camden, Civil No. 03-4025(RMB), 2007 WL 1038889 (D.N.J. Mar. 28 2007) ("defense counsel is Ordered to sign the objections pursuant to Fed. R. Civ. P. 33(b)(2)); Dotson v. Bravo, 202 F.R.D. 559 (N.D. Ill. 2001) ("Rule 33(b)(2) … requires that answers to interrogatories 'are to be signed by the person making them' (emphasis added). Until he was compelled by motion to do so, Dotson did not sign any verification or certification of his interrogatory answers." (emphasis in original)). Accordingly, Plaintiff moves this Court to compel Ms. Whitaker to sign her interrogatory answers.[24]

### III. Other Discovery Rule Violations

#### A. Failure to Produce Documents

On August 2, 2007, Plaintiff served her Fourth Set of Request for Document Production

---

[22] Relevant excepts from the Whitaker Deposition are at Lakatos Decl. Ex. 20.
[23] See Lakatos Decl. Ex. 21 (July 2, 2007 Letter from A. Lakatos to J. Barnes and J.M. Hannon).
[24] Defendant Rosa Whitaker's Responses and Objections to Plaintiff's Request for Admissions (Feb. 1, 2007) also are signed "Rosa Whitaker/Authorized by E-mail," rather than by hand. (Lakatos Decl. Ex. 22). Ms. Whitaker should be ordered to sign that signature holographically, unless she indicates that she does not contest that she authorized her signature to electronically as indicated.

on Defendant Rosa Whitaker. On October 1, 2007, Defendant served her Response thereto.[25] Therein, Ms. Whitaker committed to provide

**REDACTED**

On October 4, 2007 and October 24, 2007, Plaintiff wrote to inquire about when Ms. Whitaker actually would produce the foregoing documents (given that she had agreed that she would do so), but has not heard back.[27] Accordingly, to the extent that Defendants have not produced documents they agreed to produce in their Responses to Plaintiff's Fourth Requests for Production, Plaintiff moves to compel their production.[28]

### B. Failure to Attend Scheduled Deposition

On August 14, 2007, counsel for Defendants failed to attend a deposition that he had scheduled, causing Plaintiff's counsel to incur fees and cost making an unnecessary trip to Rockville. Plaintiff wrote to Defendants to request compensation pursuant to Fed. R. Civ. P. 30(g).[29] The parties have agreed that they are willing to postpone resolution of this dispute until the merits are resolved.[30] Accordingly, if the Court is amenable to that approach, the Plaintiff would request that leave of Court to raise this issue at that time. If the Court denies that request, Plaintiff asks that the Court resolve the matter now.

---

[25] Lakatos Decl. Ex. 23 (Defendant Rosa Whitaker's Responses To Plaintiff's Fourth Set of Documents Requests (Oct. 1, 2007).
[26] Id. at Responses 10, 11, 14.
[27] See Lakatos Decl. Ex. 24 (Oct. 4, 2007 e-mail from A. Lakatos to M. Hannon; Oct. 24 e-mail from A. Lakatos to J.M. Hannon).
[28] On September 10, 2007, following the second deposition of TWG (that this Court ordered occur because TWG failed to honor its obligations to answer questions posed in the first deposition), Plaintiff served a follow-up subpeona on TWG, with a return date of September 14, 2007. TWG produced certain responsive documents for the first time on October 25, 2007, at 6:31 p.m., just before the Court's cut off for discovery motions. Accordingly, Defendant has not had the opportunity to review TWG's compliance with the subpoena and reserves the right to contest TWG's objections and move to compel further production if the production is inadequate.
[29] See Lakatos Decl. Ex. 25 (Aug. 17, 2007, Letter from S. Lieberman, counsel for Plaintiff, to J.M. Hannon).
[30] See Lakatos Decl. Ex. 26 (Oct. 24, 2007 e-mail from A. Lakatos to J.M. Hannon); id. Ex. 27 (Oct. 26, 2007 e-mail from J.M. Hannon to A. Lakatos).

C.    **Inadvertent Filing.**

On September 14, 2007, the Defendants filed with the Court a Rule 26(a)(2) Statement (Docket Entry 63) that, under Fed. R. Civ. P. 5(d), is the type of discovery document that "must not be filed until they are used in the proceeding or the court orders filing …" Defendants have consented to the withdrawal of that filing, and the Plaintiff accordingly now moves that it be stricken from the docket.[31]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Sanctions and To Compel should be granted.

Dated:  October 26, 2007                                Respectfully submitted,

                                                        ___/s/ Alex C. Lakatos___
                                                        Alex C. Lakatos
                                                        DC Bar No: 453763
                                                        MAYER BROWN LLP
                                                        1909 K Street N.W.,
                                                        Washington, D.C. 20006-1101

                                                        *Counsel for Ms. Idah Zirintisa.*

---

[31] Lakatos Decl. Ex. 28.

## CERTIFICATE OF SERVICE

I, Alex C. Lakatos, hereby certify that on October 26, 2007, I caused a true and correct copy of (1) the Motion For Discovery Sanctions and To Compel; (2) the Proposed Order entering discovery sanctions and order to compel, and (3) the Motion For Leave To File Certain Documents Under Seal to be filed electronically and served electronically through the court's CM/ECF System; and a true and correct copy of a Memorandum Of Facts And Law In Support Of A Motion For Sanctions and a true and correct copy of Declaration Of Alex C. Lakatos in Support Thereof, to be filed by first class mail upon the following:

J. Michael Hannon
Hannon Law Group, LLP
1901 18th Street, NW
Washington, DC 20009

Dated: October 26, 2007

Respectfully submitted,

   /s/  Alex C. Lakatos   

Alex C. Lakatos

DC Bar No: 453763

MAYER BROWN LLP
1909 K Street N.W.,
Washington, D.C. 20006-1101

*Counsel for Ms. Idah Zirintisa.*