UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDAH ZIRINTUSA | ) |
|         The Plaintiff, | ) |
| v. | ) |
| ROSA WHITAKER, et. al. | ) Civil Action No. 05-1738 (EGS/JMF) |
|         Defendants. | ) |

**PLAINTIFF IDAH ZIRINTUSA'S REPLY MEMORANDUM OF FACTS AND LAW IN SUPPORT OF HER MOTION FOR DISCOVERY SANCTIONS AND TO COMPEL**

Plaintiff Zirintusa submits the following Reply in support of her Memorandum Of Facts And Law In Support Of Her Motion For Discovery Sanctions And To Compel (the "Motion").

## ARGUMENT

**I. Sanctions Are Warranted against Ms. Harris for Willfully Thwarting Ms. Zirintusa's 34(a)(2) Request for Entry Onto Land.**

    **A. Defendant Harris is Wrong – A Motion to Compel or a Discovery Order is Not a Pre-Requisite For Sanctions.**

The reason that Plaintiff did not move to Compel entry onto Ms. Harris's land is that Ms. Harris repeatedly promised to afford the Plaintiff access to her house, making such a motion unnecessary, until Ms. Harris was able secretly to move her possessions and sell her house, making such a motion pointless. (Motion at 3-6). Defendant Harris now tries to turn her misconduct to her own advantage by arguing, incorrectly, that Plaintiff is not entitled to sanctions because "[t]he pre-requisites for imposition of Rule 37 have not been met." (Opp. Br. at 2, 3-5). But Ms. Harris is wrong on the law.

The court's "inherent power" to "protect [its] integrity and prevent abuses of the judicial process" permits parties' request for sanctions <u>in the absence</u> of a violation of a discovery order

1

and without first filing a motion to compel.  See Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (stating that the court has both the power to impose sanctions under Rule 37, triggered by the violation of a discovery order, and by the court's "inherent power").  The "inherent power" exists independently of the court's power to issue sanctions pursuant to the Federal Rules of Civil Procedure.  Zenian v. District of Columbia, 283 F.Supp. 2d 36, 38 (D.D.C. 2003) (M.J., Facciola); Lebron v. Powell, 217 F.R.D. 72, 77 (D.D.C. 2003) (M.J., Facciola).[1]  This is because the court's inherent powers are broad and not governed by rules or statutes.  Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980).

In Roadway Express, the Supreme Court acknowledged the inherent powers of courts from other statutory authority when it discussed the power of a court to dismiss a lawsuit sua sponte.  See Roadway Express, 447 U.S. at 765.  The Court stated that its inherent authority to "levy sanctions in response to abusive litigation practices" was not limited to "to instances where a defendant moves for [relief].  The authority . . . has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs . . . ."  Id.  Here, Plaintiff moved for sanctions both pursuant to Rule 37 and the inherent authority of this Court.  (Motion at 7).  Consequently, Plaintiff is not precluded from requesting sanctions in the absence of a discovery order or the technical requirements of Rule 37.  Moreover, this Court's use of its inherent power to impose sanctions is particularly appropriate in this case to prevent Ms. Harris from using her misconduct to insulate herself from penalty and from further profiting from her misdeeds.

---

[1] While both Zenian and Lebron involve violations of discovery orders, these were not pre-requisites to relief under the courts' inherent powers.  Zenian, 283 F. Supp. 2d at 38; Lebron, 217 F.R.D. at 77.

**B.     Defendant Harris's Failure to Permit the Inspection of Her Home Was Willful and Knowing**

As outlined in Plaintiff's moving brief (Motion at 3-6), Plaintiff made no less than <u>nine</u> attempts to inspect Ms. Harris' property. These attempts were met with cancellations, false promises to reschedule, <u>ad</u> <u>hominem</u> attacks, and other stonewalling tactics:

1. *January 29, 2007* – Plaintiff e-mails defense counsel in an effort to obtain mutually convenient dates for entry onto Ms. Harris's land.

2. *January 31, 2007* – Plaintiff leaves voice message and sends another e-mail to request dates.

3. *February 1, 2007* – Plaintiff serves a notice for the entry onto Ms. Harris's land from March 9, 2007, giving Defendant Harris over 30 days notice.

4. *February 23, 2007* – Plaintiff, responding to an e-mail from Defendant Harris promising to make her home available on March 9, 2007, confirms that date for entry onto Ms. Harris's land.

5. *March 6, 2007* – Plaintiff, responding to a last minute e-mail from Defendant Harris cancelling the March 9, 2007 entry date, attempts to reschedule for March 8 or March 12. The next day, Ms. Harris's counsel declines those dates.

6. *March 6, 2007* – Plaintiff suggests that Ms. Harris supply alternative dates. The next day, Ms. Harris's counsel wrote back, promising to "inquire about other dates."

7. *March 16, 2007* – After hearing no response from Ms. Harris regarding the alternative dates she had promised to provide, Plaintiff again presses for an opportunity to enter upon Ms. Harris's land.

8. *May 8, 2007* – Plaintiff inquires about the status of her request to enter Harris's land.

9. *June 13, 2007* – Plaintiff inquires about the status of the request.

(Nov. 8, 2007, Lakatos Decl. Exs. 1-3, 5, 7, 9, 11-13). Despite the record above that demonstrates Ms. Harris's awareness of Plaintiffs' Notice for Entry Onto Land and her blatant disregard for this request, she maintains that her repeated refusal to comply with the notice was not an effort "to thwart the Plaintiff's discovery" and that "Plaintiff clearly fabricated this allegation and manipulated the facts." (Opp. At 5-6.)

3

First, Plaintiff did not "fabricate" the facts. Plaintiff noticed the entry onto land and served it upon Defendant Harris on February 1, 2007. (Nov. 8, 2007, Lakatos Decl. Ex. 3). Plaintiff spent the next several months, until June 13, attempting to gain entry onto Harris's land. (Id. Exs. 4-13.) Defendant Harris held herself out as being able to accommodate this request several times through the month of March, but arbitrarily cancelled, falsely promised to reschedule, and failed to do so. In the meantime, the documents and testimony show that

**REDACTED**

All of this occurred while Ms. Harris had knowledge of Plaintiff's outstanding request to enter onto her land.

Second, Defendant Harris's conduct was willful and knowing. Although Ms. Harris denies being aware that her attorney did not honor Plaintiff's notice (Opp. at 6), she admits that

**REDACTED**

(Id.) This feeble attempt to rebut the destruction of significant evidence in this case hardly absolves her from blame. Indeed it establishes Harris's willfulness because it shows the following: (1) that she knew she was selling her house; (2) that she knew of Plaintiff's request to enter her land; (3) that she knew that the sale of her house overlapped with the notice of entry onto her land; and (4) that she did not affirmatively instruct her attorney to allow the inspection.

4

Finally, the bad behavior of Ms. Harris's counsel does protect her from bearing the consequences of his poor conduct.[2] The ill-effects of defense counsel's actions should be counted against Ms. Harris and not unfairly imposed upon Plaintiff. In the seminal case, Link v. Wabash Railroad Co., the Supreme Court adopted this reasoning. The Court did not shy away from exacting the harshest penalty – dismissal – on a plaintiff based upon the conduct of the plaintiff's own attorney. 370 U.S. 626, 633-34 (1962). The Court stated

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Id. The Court also noted that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suite for malpractice" and that the attorney's "sins" should not be "visited" upon the opposing party. Id. at 634, n. 10; see also Anderson v. Chevron Corp., 190 F.R.D. 5, 10 (D.D.C. 1999) (citing Link and upholding dismissal of action based on plaintiff attorney's misconduct); Tucker v. District of Columbia, 115 F.R.D. 493, 496 (D.D.C. 1987) (same).[3] Here, Defendant Harris should not be allowed to avoid sanctions for the deliberate destruction of crucial evidence in this case merely because her counsel played a role in helping her to avoid her discovery obligations.

---

[2] In assessing the conduct of Ms. Harris and her counsel, it bears noting that Ms. Harris's counsel may have been involved in the sale of her home and that Defendant Harris may be concealing this fact. On November 8, 2007, Plaintiff wrote to Defendant Harris's counsel: "I note that you have redacted a significant portion of Ms. Harris's home sale documents …. Would you please confirm that Mr. Barnes [Ms. Harris's litigation counsel at the time] did not represent Ms. Harris in connection with the sale of her home, and was not otherwise involved in the sale?" See Declaration of A. Lakatos (Nov. 20, 2007), Ex. 1 (e-mail from A. Lakatos to J. Cruz, Hannon Law Group, Law Clerk (Nov. 8, 2007)). Counsel for Ms. Harris has not responded.

[3] A few cases have held that in exceptional circumstances, a party should not be accountable for the misdeeds of its attorney. See, e.g., L.P. Steuart, Inc. v. Matthews, 329 F.2d 234 (D.C. Cir. 1964); Jackson v. Washington Monthly Co., 569 F.2d 119 (D.C.Cir. 1977). Examples include instances where counsel actively mislead the client. Id. Defendant Harris has not alleged those circumstance here.

5

B.  **Ms. Harris's Testimony Shows That She Did Not Empty Her House Until <u>After</u> Plaintiff Sought to Discover Its Contents.**

Defendant Harris now asserts that she emptied her house, except for the furniture, before she received plaintiff's Rule 34(a)(2) notice for entry onto land on February 2, 2007. (Harris Affidavit ¶¶ 3-6)). But that is not what she said at deposition:

**REDACTED**

[4]

**REDACTED**

. Moreover, her attorney wrote to Plaintiff's counsel on March 6, 2007, to complain that Ms. Harris felt that the 34(a)(2) request was "harassing." (Nov. 8, 2007 Lakatos Dec., Ex. 7). It is hard fathom why Ms. Harris would feel this way if her house actually had been emptied and she had moved out by that time. Indeed, if Ms. Harris's house truly had been emptied when Plaintiff requested to enter it, why did Ms. Harris's counsel fail to mention that "fact" in any of his many e-mails postponing the discovery?

---

[4] <u>Id</u>. (Harris Dep. 114:7-115:6.).

6

C.   **Regardless of Defendant Harris's "Opinion" of the Value of the Evidence Sought, the Inspection of Harris's Home Was Critical to Plaintiff's Case.**

Defendant Harris asserts that an inspection of her house was unnecessary and "would not have produced any critical evidence." (Opp. at 6.) But the entire point of discovery is that Plaintiff is entitled to the evidence, not Defendants' self-serving characterization of what the evidence would have shown. And, if Ms. Harris truly believed the evidence in her home was not harmful to her position, one wonders why she was so reluctant to provide it.

In any event, Ms. Harris's arguments for why her house would not have yielded critical evidence do not withstand scrutiny. First, Ms. Harris asserts that "it is unreasonable to expect that over two years after the alleged events the house would remain the same" and that "there is no evidence that whatever the Plaintiff did in Ms. Harris's house … would still be apparent." (Motion at 6, 7 (emphasis added)). But Ms. Harris, who supplies an affidavit, does not assert

**REDACTED**

assuming arguendo that the photos did capture all of the fruits of Ms. Zirintusa's labors, the photos certainly would have captured her work environs.

Second, Defendant asserts that photographs of Ms. Harris's house would not be helpful to Plaintiff's case because "there is no benchmark to compare the condition of the house before and after" the Plaintiff worked there. (Opp. at 6.) But photographs of Harris's house in 2007 would have provided just that – a valuable benchmark, allowing parties and other witnesses to testify whether the pictures demonstrated the work Ms. Ziritinusa says she performed,[5] but that Ms. Harris denies ever occurred.

---

[5] Defendants argue that Ms. Zirintusa "does not testify that she engaged in these [housekeeping] activities." (Opp. Br. at 7). But the transcript Defendants rely upon demonstrates that Defendants never asked what Ms. Zirintusa did for Ms. Harris. (Opp. Br. Ex A).

7

Third, Ms. Harris concedes that "this dispute centers on whether an employment relationship existed and whether Plaintiff 'worked' at all. The plaintiff must demonstrate that an employment relationship existed between herself and Ms. Harris and that the Plaintiff has performed work, as defined by the [Fair Labor Standards Act] statute." (Motion at 8). Given Defendants own characterization of the central dispute in the case, photos of the Plaintiff's work environment, and her work itself, would have been key evidence.

## II.     Defendant Whitaker Should Be Required To Sign Her Interrogatories

Defendant Whitaker does not dispute that she failed to sign her February 2, 2007 interrogatories as required under Rule 33(b)(2), nor that the applicable case law establishes that an order, requiring her to sign, is the appropriate remedy. (Opp. Br. at 8-9). Instead, Ms. Whitaker argues that she should be excused from that obligation because, nine months later, on July 9, 2007 – after Ms. Whitaker had hired new counsel, developed a new defense theory, and had her deposition taken – she signed a new set of "amended" interrogatory answers that provided different responses to Plaintiff's original questions.[6] Defendant Whitaker cites no authority for her novel proposition that signing an alternate set of "amended" answers substitutes for signing the original ones. Indeed, discovery would serve little purpose if parties were permitted to give unsworn testimony at the outset and then recant later, depending on how the evidence developed. Accordingly, Defendant Whitaker should be ordered to do exactly what the Federal Rules of Civil Procedure required her to do in the first instance – sign her original interrogatory answers.

---

[6] Compare Whitaker's Answer to Plaintiff's First Interrogatories (Feb. 2, 2007) (attached as Exhibit 19 to the Lakatos Declaration in Support of the Motion) with Declaration of A. Lakatos (Nov. 20, 2007), Ex. 3 (Whitaker's Amended Answers to Plaintiff's First Set of Interrogatories (July 9, 2007)).

8

**III.     Other Issues**

Defendant Whitaker's Opposition represents that Defendant Whitaker has produced all of the documents that she has available. (Opp. Br. at 9). This is the first time that Defendant Whitaker has made such a representation. (Motion at 11-12). Plaintiff's prior inquiries fell on deaf ears. (Id.) Plaintiff should not be forced to move to compel to learn whether Defendant has produced the documents she committed to produce.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Sanctions and To Compel should be granted.

Dated:  November 20, 2007　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　___/s/  Alex C. Lakatos _ _ _ ____
　　　　　　　　　　　　　　　　　　　　　　Alex C. Lakatos
　　　　　　　　　　　　　　　　　　　　　　DC Bar No: 453763
　　　　　　　　　　　　　　　　　　　　　　Sharan E. Lieberman
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 502384
　　　　　　　　　　　　　　　　　　　　　　MAYER BROWN LLP
　　　　　　　　　　　　　　　　　　　　　　1909 K Street N.W.,
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006-1101

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Ms. Idah Zirintisa.*

## **CERTIFICATE OF SERVICE**

      I, Alex C. Lakatos, hereby certify that on November 20, 2007, I caused a true and correct copy of Plaintiff Idah Zirintusa's Reply Memorandum Of Facts And Law In Support Of A Motion For Discovery Sanctions And To Compel to be filed electronically and served electronically through the court's CM/ECF System and by first class mail upon the following:

J. Michael Hannon
Hannon Law Group, LLP
1901 18th Street, NW
Washington, DC  20009


Dated:  November 20, 2007                        Respectfully submitted,

                                                               ___/s/  Alex C. Lakatos_____
                                                                Alex C. Lakatos
                                                                DC Bar No: 453763
                                                                MAYER BROWN LLP
                                                                1909 K Street N.W.,
                                                                Washington, D.C. 20006-1101

                                                                *Counsel for Ms. Idah Zirintisa.*