UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IDAH ZIRINTUSA | ) | |
| | ) | |
| The Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROSA WHITAKER, et. al. | ) | Civil Action No. 05-1738 (EGS/JMF) |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S ACCOUNT OF COSTS AND FEES**

**INTRODUCTION**

In its Opposition to Plaintiff Zirintusa's Account of Costs and Fees, the Whitaker Group ("TWG") asks this Court to excuse it from paying the actual fees that Plaintiff Zirintusa's lawyers incurred due to TWG's repeated obstruction of Plaintiff's legitimate discovery requests during the deposition of its corporate representative. TWG should not be heard to contest any aspect of Plaintiff's Account of Costs and Fees because TWG continued to block Plaintiff's discovery efforts for a second time in the court ordered re-deposition of its 30(b)(6) designee, violating this Court's June 6, 2007, Order that directed TWG to supply a corporate representative "prepared to answer questions" on the topics that Plaintiff had noticed.

Moreover, TWG's primary "position" – that "the rates set forth by [Plaintiff's] counsel are unreasonable" (Opp. at 2) – is wrong. The rates sought are consistent with prevailing market rates set forth in the "Laffey Matrix" that TWG agrees is (and if fact cites as) the relevant benchmark. (Opp. at 2-4 (citing Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983) (creating Matrix), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984)). Accordingly, TWG should pay the full amount sought, plus, given its ongoing misconduct, Plaintiff's fees for

preparing this brief and the underlying Account of Costs and Fees.

## ARGUMENT

**I.  TWG violated this Court's June 6, 2007 Order, and the requirements of Rule 30(b)(6), by failing to prepare its corporate designee.**

In its June 6, 2007 Order, this Court, "find[ing] that TWG's attempts to impede discovery in this case cannot be tolerated," and that there was "no justification for TWG's obstruction," ordered TWG to submit to a second Rule 30(b)(6) to answer questions that TWG improperly had refused to answer the first time.  See Order at 4, 5 (Docket Entry 53).  This Court specifically instructed TWG to be fully prepared to answer questions on the topics that Plaintiff had specified in her Rule 30(b)(6) notice.  Id. at 5 (ordering "that TWG's 30(b)(6) designee shall be prepared to answer questions on all Topics of Inquiry listed in Attachment A to plaintiff's February 20, 2007 subpoena …." (emphasis added)).

The foregoing Order is fully consistent with Rule 30(b)(6), under which a corporation must provide a designee who is "thoroughly educated about the noticed deposition topics with respect to any and all facts known to [it] or its counsel." In re Vitamins Antitrust Litig., 216 F.R.D. 168, 172 (D.D.C. 2003) (imposing sanctions for failure to provide educated witness); U.S. ex rel. Fago v. M&T Mortgage Corp., 235 F.R.D. 11, 23 (D.D.C. 2006) (holding that "the responding entity must prepare the deponent so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity.").

Despite the fact that this Court already had sanctioned TWG for its improper failure to answer questions at its first deposition, and notwithstanding this Court's express Order that TWG be prepared to answer questions on identified topics at its second Rule 30(b)(6) deposition, TWG

did not prepare its designee to testify beyond her personal knowledge.  Indeed, TWG's designee testified that

REDACTED

.[1]  As a direct result, TWG's designee was not prepared or able to answer questions on topics that the Plaintiff had identified in her Rule 30(b)(6) Topics of Inquiry, the answers to which reasonably were known to TWG, either through its records or via its owner, defendant Rosa Whitaker.

TWG's designee testified that      REDACTED

.  Although TWG's designee was required to answer all topics Plaintiff had identified, she was unprepared to testify about virtually all events that occurred before her own start date.  For example, one of the topics noticed in the 30(b)(6) subpoena was "all [a]ssistance rendered or offered to Plaintiff by The Whitaker Group, including but not limited to assistance rendered in connection with The Whitaker Group Scholarship Program . . . ."  But

REDACTED

TWG's designee was also unprepared to answer questions regarding    REDACTED

---

[1]  Relevant excerpts from the TWG Rule 30(b)(6) deposition transcript ("Tr.") are attached to the December 12, 2007 Declaration of Alex C. Lakatos ("Lakatos Decl."), Ex 1.  See Tr. 8:17-9:1

REDACTED

REDACTED

²

REDACTED

.³

REDACTED

In addition, TWG's designee also failed to prepare by not reviewing documents relevant to topics that were noticed in the subpoena. One of the topics

REDACTED

---

² Lakatos Decl. Ex. 2 (Feb. 20, 2007 Rule 30(b)(6) subpoena).
³ See, e.g., Tr. 24:18-22          REDACTED

- 4 -

Courts have imposed strict sanctions on parties that fail to produce knowledgeable 30(b)(6) witnesses, particularly where, as here, they are repeat offenders. See, e.g., United States of America v. Philip Morris USA, Inc., No. Civ. A. 99-2496GK, 2005 WL 729434, at *2 (D.D.C. Mar. 28, 2005) (imposing monetary sanctions and preclusion of testimony on certain subject against corporation that "failed to produce a knowledgeable 30(b)(6) witness"); In re Vitamins, 216 F.R.D. at 174 (imposing sanctions and holding that "[m]onetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness"). In this case, given TWG's continued failure to honor its Rule 30(b)(6) obligations, this Court should impose the full amount of fees and costs originally sought, as well as the fees and cost associated with preparing the Account of Costs and Fees and with briefing this issue.

## II.     The Fees and Costs Sought are Fair and Reasonable

### 1.     The Hourly Rates Sought are Consistent with the Laffey Matrix.

TWG argues that hourly rates that Plaintiff's counsel charges are not reasonable, citing to Laffey, 572 F. Supp. at 371, and Covington v. District of Columbia, 57 F.3d 1101 (D.C. Cir. 1995), a leading Circuit Court decision endorsing the "Laffey Matrix" as a reliable benchmark to use in awarding attorneys' fees in labor-related disputes such as this one. (Opp. 2-3). As Covington explains, "plaintiffs may point to such evidence as an updated version of the Laffey matrix or the U.S. Attorney's Office matrix, or their own survey" to demonstrate prevailing market rates in the Washington, D.C. community. Id. at 1109; see also Northwest Coalition for Alternatives to Pesticides v. E.P.A., 421 F. Supp.2d 123, 129 (D.D.C. 2006) (holding that "[i]n this Circuit, fee awards may be calculated based on the Laffey Matrix because, in the absence of a specific sub-market analysis of attorney fees, 'use of the broad Laffey matrix may be by default

the most accurate evidence of a reasonable hourly rate.'" (quoting Covington, 57 F.3d. 1114 n.5)).

Despite TWG's reliance on Laffey and its progeny, any reference to the Laffey Matrix itself is conspicuously absent from TWG's Opposition. This defect is hardly surprising. Although TWG protests that the rates plaintiff has submitted "reach as high as $495.00 per hour for the work of partners," the Laffey Matrix shows that for similarly experienced attorneys, the prevailing market rate at the time that the relevant work was performed was $509.00/hour in the first half of 2007, and $536/hour in the second half – refuting TWG's argument that Plaintiff's submission is "inflated."[4] Applying Laffey Matrix rates, the total amount due to Plaintiff in connection with the motion to compel is       REDACTED

, and the total amount due to Plaintiff in connection with the second deposition of TWG is       REDACTED

.[5] In short, Mayer Brown's actual rates are consistent with the Laffey Matrix.

As between the Laffey Matrix hourly rates and the hourly rates that TWG asserts without support (Opp. at 4), it is plain that the Laffey Matrix should govern. Covington, 57 F.3d at 1109 (holding that "[o]nce the fee applicant has provided support for the requested rate, the burden falls on the [opposing party] to go forward with evidence that the rate is erroneous.") (citation omitted). Further, given that these fees are being imposed as sanctions, it would be reasonable to award Mayer Brown its customary rates       REDACTED

. See Fidelity and Deposit Co. of Md. v. Krebs Engineers, 859 F.2d 501, 509 (7th Cir. 1988) ("in determining the reasonableness of fees attorneys' fees imposed as

---

[4] See Lakatos Decl. ¶ 7.
[5] Id. ¶¶ 5-6 & Ex. 4, 5.

sanctions, the benefit of the doubt is normally resolved in favor of the innocent party" (citation omitted)).

Although TWG asserts that "the award of fees should not be used as a tool for punishment" (Opp. at 3), punishment (and deterrence) are exactly the point of sanctions. See Hamilton v. Ford Motor Co., 636 F.2d 745, 747 (D.C. Cir. 1980) (holding that "[t]he principal purpose of Rule 37(b) is punitive, not compensatory.").

REDACTED

In Poole v. Textron, 192 F.R.D. 494 (D. Md. 2000), the court explained that embracing such a proposal would by wholly unacceptable:

> Textron has produced no case law that the fee arrangement that counsel has with its client has any bearing on entitlement to attorneys' fees under Rule 37 or Rule 26(g). Such a proposition would create the anomalous (and intolerable) situation of relieving a defendant of any penalty (or greatly reducing that penalty) for discovery abuse where representation was on a pro bono or contingency basis or was by a government lawyer.

Id. at 509 n. 19 (emphasis added).

### 2. The Time Spent on This Matter Was Reasonable.

TWG provides no basis for this Court to award Plaintiff's counsel anything less than the entire amount of time sought for moving to compel and taking the second deposition of TWG. TWG "proposes" that "the court [1] eliminate all duplicative work, [2] half the cost of the completing the second 30(b)(6) deposition, and [3] the cost of the deposition transcript of the second depostion." (Opp. at 4). However, TWG does not identify or explain why any of the work performed was "duplicative," nor could it – Plaintiff's counsel was efficient and judicious

in its expenditures of time.⁶  Nor does TWG offer any reason why this Court should reconsider its Order awarding Plaintiff her costs in addition to her attorneys' fees.

TWG's argument focuses exclusively on the second point, i.e., that the Plaintiff should not receive fees for half of TWG's second Rule 30(b)(6) deposition.  But TWG provides no support for that position.  TWG's argument rests entirely on the fact that its counsel made a few objections, spanning (according to the exhibit to TWG's Opposition) 4 pages of 250 page deposition transcript.  The fact TWG's counsel was able to make so few objections belies its position that there was any inefficiency during the second deposition.

Further, although TWG asserts that the second Rule 30(b)(6) deposition was redundant, it provides no comparison with the first Rule 30(b)(6) deposition to support its assertion.  This is because Plaintiff's questions were not duplicative.  Many of the questions that counsel asked during the first deposition, he asked again in the second one because TWG's designee did not answer the question the first time.  See Plaintiff's Brief Outlining Discovery Dispute at 1-4 (Docket Entry 42).  Indeed, nearly as often as TWG's counsel objected on the ground that a question was duplicative, TWG's counsel had to recant the objection moments later, after realizing that his witness had not already answered the question posed.⁷  These unfounded objections caused delay during the second deposition and illustrate the burden that TWG's counsel imposed on Plaintiff's counsel who was trying to be (and in fact was) efficient while still covering all of the topics that TWG evaded the first time around.

---

⁶ To cite just one example,

REDACTED

⁷

REDACTED

### 3. TWG Should Required to Pay Sanctions Immediately.

Courts that award sanctions generally require that such sanctions be paid promptly. See, e.g., Del Val v. Archdiocese of Washington, No. 93-7072, 1994 WL 71551, at *1 (D.C. Cir. Feb. 25, 1994) (granting motion to dismiss appeal because counsel failed promptly to pay sanctions issued against him); Reynolds v. U.S. Capitol Police Department, 357 F. Supp. 2d 19 (D.D.C. 2004) (affording parties and attorneys 30 days to pay Rule 11 sanctions); SEC v. Showalter, 227 F. Supp. 2d 110, 113 (D.D.C. 2002) (referring to earlier order that attorneys' fees for bringing motion to compel be paid in 30 days); see also Pigford v. Veneman, 239 F. Supp. 68 (D.D.C. 2003) (order published January 14, 2003, ordering that compensatory (non-sanctions) attorneys' fees be paid by January 10, 2003). TWG cites no precedent, and offers no principled reason, why it should be permitted to wait until the close of the case (possibly in several years) to pay the sanctions for injury already caused by its misconduct. Its request, moreover, would undermine much of the deterrent value of imposing such sanctions. Judgment debtors in Washington, D.C. must pay post-judgment interest, see D.C. Code § 28-3302(c) (six percent), a fortiori, the request of a sanctions debtor to defer payment, while paying no interest, should not be indulged.

**CONCLUSION**

For the foregoing reasons, this Court should order TWG to pay the full amount set forth in Plaintiff's November 20, 2007 Account of Costs and Fees, and should grant Plaintiff her fees and costs associated with her November 20, 2007 filing and this brief.

Dated: December 14, 2007                    Respectfully submitted,

                                            ___/s/  Alex C. Lakatos _ _ _ ____
                                            Alex C. Lakatos
                                            DC Bar No: 453763
                                            MAYER BROWN LLP
                                            1909 K Street N.W.,
                                            Washington, D.C. 20006-1101

                                            *Counsel for Ms. Idah Zirintisa*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Reply in Support of Account of Costs and Fees** was sent via electronic filing and first class mail this 14th day of December 2007, to:

> J. Michael Hannon
> 1901 18th Street, N.W.
> Washington, DC 20009
> (202) 232-1907
> (202) 232-3704 (facsimile)
> jhannon@hannonlawgroup.com
>
> *Attorney for The Whitaker Group and*
> *Defendants Rosa Whitaker*
> *and Pauline Harris*