UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 27 2009

Clerk, U.S. District and
Bankruptcy Courts

IDAH ZIRINTUSA,

    Plaintiff,

v.

ROSA WHITAKER, *et al.*,

    Defendants.

Civil Action No. 05-1738 (EGS)

**UNDER SEAL**

## MEMORANDUM OPINION

This case arises from the controversy surrounding the circumstances under which plaintiff Idah Zirintusa ("Zirintusa") came to the United States, and the conditions she experienced while staying in the home of defendant Rosa Whitaker ("Whitaker") between August and December 2004. Whitaker and defendant Pauline Harris ("Harris") (collectively "defendants") have jointly filed a motion for summary judgment. Upon careful consideration of the motion, the responses and replies thereto, the applicable law, and the entire record, the Court finds that this case is fraught with genuine issues of material facts in dispute. Accordingly, the Court will **DENY** defendants' motion for summary judgment.

**I. BACKGROUND AND STANDARD OF REVIEW**

The factual and procedural history of this case were set forth in detail by this Court in its Memorandum Opinion of January 3, 2007, and will not be repeated here. *See* Mem. Op.,

Docket No. 39, at 1-5; *Zirintusa v. Whitaker*, Civ. No. 05-1738, 2007 WL 30603, at *1-2 (D.D.C. Jan. 3, 2007). In that decision, the Court granted Whitaker's motion for judgment on the pleadings on Count II of Zirintusa's complaint and denied Whitaker's motion for judgment with respect to the remaining counts. The parties engaged in discovery, and, after the Court's resolution of a number of discovery-related disputes, defendants filed a motion for summary judgment on all surviving counts of the complaint. Zirintusa filed an opposition to the motion and defendants filed a reply. Additionally, Zirintusa sought and was granted leave to file a surreply. Defendants then filed a motion for reconsideration on the Court's Order granting leave to file. The Court denied the motion for reconsideration, but accepted defendants' pleading as a response to Zirintusa's surreply. Defendants' motion for summary judgment is now ripe for decision.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of

2

a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Tao*, 27 F.3d at 638. The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## II. DISCUSSION

Ten of Zirintusa's claims survived Whitaker's motion for judgment on the pleadings and are now the subject of defendants' motion for summary judgment: (1) breach of an employment agreement against Whitaker (Count I); (2) violations of the minimum-wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, against defendants (Counts III and IV), and violations of the retaliation provision of the FLSA, 29 U.S.C. § 215(a), against Whitaker (Count V); (3) violations of the D.C. Payment and Collection of Wages Law and the D.C. Minimum Wage Act, D.C. Code. § 32-1303; D.C. Code §§ 36.220-1, 36.220-2 (1993), against defendants (Counts VI and

3

VII);[1] (4) tortious interference with contract and prospective advantage against Whitaker (Counts VIII and IX); (5) fraud against Whitaker (Count X); and (6) unjust enrichment against defendants (Count XI).

A central component of defendants' argument that they are entitled to judgment on all counts of the complaint is their position that Zirintusa has failed to adduce sufficient evidence to demonstrate that she and Whitaker entered into an oral contract and that she was employed by defendants as a domestic employee. The Court completely and emphatically rejects this argument. As the D.C. Court of Appeals has explained, for Zirintusa's testimony regarding the alleged agreement "to be admissible and sufficient to carry the day at a trial, nothing in law would require it to be corroborated." *Sanchez v. Magafan*, 892 A.2d 1130, 1133 (D.C. 2006) (citing Standardized Civil Jury Instructions for the District of Columbia, No. 3.02 (2002), which state that "the testimony of a single witness, which you believe to be the truth, is enough to prove any fact"). Put differently, "[i]f a jury were to believe [Zirintusa's] version of the agreement, that alone would permit it to conclude that" an oral

---

[1] Defendants acknowledge that "there is no reason that the Court should not treat the claims under the D.C. Wage Law any different than the FLSA claims." Defs.' Mem. at 52. The Court agrees, and concludes that the same genuine issues of material fact discussed in Part II.B. below also preclude summary judgment on Counts VI and VII of the complaint.

4

contract of employment existed between herself and Whitaker. *See id.* In fact, Zirintusa has put forward additional evidence in support of her contract claim. But even if she had not, as long as the Court concludes that a sufficient showing on the legal elements of a contract claim has been made, "[t]he issue is one for a [fact finder]." *Id.*

This legal conclusion – that Zirintusa's deposition testimony and sworn affidavit are sufficient on their own to create a genuine issue of material fact as to the existence of an employment agreement – precludes summary judgment on most of Zirintusa's claims. In the discussion that follows, the Court will briefly address the parties' arguments regarding summary judgment; however, because the Court finds that genuine issues of material fact pervade these claims and must be decided by a fact finder at trial, this discussion is intended to be illustrative, not exhaustive.

### A. Breach of Contract

Zirintusa alleges that she and Whitaker entered into a three-year oral employment contract pursuant to which Whitaker promised Zirintusa (1) four times the wage she earned in Uganda; (2) full tuition at a U.S. college; (3) food, shelter, and healthcare in the United States; and (4) separate payments to support plaintiff's family who remained in Uganda. Compl. ¶ 45. Defendants argue that there is insufficient evidence to conclude

5

that the parties entered into an oral contract for Zirintusa to perform work for defendants or that they intended to be bound by any agreement. See Defs.' Mem. at 31-36; *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 102 (D.D.C. 2004) ("For an enforceable contract to exist, there must be both (1) agreement as to *all* material terms; and (2) intention of the parties to be bound by those terms."). Moreover, defendants contend that any contract for services is barred by the statute of frauds. Defs.' Mem. at 36-43.

Zirintusa contends that record evidence creates a genuine issue of material fact as to whether she and Whitaker intended to be bound by an employment agreement and agreed to the material terms of such an agreement. Taking the facts in the light most favorable to Zirintusa, she has met her burden of demonstrating that there is a genuine issue of material fact for trial on this claim. Zirintusa's sworn testimony, ████████████ ████████████████████████████, Whitaker's sworn statements, and statements Whitaker made to Joyce Kyakuhaire provide sufficient evidence for Zirintusa to convince a factfinder that Whitaker and Zirintusa intended to be bound by an oral employment agreement and that they agreed as to the material terms. See *Sanchez*, 892 A.2d at 1133; *Calvetti*, 346 F. Supp. 2d at 103 (recognizing that under District of Columbia law, "'what the parties deem to be the material elements of their agreement -

6

either set forth in or absent from those documents, is largely a question of fact [for the jury],'" and concluding in that case that "whether an enforceable [oral] contract was created and was subsequently breached is a question of fact for the jury to decide, not this Court" (alteration in original) (quoting *Georgetown Entm't Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985)).[2]

With respect to the statute of frauds, this Court previously concluded that "the statute of frauds is not a bar to further litigation regarding the alleged three-year oral contract for employment between Zirintusa and Whitaker." Mem. Op., Docket No. 39, at 10. In particular, the Court held that this case posed an exception to the general rule that full performance is necessary to take a contract of this sort outside the purview of the statute of frauds, because "'other and stronger circumstances' are at play here besides a mere refusal to perform an oral



7

employment agreement." *Id.* (quoting *Easter v. Kass-Berger, Inc.*, 121 A.2d 868, 871 (D.C. 1956)).

Defendants claim that discovery has produced no "evidence of part performance and detrimental reliance to remove the alleged oral contract from the statute of frauds." Defs.' Mem. at 36. As Zirintusa persuasively argues, however, the allegations upon which the Court relied in reaching its earlier decision do find evidentiary support in the record. *See* Pl.'s Opp'n at 42-48. The Court therefore agrees with plaintiff that, in view of this evidence,[3] this Court's earlier decision need not be revisited and defendants are not entitled to summary judgment on their statute-of-frauds defense. *See Morris v. Buvermo Props., Inc.*, 510 F. Supp. 2d 112, 118 (D.D.C. 2007) (denying motion for summary judgment "insofar as it [was] grounded on the statute of frauds" in light of "disputed material facts regarding whether

---

[3] For example, there exists conflicting evidence with respect to the scope of the agreement between Whitaker and Zirintusa and the extent to which Zirintusa reasonably relied on that agreement. *Compare* Defs.' Ex. 20, Dep. of Rosa Whitaker at 89 (acknowledging that she agreed to be Zirintusa's financial sponsor while Zirintusa was in school), *and* Defs.' Ex. 11, Dep. of Kivumbi Lutaaya at 54 (explaining that Zirintusa could have returned to her job at the Uganda State House), *with* Pl.'s Ex. 12, Dep. of Idah Zirintusa at 177, 192-93 (recounting her understanding that, based on representations by Whitaker and their oral agreement, she would perform work and receive salary and benefits from Whitaker), Pl.'s Ex. 26, Dep. of Kivumbi Lutaaya at 128-29 (admitting that he told Zirintusa she could return to her job *only* once she finished her schooling), *and* Pl.'s Ex. 15, Dep. of Robert Jacobs at 27 (acknowledging that Zirintusa was prohibited from registering for school after she lost Whitaker's sponsorship).

defendants promised to employ [plaintiff] for ten years, whether [plaintiff] relied on such a representation to his detriment, and if he did rely on such a representation, whether such reliance was reasonable").

### B. FLSA Claims

Defendants argue that Zirintusa's FLSA claims must fail because (1) Zirintusa is not covered by the FLSA because she worked entirely in the District of Columbia and "did not engage in 'commerce' as defined in the FLSA"; (2) she has failed to produce sufficient evidence of the amount of work for which she was not properly compensated and, therefore, has not established a *prima facie* case under the FLSA; and (3) she has suffered no loss of compensation. Defs.' Mem. at 44-47. Zirintusa responds that (1) she qualifies under the FLSA as a "domestic service employee" under 29 U.S.C. § 206(f), (2) she has adduced sufficient evidence of the amount of work she performed to preclude summary judgment, and (3) there exists a material dispute as to how much Zirintusa was compensated and the amount of compensation to which she is entitled. Pl.'s Opp'n at 21-29.

As a threshold matter, the Court holds that the FLSA applies in this case. Congress clearly intended for domestic service employees to be covered by the FLSA, see 29 U.S.C. § 206(f), specifically finding that "the employment of persons in domestic service in households affects commerce," *id.* § 202(a). Although

9

Case 1:05-cv-01738-EGS   Document 114   Filed 12/07/09   Page 10 of 18
Case 1:05-cv-01738-EGS   Document 111   Filed 08/26/09   Page 10 of 18

defendants dispute that Zirintusa performed any work for them, Zirintusa has produced evidence sufficient to create a genuine issue of material fact as to whether she qualifies as a domestic service employee. *See, e.g.*, Pl.'s Ex. 1, Pl.'s Resp. to Interrogs. at 6 (stating that Zirintusa worked for defendants for seventeen weeks for approximately sixty hours per week); Pl.'s Ex. 10, Dep. of Sinotheni Mpala at 20 (testifying that she witnessed Zirintusa ironing a linen in Whitaker's home); *see also* 29 C.F.R. § 552.2 (delineating circumstances where the FLSA extends to domestic service employees); *id.* § 552.3 ("[T]he term domestic service employment refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed."). Defendants advance no legal argument as to why – assuming that Zirintusa performed housekeeping services in Whitaker's home – 29 U.S.C. § 206(f) and its implementing regulations are inapplicable here.[4]

---

[4] Defendants' citation in a footnote to *United States v. Morrison*, 529 U.S. 598, 614 (2000), is insufficient to raise a legitimate challenge to the applicability of 29 U.S.C. § 206(f) on commerce-clause grounds. *See* Def.'s Mem. at 44 n.15. Defendants make no effort to develop this line of argument, and given the undisputed fact that Zirintusa came to the District of Columbia from Uganda, this argument is in any event unpersuasive. *See* 29 U.S.C. § 203(b) (defining commerce as "trade, commerce, transportation, transmission, or communication . . . between any State and *any place outside thereof*" (emphasis added)); *see also Marshall v. Rose*, 616 F.2d 102, 105 (4th Cir. 1980) ("Congress specifically found that the employment of persons in domestic service affects commerce, and we find its conclusion regarding

Additionally, Zirintusa has put forth sufficient evidence regarding the amount of work she performed to make out a *prima facie* case under the FLSA. *See* Pl.'s Ex. 1; Pl. Idah Zirintusa's Aff. in Opp'n Def.'s Mot. Summ. J., Ex. 1 (chart showing Zirintusa's estimate of hours worked from August to December 2004); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 52 (D.D.C. 2006) ("[W]here the employer's time records are inaccurate or incomplete, the plaintiff-employee can make out a *prima facie* case of an FLSA violation by alleging that he performed work for which he was not properly compensated and then 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946))).

Defendants urge the Court to evaluate the credibility of the evidence adduced by plaintiff. *See* Defs.' Mem. at 46.[5] In this respect, however, defendants rely on a case in which the court evaluated the plaintiff's credibility *after a bench trial*. *See Lewis v. News World Commc'ns, Inc.*, 1987 WL 59587, at *6 (D.D.C.

---

over one million workers to be rational.").

[5] This is not the only instance in which defendants argue that a credibility assessment is necessary and appropriate at this stage of the proceedings. The Court flatly rejects this incorrect statement of well-established law. Indeed, the repetition of this misleading proposition leaves one wondering whether counsel for defendants was actively attempting to deceive the Court, or whether counsel simply failed to carefully read the cases cited.

11

Oct. 20, 1987). Zirintusa correctly notes that this approach is inappropriate at summary judgment. *See, e.g., Hunter*, 453 F. Supp. 2d at 53 (rejecting the defendant's attempt to "negate 'the reasonableness of the inference to be drawn from the employee's evidence,'" because a "[r]esolution of this dispute of material fact necessarily requires an assessment of credibility"; noting that "summary judgment is not the proper vehicle for such challenges"); *Rossi v. Associated Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1356 (S.D. Fla. 2006) (finding material facts in dispute in an FLSA case where plaintiff relied on "mental notes" of overtime performed and defendants produced documentation that also failed to "definitively establish the number of hours"); *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 746 (S.D. Tex. 2006) (denying summary judgment on FLSA claim where the record included conflicting deposition testimony, declarations, and payroll records relating to whether the plaintiffs were properly compensated for overtime work). *But see Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (upholding grant of summary judgment on an FLSA claim where the plaintiff "offered no factual allegations *at all* to substantiate her claim, and she presented no evidence of the amount or the extent of hours she worked without compensation" (emphasis in original)).

Defendants' contentions relating to the amount of compensation owed to Zirintusa fail for similar reasons. The

parties dispute facts that bear on every aspect of the amount of compensation owed to Zirintusa.  For example, they disagree as to the amount of time actually worked by Zirintusa; whether Zirintusa worked outside the home for Harris as Whitaker's employee, and, therefore, the amount of overtime, if any, to which Zirintusa is entitled; and the value of any offsets to which defendants might be entitled under the FLSA.  Because a factfinder must make the credibility determinations required to resolve these issues, summary judgment on the FLSA claims is unwarranted.[6]

### C. Tortious Interference

Defendants next contend that Whitaker is entitled to summary judgment on Zirintusa's tortious interference with contract[7] and prospective economic advantage[8] claims because she has failed to

---

[6] This includes Zirintusa's retaliation claim against Whitaker pursuant to 29 U.S.C. § 215(a).  The only argument put forth by defendants with respect to this claim is that it fails because Zirintusa "cannot prove she was an employee." Defs.' Reply at 25.  For the reasons already explained, this contention lacks merit.

[7] A *prima facie* case for tortious interference with contract requires a plaintiff to show "(1) the existence of a contract; (2) knowledge of the contract [by defendant]; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000).  Here, defendants dispute Zirintusa's showing on the latter two elements.  *See* Defs.' Mem. at 48.

[8] "To establish a claim for tortious interference with economic advantage under District of Columbia law, the evidence must show:  '(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on

13

produce evidence of Whitaker's intentional procurement of a breach of contract or damage to Zirintusa in her lawful business. Specifically, defendants argue that discovery has shown that Zirintusa requested and took "study leave" from her position with the Uganda State House, and that her contract with her employer was valid for almost a year after she left Whitaker's home. See Defs.' Exs. 11, 15, 55. Defendants also claim that because Zirintusa was able to find employment after leaving Whitaker and "is far better off economically today" than she would have been if she had stayed in Uganda, she has failed to prove that she suffered actual damages as a result of any alleged interference. Defs.' Mem. at 43, 48-49.

According to Zirintusa, when taken in the light most favorable to her, the evidence shows that (1) Whitaker met with President Museveni and the Ugandan first lady to discuss bringing Zirintusa to the United States; (2) shortly thereafter, Ugandan State House officials informed Zirintusa that she would be "allowed" to work in the United States; and (3) Zirintusa understood, based on her years on the President's staff and Ugandan culture, that her position was being terminated as a

---

the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage.'" *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995) (quoting *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 422-23 (D.D.C. 1988). Although their argument on this claim spans only a paragraph, defendants appear to challenge Zirintusa's showing on all of these elements. See Defs.' Mem. at 49.

14

direct result of Whitaker's intervention with Zirintusa's employer. See Pl.'s Opp'n at 50-51; Pl.'s Exs. 1, 12, 13. Furthermore, Zirintusa points to the deposition testimony of her supervisor in Uganda, who confirmed that Zirintusa could not return to work until she completed her education. See Ex. 26, Dep. of Kivumbi Lutaaya at 128-29.

The disputed nature of the evidence pertaining to these claims is evident. Because there are genuine issues of material fact with respect to whether Zirintusa's contract in Uganda was breached, the nature of the business relationship between Zirintusa and the Ugandan government, Whitaker's intent,[9] and the extent of damages suffered by Zirintusa, summary judgment on these claims is inappropriate.

### D. Fraud

Defendants assert that based on the evidence uncovered in discovery, Zirintusa has not established that fraud occurred under the requisite clear-and-convincing evidentiary standard. Zirintusa counters that evidence in the record demonstrates that Whitaker promised to provide financial support to Zirintusa during her time in school, but that - based on Whitaker's own

---

[9] Summary judgment is particularly inappropriate given the existence of disputed facts relating to this element of both tortious interference claims. See Cooke v. Griffiths-Garcia Corp., 612 A.2d 1251, 1257 (D.C. 1992) (reversing grant of summary judgment to defendant on a tortious interference with contractual relations claim; noting that "[s]ummary judgment is inappropriate where questions of intent are at issue").

15

statements during her deposition – Whitaker never actually intended to do so. *See* Pl.'s Opp'n at 53 (citing Pl.'s Ex. 13, Dep. of Rosa Whitaker at 100-01). Moreover, Whitaker provided Zirintusa with three separate documents promising to provide Zirintusa with financial support. An assessment of both Whitaker's and Zirintusa's credibility is essential to this claim in particular, where a determination of what statements were made and the intentions of the parties making those statements bears directly on whether the legal elements of the claim have been established. Given that the Court is not permitted to make such a credibility determination at this stage of the litigation, defendant's reliance on the heightened burden of proof is insufficient to demonstrate that she is entitled to summary judgment. *See ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 86 (D.D.C. 1998) ("'Cases that turn on the moving party's state of mind are not well-suited for summary judgment.'" (quoting *Int'l Shortstop Inc. v. Rally's Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991)); *Avianca, Inc. v. Corriea*, Civ. No. 85-3277, 1992 WL 93128, at *3 (D.D.C. Apr. 13, 1992) (noting, in a case alleging fraud, that "a court should generally refrain from deciding a case when a reasonable jury could draw divergent inferences that would affect the outcome of the case"; emphasizing that "where the testimony of . . . the principal defendant . . . is the heart of the case, the jury should be permitted wide latitude to assess his credibility

16

and to draw reasonable inferences"). Because the Court concludes that there exists a genuine issue of material fact as to whether Whitaker ever made or intended to honor any promises made to Zirintusa before Zirintusa left Uganda, this claim will not be dismissed.

### E. Unjust Enrichment

The parties' arguments with respect to Zirintusa's unjust-enrichment claim center on whether (1) defendants received a benefit at Zirintusa's expense, and (2) the claim is barred under the doctrine of unclean hands. As to the first issue, the same issues of material fact that have already been discussed at length in this Memorandum Opinion apply with equal force to prevent summary judgment on this claim. Likewise, an evaluation of whether the unclean-hands doctrine should apply in this case depends on an evaluation of Zirintusa's credibility. ███ ███████████ ████████████████████████ ██████████████████████████████████ █████████████████ ████████████████ █████████████████████ Because such an assessment would be inappropriate at this juncture, this claim, like the rest of Zirintusa's claims, survives summary judgment.[10]

---

[10] Defendants also contend that the unjust-enrichment claim is "unnecessary" in view of her contract claim. This claim lacks merit. Zirintusa may continue to pursue unjust enrichment as an alternative theory of recovery until the issue of whether Whitaker and Zirintusa entered into an oral contact has been resolved as a matter of law.

17

III. CONCLUSION

Accordingly, for the reasons stated above, the Court **DENIES** defendants' motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

**Signed:**   **Emmet G. Sullivan**
United States District Judge
**August 26, 2009**